**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN ELLIS** | ) | |
| | ) | |
| **Defendant/Movant,** | ) | |
| | ) | |
| **vs.** | ) | **NO. 2:06cv1013-WHA-SRW** |
| | ) | **(2:04cr153-WHA)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**UNITED STATES' RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America, by and through its attorney, Leura G. Canary, United States Attorney, and, in compliance with this Court's order, responds to Defendant/Movant Jonathan Ellis' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal Custody, as follows:

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

On July 13, 2004, a grand jury for the Middle District of Alabama returned a two-count indictment against Defendant/Movant Jonathan Ellis ("Ellis"). See Exhibit A, the indictment. Count 1 charged that, on or about June 14, 2004, in Montgomery County, within the Middle District of Alabama, Ellis, by force, violence and intimidation did take from the person and presence of another, approximately $40,057.00 in currency belonging to and in the care, custody, control, management and possession of the Colonial Bank, located at 671 South Perry Street, Montgomery, Alabama, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, Ellis did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is, a firearm, in violation of 18 U.S.C. §§ 2113(a) and 2113(d).   Count 2 charged that, on or about June 14, 2004, in

Montgomery County, within the Middle District of Alabama, Ellis did unlawfully and knowingly use and carry a firearm, that is, an H and K, Model USP, 9mm semi-automatic handgun, bearing serial number 24-037032, during and in relation to the commission of a bank robbery, a crime of violence, prosecutable in a court of the United States; possess said firearm in furtherance of the commission of said bank robbery; and brandish said firearm; all in violation of 18 U.S.C. § 924(c)(1).

On August 23, 2005, Ellis entered into a plea agreement with the United States. See Exhibit B, a copy of the plea agreement. The plea agreement informed Ellis that, in return for pleading guilty to both counts against him, the United States would recommend a two-level reduction for acceptance of responsibility, and a sentence at the low end of the applicable guideline range. Exhibit B, at 1-2. The agreement also provided that, absent circumstances involving prosecutorial misconduct or ineffective assistance of counsel, Ellis waived both his right to appeal his conviction or sentence, and his right to seek collateral relief under 28 U.S.C. § 2255. Id. at 4. The agreement concluded with Ellis' affirmance that he had read and understood the plea agreement. Id. at 9.

Ellis' guilty plea hearing was conducted on August 23, 2005. See Exhibit C, a transcript of the guilty plea hearing. At the outset of the hearing, Ellis consented to have his plea taken by a United States Magistrate Judge. Exhibit C, at 2. Stephen R. Glassroth, counsel to Ellis, then summarized the terms of his plea agreement, and stated that, in return for Ellis' guilty pleas, the United States would move for a two-level reduction for acceptance of responsibility, and recommend sentence at the low end of the applicable guideline. Id. Ellis was placed under oath. Id. at 3. Ellis informed the Court that he had fully discussed the charges against him with

2

counsel, that he had read and discussed the plea agreement with counsel before signing it, and that he understood the terms of the agreement.  Id. at 4.  The Court specifically asked Ellis whether he understood that the Court could reject the United States' sentencing recommendation and impose a more severe sentence, but that he would not be permitted to withdraw his guilty plea.  Id. at 5.  Ellis stated that he understood those provisions.  Id.

The Court explained to Ellis that if he persisted in a guilty plea, he would forfeit valuable civil rights.  Id.  Ellis was then informed that the maximum penalty for Count 1 was 25 years in prison.  Id. at 6.  The plea agreement was amended in open court to show that the applicable sentence for Count 2 would range from a minimum of five years in prison to a maximum of life. Id. at 6-8; Exhibit B, at 1.  Ellis stated that counsel had discussed with him how the advisory sentencing guidelines might apply to his case.  Id. at 9.  He was also informed that his agreement contained a waiver of the right to appeal or file a collateral attack, absent circumstances involving prosecutorial misconduct or ineffective assistance of counsel.  Id. at 10.

The Court then explained to Ellis the constitutional rights he would forfeit if he entered a guilty plea in lieu of proceeding to trial.  Id. at 11.  Next, it explained the burden of proof that the United States must meet in order to convict him of violating 18 U.S.C. §§ 2113(a), (d), and 924(c)(1).  Id. at 12-13.  Ellis then listened to the undersigned Assistant United States Attorney recount that he robbed a branch of Colonial Bank, a federally insured financial institution, while in possession of a firearm.  Id. at 14.  Ellis acknowledged that the statement was correct.  Id. at 14-15.  After hearing Ellis plead guilty to Counts 1 and 2, the Court stated that it found him to be competent and capable of entering an informed plea and that each element of the offense was supported by an independent factual basis.  Id. at 15.  The Court then accepted Ellis' guilty plea.

3

Id.

A presentence investigation report (PSI) was prepared by the United States Probation Office. The report related the factual circumstance of Ellis' offenses such as his brandishing a firearm by pointing it at the branch manager of the Colonial Bank at 671 South Perry Street and forcing her, at gunpoint, to instruct tellers to place money in two nylon bags which he provided. PSI at ¶ 4. Ellis attempted to escape via northbound Interstate 85, but law enforcement was able to pursue Ellis because the branch manager had placed a tracking device in a nylon bag. Ellis was followed through Macon County and into Lee County, Alabama. In Lee County, an Auburn police officer was shot and wounded when a fellow officer attempted to shoot out Ellis' tires. PSI, at ¶ 5. This occurrence during Ellis' escape attempt resulted in a two-level enhancement of Ellis' offense level pursuant to U.S.S.G. § 3C1.2 - Reckless Endangerment During Flight. Further, the PSI concluded that a seven-year minimum sentence was required under Count 2, as Ellis had "brandished" a firearm during the bank robbery. PSI at ¶ 21, referencing 18 U.S.C. § 924(c)(1)(D)(4).

Ellis' sentencing hearing was conducted on November 30, 2005. See Exhibit D, a transcript of the sentencing hearing. The Court opened the hearing by inviting argument on Ellis' objection to the PSI finding that the mandatory minimum on Count 2 was seven years. Referencing United States v. Booker, 543 U.S. 220 (2005), counsel argued that the factual basis presented by the United States did not contain conduct that merited the seven-year minimum sentence, and that the five-year minimum was applicable to Ellis. Exhibit D, at 3-4. The Court responded that Harris v. United States, 536 U.S. 545 (2002) (holding that whether a firearm is brandished for purposes of 18 U.S.C. § 924(c)(1) was a sentencing factory to be found by judge,

rather than an offense element to be found by jury) was the controlling case. <u>Id</u>. at 4. However, noting that no evidence of brandishment was in the record, the Court stated that it would hear testimony on the issue. <u>Id</u>. at 7. After hearing testimony from the bank manager who was forced at gunpoint to get money for Ellis, the Court found that Ellis brandished a firearm. <u>Id</u>. at 9-11, 12. The Court further noted that, pursuant to Ellis' plea agreement, sentencing recommendations or stipulations by the United States were non-binding, and that, because a preponderance of the evidence established brandishment, Ellis was subject to the seven-year minimum. <u>Id</u>. at 12-13.

Ellis next objection was to the two-level enhancement for endangerment and flight. Counsel for Ellis argued that his escape was "mere flight" which did not, by itself, endanger anyone else, and thus did not merit an enhancement. <u>Id</u>. at 13-17. The Court then consulted the facts of Ellis' flight as set forth in the PSI and found that they were sufficient to support the enhancement. <u>Id</u>. at 17-18. Counsel continued to argue against the application, and the Court responded "I understand your objection. I simply disagree with it. There's some point where flight turns into a flight that creates a risk to others. And under the facts of this case, it certainly did." <u>Id</u>. at 19.

The Court found that Ellis's final offense level was 23, which, when combined with a criminal history category of I, resulted in a guideline imprisonment range of 46 to 57 months as to Count 1. It further found that the authorized term of imprisonment for Count 2 was not less than seven years, and that the sentence for Count 2 must run consecutive to the sentence in Count 1. <u>Id</u>. at 20. The Court heard statements from two bank employees, and an apology to those women from Ellis himself. It then sentenced Ellis to 57 months as to Count 1, and a consecutive term of 84 months as to Count 2, for a total term of 141 months. <u>Id</u>. at 26-27. Judgment was

entered in Ellis' case on December 6, 2005.

Ellis filed this Motion to Vacate, Set Aside or Correct Sentence on November 6, 2006. On December 5, 2006, this Court entered an order directing the United States to respond to Ellis' claims no later than December 27, 2006. The United States now files this response to the § 2255 motion.

## II. CLAIMS RAISED IN THE § 2255 MOTION

As far as the United States can discern, Ellis raises the following issues in his § 2255 motion:

1.   Counsel provided ineffective assistance due to his failure to have other pending prosecutions for bank robbery consolidated into a single case;

2.   Counsel provided ineffective assistance due to his failure to file a requested appeal;

3.   Counsel provided ineffective assistance for inducing Ellis to enter into a plea agreement with the understanding that he would receive a five-year sentence for violating 18 U.S.C. § 924(c)(1), or be given an opportunity to withdraw his plea;

4.   The District Court erred by not granting an additional reduction for acceptance of responsibility;

5.   The District Court erred by enhancing offense level under U.S.S.G. § 3C1.2 - Reckless Endangerment During Flight; and,

6.   Ellis' dual prosecutions under 18 U.S.C. § 2113(d) and 18 U.S.C. § 924(c)(1) subjected him to double jeopardy, in violation of the Fifth Amendment.

## III. RESPONSE TO CLAIMS FOR RELIEF

### A.   Ellis Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255.

The United States notes at the outset that Ellis has filed his motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which

to file a motion under the rule.  The applicable provision in this case requires that a movant file his § 2255 motion within one year from "the date on which the judgment of conviction became final."

The judgment against Ellis was entered on December 6, 2005.  He did not appeal his conviction or sentence to the Eleventh Circuit Court of Appeals.  His sentence became final when the time for filing an appeal to the Eleventh Circuit expired.  Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir.2002). Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking that appeal expires.  Ellis had ten days from the December 6, 2005 entry of judgment by this Court to seek review by the Eleventh Circuit; his judgment of sentence, therefore, became final on December 16, 2005.  Therefore, under § 2255, Ellis had until December 18, 2006, the first business day occurring after December 16, 2006, to file his motion.  His filing of this § 2255 motion on November 6, 2006 is within one year of December 16, 2005, and his motion is therefore timely.

**B.    Ellis' Petition Is Barred Because He Waived His Right to Seek Relief Under 28 U.S.C. § 2255 When He Entered His Guilty Plea.**

Ellis agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255 when he agreed to plead guilty in his August 23, 2005 agreement and guilty plea hearing.  See Exhibit B at 4, Exhibit C at 10.  The Court specifically questioned Ellis as to whether he understood that

7

his plea agreement waived his ability to collaterally attack his sentence, and he stated under oath

that he understood this provision. Exhibit C at 10. Ellis had also stated under oath that he

understood the terms of the agreement. Id. at 4. The waiver was limited, and not applicable to

instances of prosecutorial misconduct or ineffective assistance of counsel. Exhibit B, at 3. The

United States submits that the waiver must apply to the ineffective assistance of counsel claims

raised by Ellis, as the record shows that counsel was not ineffective in any regard. See Part

III.D., infra.

     The Eleventh Circuit views Ellis' waiver of his right to seek relief under § 2255 as a

contract between the United States and a criminal defendant. It has stated that

> [A]mong the considerations that a defendant may offer as part of such a contract
> is waiver of his right to appeal, provided that the waiver is made knowingly and
> voluntarily. See United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir.1993).
> In this case, [the appellant's] waiver was clearly knowing and voluntary--he was
> specifically questioned by the district court regarding the waiver of his right to
> appeal. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir.1997). The
> plea agreement is therefore enforceable and would appear to bar this appeal.

United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).

     The Eleventh Circuit has also stated that "a waiver of the right to seek federal habeas

review must be 'an intentional relinquishment or abandonment of a known right,' the right to

federal habeas review." Allen v. Thomas,161 F.3d 667, 670 (11th Cir. 1998). The record

demonstrates that the Court ascertained that Ellis's assent to the terms of his plea agreement was

knowing and voluntary. Exhibit C at 4, 15. Ellis' § 2255 motion is thus procedurally barred

from review by this Court.

**C.    Ellis' Claims Are Procedurally Defaulted And Not Properly Considered In This § 2255 Proceeding Because They Could Have Been Raised On Direct Appeal, But Were Not, And Ellis Has Failed To Demonstrate Cause And Prejudice To Overcome These Defaults.**

The legal issues raised by Ellis in his § 2255 motion are barred from this Court's review because they could have been, but were not, raised on direct appeal.  Because Ellis did not raise these claims on direct appeal, however, they are barred in this collateral proceeding, unless he can show cause and prejudice to overcome the procedural bar.  A motion under § 2255 cannot be used as a substitute for appeal, <u>Burke v. United States</u>, 152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised on direct appeal that could have been are generally barred from review in § 2255 proceedings, <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001).  In <u>Mills v. United States</u>, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for [Section] 2255 relief unless he can establish  cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

<u>Id</u>. at 1055-56 (internal citations omitted).  <u>See also</u> <u>McCoy v. United States</u>, 266 F.3d at 1258 ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant.  <u>See</u>, <u>e.g.</u>,

Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually innocent[.]' ").

Ellis has offered nothing to this Court to support a cause and prejudice or miscarriage of justice argument to overcome his procedural defaults. The United States notes that his motion contains a factual assertion that his counsel would not file an appeal on his behalf. However, this statement does not constitute an argument against the procedural default. Therefore, his claims should be dismissed on procedural grounds.

**D.    Ellis's Legal Claims Are Without Merit.**

In the event this Court does not apply the procedural bar due to Ellis' waiver of his right to file a § 2255 motion, or his failure to raise his claims on direct appeal, the United States addresses his three claims of legal error in his convictions and sentence. "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Stephens v. United States, 14 F.Supp.2d 1322, 1334 (N.D. Ga. 1998), quoting United States v. Guerra, 588 F.2d 519, 520-21 (5th Cir.1979). "[I]n this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations ... the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief.... Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a hearing." Potts v. Zant, 638 F.2d 727, 751 (5th Cir. 1981)(citations omitted).[1]

_____

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of

Because Ellis' motion and the record offer no factual basis or proof – and certainly no corroboration of his claims – necessary to establish his claims, they should be dismissed.

> **1.    Ellis' plea agreement specified that he should receive a two, rather than a three-point reduction for acceptance of responsibility.**

Ellis contends that the District Court erred by not granting him three points for acceptance of responsibility.  His plea agreement provided that he would receive a two-point reduction pursuant to U.S.S.G. §3E1.1.  Exhibit B, at 2-3.  Ellis was not entitled to a third reduction point under his agreement.  This claim is without merit, and should be dismissed.

> **2.    Ellis' flight endangered others, and thus merited an enhancement to his sentence pursuant to U.S.S.G. § 3C1.2.**

The PSI prepared by the United States Probation Office informed the Court that, as Ellis attempted to escape via Interstate 85, he was followed through Macon County and into Lee County, Alabama.  Exhibit D, at 17-18.  In Lee County, an Auburn police officer was shot and wounded when a fellow officer attempted to shoot out Ellis' tires.  PSI, at ¶ 5.  These facts merited a two-level enhancement of Ellis' offense level pursuant to U.S.S.G. § 3C1.2 - Reckless Endangerment During Flight.  In response to counsel's arguments that Ellis did not personally endanger anyone during his flight, the Court explained "There's some point where flight turns into a flight that creates a risk to others.  And under the facts of this case, it certainly did."  Id. at 19.  Because the enhancement was appropriate under the facts of Ellis' case, this claim should be dismissed.

---

business on September 30, 1981.

3.    **Ellis' prosecution for violating 18 U.S.C. § 2113(d) and 18 U.S.C. § 924(c)(1) did not subject him to double jeopardy.**

Ellis' next claim asserts that he was subjected to double jeopardy in violation of the Fifth Amendment when he was prosecuted for violating both 18 U.S.C. § 2113(d) and  18 U.S.C. § 924(c)(1).  The United States can only respond that he was convicted for (1) armed bank robbery, and (2) brandishing a firearm in furtherance of that crime.  The separate and distinct elements of each offense were plainly set forth in Ellis' plea agreement, which he reviewed with the assistance of his counsel.  See Exhibit B, at 3-4.  The charges were for two separate offenses, which, as explained below, meet the Eleventh Circuit's double jeopardy test.

> In the comparatively settled area of cumulative punishment, the primary double jeopardy question is whether Congress intended that a criminal defendant be sentenced independently for violation of each of two or more statutes. 'The assumption underlying the [analysis] is that Congress ordinarily does not intend to punish the same offense under two different statutes.'  Under the test articulated in Blockburger v. United States, we are to conclude that Congress intended cumulative punishments whenever each of two offenses charged in a single or in successive indictments requires proof of a statutory element which the other does not.  Once we reach this conclusion, our review comes to an end.

United States v. Sanchez, 992 F.2d 1143, 1153 (11th Cir. 1993) (internal citations omitted); see also United States v. Stewart, 65 F.3d 918, 927 (11th Cir. 1995) ("The Double Jeopardy Clause does not bar cumulative punishments stemming from a single incident when Congress intends to prescribe cumulative punishments.  In the cumulative punishment context, the 'interest that the Double Jeopardy Clause seeks to protect' is one 'limited to ensuring that the total punishment did not exceed that authorized by the legislature'").

Under 18 U.S.C. § 2113(d), bank robbery is a separate crime of violence from § 924(c)(1) which "expressly provides that the punishments imposed for 'use of a deadly or dangerous

weapon or device' shall be 'in addition to the punishment provided for [the predicate] crime of violence.'" United States v. Strickland, 261 F.3d 1271, 1274 (11th Cir. 2001). Congress plainly sought through § 924(c) to impose cumulative punishment regardless of whether it was for the same course of conduct, and Congress has this authority. See United States v. Rahim, 431 F.3d 753 (11th Cir. 2005). Under controlling authority from the Eleventh Circuit, this final legal claim has no merit and must also be dismissed.

**E.    Ellis' Ineffective Assistance of Counsel Claims Should Be Rejected Because They Are Without Any Merit.**

Ellis presents three claims of ineffective assistance of counsel: (1) failure to have multiple prosecutions for bank robbery consolidated; (2) that counsel failed to file an appeal as requested; and, (3) that counsel misinformed Ellis as to the sentence he would receive, and that counsel did not object to the sentence or facilitate the withdrawal of his plea or appeal the sentence. The United States responds that these claims are waived under Ellis' plea agreement, as he has not demonstrated ineffective assistance in any respect as to these claims. See Part III.B., supra.

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his case. Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Bell v. Cone, 535 U.S. 685, 697-98 (2002) (reaffirming the Strickland v. Washington standard for reviewing ineffective assistance of counsel claims); Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (applying two-part test of Strickland v. Washington). More specifically, Ellis must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that,

13

without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of

his trial would have been different. Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of Strickland, this Court

must presume that the conduct of counsel was reasonable, Yordan v. Dugger, 909 F.2d at 477. A

"[d]efendant must prove deficient performance by a preponderance of competent evidence, and

the standard is 'reasonableness under prevailing professional norms.'" Gallo-Chamorro v. United

States, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted). The Eleventh Circuit has

described a defendant's burden with regard to the deficient performance prong of an ineffective

assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a
> petitioner seeking to rebut the presumption of adequate performance must bear a
> heavy burden:
>
>> The test has nothing to do with what the best lawyers would have done.
>> Nor is the test even what most good lawyers would have done. We ask
>> only whether some reasonable lawyer at the trial could have acted, in the
>> circumstances, as defense counsel acted at trial. ... We are not interested
>> in grading lawyers' performances; we are interested in whether the
>> adversarial process at trial, in fact, worked adequately.
>
>> ... Thus, in order to show that counsel's performance was unreasonable, the
>> petitioner must establish that *no competent counsel would have taken the
>> action that his counsel did take....*

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his

counsel's deficient performance prejudiced his case as "high,"noting that it is not enough to show

that any errors had some conceivable effect on the outcome of the proceeding. Robinson v.

Moore, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on the ineffective assistance of

14

counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000); accord, Robinson v. Moore, 300 F.3d at 1343. In raising ineffective assistance of counsel, Ellis has failed to plead facts sufficient to demonstrate that he was prejudiced by any of counsel's actions. For that reason, his § 2255 motion should be summarily dismissed.

### 1. Counsel cannot be termed ineffective for his inability to consolidate the multiple bank robbery prosecutions pending against Ellis.

Stephen Glassroth has filed an affidavit addressing Ellis' claims of ineffective assistance. (Doc. # 9.) The affidavit describes his efforts to consolidate this prosecution against Ellis with others for bank robbery that were pending in the Eastern District of Louisiana, the Northern District of Georgia, and the Western District of Texas. See Glassroth Affidavit, at 2. Mr. Glassroth concluded that this course of action would have "vastly enhanc[ed] the punishment for second and subsequent offense," and possibly resulted in 100 years in prison for the charges under § 924(c)(1). Id. at 3. The affidavit further states that Ellis was apprised of the impact that consolidated prosecutions would have on his final sentences, and that he concurred with Glassroth's decision for separate prosecutions. Id. Thus, counsel explored the course of action now favored by Ellis, determined that such a course was in fact, detrimental to his case, and abandoned it with Ellis' consent. Counsel was not ineffective in this regard.

15

     **2.**       **Counsel was not ineffective for failing to secure a five-year sentence for Ellis' conviction under 18 U.S.C. § 924(c)(1), as the facts established that he merited the seven-year minimum sentence for that offense.**

Ellis asserts that his counsel "guaranteed [him] that if [he] signed the plea agreement, [he] would receive a five-year sentence" as to Count 2.  He also asserts that included in this "guarantee" was the option to withdraw the plea if his sentence was greater than five years.  Ellis Motion, at 5.  He alleges that counsel was ineffective for failing to object to, or appeal the sentence.

Ellis was subjected to a seven-year minimum sentence on Count 2 because the facts demonstrated that he brandished a firearm during the commission of a bank robbery, a violent crime.  See 18 U.S.C. § 924(c)(1)(A)(ii), PSI at ¶¶ 4, 21, 42.  The transcript from Ellis' guilty plea hearing shows that, in compliance with its agreement to recommend the lowest possible sentence in his case, the United States agreed that the minimum sentence for Count 2 would be five years.   The sentencing transcript plainly shows that counsel objected to the recommendation from the probation office that Ellis be sentenced to a minimum of seven years as to Count 2.  Exhibit C, at 3.  Counsel insisted that, because no facts admitted during Ellis' plea colloquy established "brandishing," he was subject to the five-year minimum sentence.  The Court responded that Harris v. United States, 536 U.S. 545 (2002) (holding that the issue of whether a defendant brandished a weapon is a fact to be determined by a judge at sentencing, and was not an offense element for a jury's determination) controlled Ellis' case.  Exhibit C, at 4.  After further argument from both parties, the Court stated that he would hear testimony as to whether Ellis "brandished" a firearm during the bank robbery.  Id. at 7.

Christine Smith testified that she had been employed as the assistant branch manager at a branch of Colonial Bank on the day of Ellis's offense. Id. at 9. She stated that Ellis came into her office, pretended that he wanted to open an account, then pulled a gun out and held it at her stomach and chest area while she tried to explain to him that her branch could not meet his request for one million dollars. Id. at 9-10. After Ms. Smith's testimony, the Court found that Ellis had in fact brandished a firearm and was therefore subject to a seven-year minimum sentence. Id. at 12. After this finding, the Court specifically stated that Ellis' plea agreement made clear to him that the minimum sentence recommendations by the United States were not binding on the Court. Id. at 12-13; see also Exhibit B, at 2, 6-7.

In addition to the written plea agreement, the transcript from Ellis' guilty plea hearing shows that he understood the terms of his plea agreement, including the provision that the Court was not bound by a sentencing recommendation, and that he would not be permitted to withdraw his plea if his sentence was more severe that the United States' recommendation. Exhibit C, at 4, 5. Thus, even though counsel objected to the seven-year minimum found applicable by the Court, the terms of Ellis' plea prevented him from withdrawing because of a longer-than-expected sentence. The Court heard sufficient evidence establishing Ellis' eligibility for the seven-year minimum, and sentenced him appropriately. Counsel was not ineffective as to this issue.

**3.    Counsel was not ineffective for failing to file an appeal if Ellis did not request that he do so.**

Ellis claims that counsel was ineffective due to his failure to file an appeal on the issues discussed in the two companion claims of ineffective assistance, supra. He asserts that, though he requested an appeal in his case on , counsel failed to do so. Where counsel fails to file a notice of

17

appeal after having been so instructed by his client, a showing of prejudice is not required, as the United States Supreme Court has long recognized that such action is both professionally unreasonable and presumptive prejudicial.  See Roe v. Flores-Ortega, 528 U.S. 470, 477, 484-85 (2000).  The Eleventh Circuit has consistently held that, in these circumstances, defendants need not show viable grounds for the requested appeal.  See Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005); McIver v. United States, 307 F.3d 1327, 1330 at n.1 (11th Cir. 2002); Martin v. United States, 81 F.3d 1083 (11th Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995).

Crucial to a court's ruling that an appeal be permitted in circumstances such as those alleged by Ellis is a finding that the defendant did, in fact, instruct his attorney to file a notice of appeal.  In the McIver and Martin cases, the fact of counsel's failure to file the requested notice of appeal was established in the record.  See McIver, 307 F.3d at 1329; Martin, 81 F.3d at 1084.  In Montemoino, the Eleventh Circuit remanded the case for a hearing to determine whether the facts supported the defendant's allegation that he actually requested an appeal, and conditioned relief on a finding that the request was made.  Montemoino, 68 F.3d at 418.  See also United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003)(where the district court acknowledged the defendant's "credible testimony that immediately following his sentencing, he told his attorneys he wanted to appeal his sentence.")

The most recent Eleventh Circuit decision on this issue, Gomez-Diaz v. United States, is consistent with past cases on the issue raised in Ellis' motion.  That case presented a petitioner who, the district court determined, "explicitly asked his attorney to appeal," but was persuaded not to by the attorney.  Gomez-Diaz, 433 F.3d at 791.  The Eleventh Circuit remanded with

18

instructions for the district court to determine

> (1) whether Petitioner's initial statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in <u>Flores-Ortega</u>; and (2) if not, whether Petitioner's attorney fulfilled his constitutional duty to consult with his client and to make a reasonable effort to determine Petitioner's wishes, and whether he acted in accordance with those wishes.

<u>Id</u>. at 792-93.

In effect, the Eleventh Circuit requires a petitioner to establish that he actually instructed his counsel to file an appeal. Here, Stephen Glassroth's affidavit in this case avers that Ellis did not request an appeal. <u>See</u> Glassroth Affidavit, at 4. Ellis offers nothing but a bare assertion that he requested one. The United States notes that the filings in this case produce a situation where this Court must determine whether the pleadings filed by Ellis or Glassroth are truthful. In the event this Court finds that Ellis did request an appeal, he is entitled to an out-of-time appeal. <u>Gomez-Diaz</u>, <u>id</u>. at 794.

Ellis has failed to show in any of his ineffective assistance allegations that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his proceeding would have been different. <u>Yordan v. Dugger</u>, 909 F.2d at 477. Therefore, these claims should be dismissed.

### IV.  A HEARING IS NOT APPROPRIATE IN THIS MATTER

Ellis has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing. <u>See</u> <u>Blacklidge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>Tejada v.</u>

<u>Dugger</u>, 941 U.S. 1551, 1559 (11th Cir. 1991); <u>United States v. Laetividal-Gonzalez</u>, 939 F. 2d 1455, 1465 (11th Cir. 1991).  Should this Court determine that Ellis has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

## V.  CONCLUSION

For the above reasons, Defendant/Movant Jonathan Ellis has failed to demonstrate that he is entitled to any immediate relief from this Court, and, with the possible exception of the claim that an appeal was requested, his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 27th day of December, 2006.

/s/ Clark Morris
CLARK MORRIS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
clark.morris@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN ELLIS** | ) | |
| | ) | |
| **Defendant/Movant,** | ) | |
| | ) | |
| **vs.** | ) | **NO. 2:06cv1013-WHA-SRW** |
| | ) | **(2:04cr153-WHA)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: Jonathan Ellis, #11459-002, Atlanta City Detention Center, 254 Peachtree Street, Atlanta, GA 30303.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Clark Morris
CLARK MORRIS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
clark.morris@usdoj.gov

**FILED**

IN THE DISTRICT COURT OF THE UNITED STATES    JUL 1 3 2004
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIM. NO. 2:04cR 153-A |
| v. | ) | [18 U.S.C. 2113(a),(d) and 924(c)] |
| | ) | |
| JONATHAN ELLIS | ) | **INDICTMENT** |

The Grand Jury charges that:

## COUNT 1

On or about the 14th day of June, 2004, in Montgomery County, within the Middle

District of Alabama, the defendant,

### JONATHAN ELLIS,

by force, violence and intimidation did take from the person and presence of another,

approximately $40,057.00 in currency belonging to and in the care, custody, control,

management and possession of the Colonial Bank, located at 671 South Perry Street,

Montgomery, Alabama, the deposits of which were then insured by the Federal Deposit

Insurance Corporation, and in committing such offense, the defendant, did assault and put

in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm,

in violation of Title 18, United States Code, Sections 2113(a) and 2113(d).

## COUNT 2

On or about the 14th day of June, 2004, in Montgomery County, within the Middle

District of Alabama, the defendant,

### JONATHAN ELLIS,

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. 2:04cr153-A |
| v. | ) | |
| | ) | |
| JONATHAN ELLIS | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:              Stephen Glassroth

ASSISTANT U.S. ATTORNEY:     A. Clark Morris

## COUNT AND STATUTES CHARGED

Count 1:    18 U.S.C. §§ 2113(a) and (d) (Bank Robbery)

Count 2:    18 U.S.C. § 924(c) (Use of Firearm in Connection With Crime of Violence)

## STATUTORY MAXIMUM PENALTIES

Sentence:

Count 1

A term of imprisonment of not more than twenty-five years, and a fine of not more than $250,000, or both; a term of supervised release of not more than five years; an assessment fee of $100; and an order of restitution.

Count 2

A term of imprisonment of not less than ~~seven~~ five years and not more than life, and a fine of not more than $250,000, or both; a term of supervised release of not more than five years; an assessment fee of $100; and an order of restitution.

1

## ELEMENTS OF THE OFFENSE

### Count 1

1.   The Defendant knowingly took from the person or the presence of the person described in the indictment or information, money or property then in the possession of a federally insured bank;

2.   The Defendant did so by means of force or violence or by means of intimidation; and

3.   The Defendant assaulted or put in jeopardy the life of some person by the use of a dangerous weapon or device while engaged in taking the property or money, as charged.

### Count 2

1.   The Defendant committed the crime of violence charged in the indictment.

2.   During the commission of that offense the Defendant knowingly used, carried, brandished or possessed a firearm, as charged; and

3.   The Defendant used, carried or brandished the firearm "in relation to" the crime of violence or possessed the firearm "in furtherance of" the crime of violence.

**********************************************************************************

A. Clark Morris, Assistant United States Attorney and Stephen Glassroth, attorney for the

defendant, pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, as amended, have,

with the authorization of the undersigned defendant, heretofore entered into discussions with a

view towards reaching a pretrial conclusion of the charges pending in the Indictment and a Plea

Agreement has been reached by said parties. The plea is being submitted to the Court pursuant to

Federal Rule of Criminal Procedure 11(c)(1)(B), and the parties understand that the stipulations

in the Plea Agreement are not binding on the Court, and the Court's failure to follow those

stipulations does not provide a basis for the defendant to withdraw his plea of guilty.

## GOVERNMENT'S PROVISIONS

1.   In return for the plea of guilty, the government agrees to recommend a two-level

2

reduction for acceptance of responsibility pursuant to § 3E1.1 of the United States Sentencing

Guidelines, so long as the defendant does not obstruct justice or otherwise fail to accept

responsibility for the offense conduct.

      2.     The United States reserves the right to inform the Court and the Probation

Department of all facts pertinent to the sentencing process, including all relevant information

concerning the offenses and the defendant's background.

      3.     The United States agrees to recommend a sentence at the low-end of the

applicable guideline range.

**DEFENDANT'S PROVISIONS**

      1.     The defendant agrees to plead guilty to Counts 1 and 2.

      2.     Defendant agrees not to commit any other federal or state criminal offense while

awaiting sentencing.

**FACTUAL BASIS**

      The defendant admits the allegations charged in Counts 1 and 2 of the Indictment and

understands that the charge to which the plea is offered involves proof that on or about the 14th day

of June, 2004, in Montgomery County, within the Middle District of Alabama, the defendant,

JONATHAN ELLIS, by force, violence and intimidation did take from the person and presence of

another, approximately $40,057.00 in currency belonging to and in the care, custody, control,

management and possession of the Colonial Bank, located at 671 South Perry Street, Montgomery,

Alabama, the deposits of which were then insured by the Federal Deposit Insurance Corporation,

and in committing such offense, the defendant, did assault and put in jeopardy the life of another

person by the use of a dangerous weapon, that is a firearm, in violation of Title 18, United States

3

Code, Sections 2113(a) and 2113(d). The defendant admits the allegations charged in Count

Two and understands that the charge to which the plea is offered involves proof that on or about

the 14th day of June, 2004, in Montgomery County, within the Middle District of Alabama, the

defendant, JONATHAN ELLIS, did unlawfully and knowingly use and carry a firearm, that is, an

H and K, Model USP, 9mm semi-automatic handgun, bearing serial number 24-037032, during and

in relation to the commission of a bank robbery, a crime of violence, prosecutable in a court of the

United States; possess said firearm in furtherance of the commission of said bank robbery; and

brandish said firearm; all in violation of Title 18, United States Code, Section 924(c)(1).


## DEFENDANT'S WAIVER OF APPEAL AND

## COLLATERAL ATTACK

Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence

under certain circumstances, the defendant expressly waives any and all rights conferred by

18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal the

conviction and sentence on any other ground and waives the right to attack the conviction and

sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the

ground of ineffective assistance of counsel or prosecutorial misconduct. In return for the above

waiver by the defendant, the Government does not waive its right to appeal the sentence imposed

in the instant case. The Government does not waive its right to appeal any order dismissing the

Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the

proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's

right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States

4

appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver.

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

1.      The defendant, before entering a plea of guilty to Counts 1 and 2 of the Indictment as provided for herein by said Plea Agreement, advises the Court that:

a.      The discussions between the attorney for the government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b.      Defendant acknowledges that a breach of this plea agreement will not entitle him to withdraw his guilty plea in this case. Defendant understands and acknowledges that defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant.

c.      The defendant further understands that, pursuant to Title 18, United States Code, Section 3013, said $200.00 assessment fee is to be paid by the defendant on the date of sentencing. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing and submitting to the court or the government any financial statements, the defendant is representing that the statement is true and accurate to the best of the defendant's information, knowledge, and belief.

d.      The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

e.  The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

f.  The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

g.  The defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government, and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

h.  The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

i.  The defendant further advises the Court that it is understood that the

6

stipulations of this Plea Agreement are not binding on the Court.

        j.      The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

        k.      The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

        2.      The undersigned attorney for the government and for the defendant represent to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty,

7

there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

3.     The defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The offense level or criminal history category, as calculated by the Probation Officer and determined by the Court, may differ from that projected by defendant's counsel or the United States Attorney.

This 23rd day of August, 2005.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Clark Morris
Assistant United States Attorney

Louis V. Franklin, Sr.
Chief, Criminal Division

8

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached. IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL.

Jonathan Ellis
Defendant

8.23.05
Date

Stephen Glassroth
Attorney for the Defendant

8/23/05
Date

9

1              IN THE UNITED STATES DISTRICT COURT FOR

2                 THE MIDDLE DISTRICT OF ALABAMA

3                        NORTHERN DIVISION

4

5

6    UNITED STATES OF AMERICA

7

8         Vs.                    CR. NO. 2:04cr-153-A

9

10   JONATHAN ELLIS

11

12           *     *     *     *     *     *     *     *

13                   CHANGE OF PLEA HEARING

14           *     *     *     *     *     *     *     *

15           Before Hon. Susan Russ Walker,

16           Magistrate Judge, at Montgomery, Alabama,

17           Commencing on August 23, 2005

18           *     *     *     *     *     *     *     *

19

20

21   APPEARANCES: For the Government: Clark A. Morris

22                                    Assistant U.S. Attorney

23                For the Defendant:  Steven Glassroth,

24                                    Attorney at Law

25

1          (The above case coming on for hearing at Montgomery,

2   Alabama, August 23, 2005, before Honorable Susan Russ Walker,

3   Magistrate Judge, the following proceedings were had

4   commencing at 10:00 a.m.:)

5          THE COURT:  We are here for a change of plea in

6   United States versus Jonathan Ellis. This is 2:04cr-153-A.

7   Would you please stand. Previously the Court was informed

8   that the Defendant wishes to change his plea and consents to

9   having the guilty plea proceedings conducted by a United

10  States Magistrate Judge. I am a United States Magistrate

11  Judge.  The next higher ranking Judge is a District Judge,

12  and you have a right to have a District Judge take your plea.

13  If you wish to have me take your plea today you must read and

14  sign the consent form that's been given to you.

15          MR. GLASSROTH:   (complies)

16          THE DEFENDANT:   (complies)

17          THE COURT:  The form has been signed. Would counsel

18  briefly summarize the terms of the plea agreement.

19          MR. GLASSROTH:  Yes, Your Honor.  We have agreed

20  that Mr. Ellis will enter his plea pursuant to 11(c)(1)(B).

21  That in exchange for the guilty plea the government will move

22  for a two level reduction for acceptance of responsibility,

23  and recommend a sentence at the low end of the guideline

24  range.

25          THE COURT:  All right. Anything else?

3

1        MS. MORRIS:  I would just add that there is a waiver

2   of appeal in the plea agreement as well, Your Honor.

3        THE COURT:  Okay. We will swear the Defendant in.

4        THE CLERK:  If you will raise your right hand. Do

5   you solemnly swear or affirm that the testimony you give in

6   this cause will be the truth, the whole truth, and nothing

7   but the truth, so help you God?

8        THE DEFENDANT:  I affirm.

9        THE COURT:  Do you understand that you are now under

10  oath and that if you answer any of the questions asked here

11  falsely your answers may later be used against you in another

12  prosecution for perjury or making a false statement?

13       THE DEFENDANT:  Yes, ma'am.

14       THE COURT:  What is your full name, please?

15       THE DEFENDANT:  Jonathan Ewel Ellis.

16       THE COURT:  How old are you?

17       THE DEFENDANT:  25.

18       THE COURT:  How far did you go in school?

19       THE DEFENDANT:  Two years in college.

20       THE COURT:  Have you been treated recently for any

21  mental illness or addiction to narcotic drugs of any kind?

22       THE DEFENDANT:  No, ma'am.

23       THE COURT:  Are you currently under the influence of

24  any drug, medication or alcoholic beverage of any kind?

25       THE DEFENDANT:  No, ma'am.

1    THE COURT:  Have you received a copy of the
2    indictment pending against you, that is, the written charges
3    made against you in this case?
4    THE DEFENDANT:  Yes, ma'am.
5    THE COURT:  Have you fully discussed those charges
6    and the case in general with Mr. Glassroth as your counsel?
7    THE DEFENDANT:  Yes, ma'am.
8    THE COURT:  Are you fully satisfied with the
9    counsel, representation and advice given to you in this case
10   by your attorney, Mr. Glassroth?
11   THE DEFENDANT:  Yes, ma'am.
12   THE COURT:  There's a written plea agreement in this
13   case. Did you have the opportunity to read and discuss the
14   plea agreement with your lawyer before you signed it?
15   THE DEFENDANT:  Yes, ma'am.
16   THE COURT:  Does the plea agreement represent in its
17   entirety any understanding that you have with the government?
18   In other words, is all of your agreement written in that plea
19   agreement?
20   THE DEFENDANT:  Yes, ma'am.
21   THE COURT:  Do you understand the terms of the plea
22   agreement?
23   THE DEFENDANT:  Yes, ma'am.
24   THE COURT:  Has anyone made any other or different
25   promise or assurance of any kind to you in an effort to

1    induce you to plead guilty in this case?

2              THE DEFENDANT:  No, ma'am.

3              THE COURT:  Do you understand the terms of the plea

4    agreement are merely recommendations to the Court, that the

5    Court can reject the recommendations without permitting you

6    to withdraw your plea of guilty and impose a sentence that is

7    more severe than you may anticipate?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Has anyone attempted in any way to force

10   you to plead guilty in this case?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  Are you pleading guilty of your own free

13   will because you are guilty?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Do you understand that the offenses to

16   which you are pleading guilty are felony offenses, that if

17   your plea is accepted you will be adjudged guilty of those

18   offenses, and that such adjudication may deprive you of

19   valuable civil rights, such at the right to vote, the right

20   to hold public office, the right to serve on a jury and the

21   right to possess any kind of firearm?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  The maximum penalty provided by law for

24   count one -- and this plea is to both counts one and two; is

25   that correct?

1    MR. GLASSROTH:  That's correct, Your Honor.

2    THE COURT:  For count one the maximum penalty is

3    imprisonment for no more than 25 years, a fine of no more

4    than two hundred 50 thousand dollars, or both the fine and

5    the imprisonment, a term of supervised release of no more

6    than five years and a special assessment fee of one hundred

7    dollars. For count two the maximum punishment is imprisonment

8    of no less than seven years, a fine of no more than two

9    hundred 50 thousand dollars, or both the fine and the

10   imprisonment, a term of supervised release of no more than

11   five years, and a special assessment fee of one hundred

12   dollars.  In addition you may be asked to make restitution to

13   any victim of these offenses. Do you understand the maximum

14   punishment in your case?

15   MR. GLASSROTH:  Do you understand what she said the

16   statutory maximum is?

17   THE DEFENDANT:  She said that the minimum too was

18   seven years. Is that right?

19   THE COURT:  For count two, let me read it again. The

20   maximum punishment for count two is imprisonment of no less

21   than seven years, so that is correct, that is a

22   mandatory-minimum. A fine of no more than two hundred 50

23   thousand dollars, or both the fine and the imprisonment.

24   Supervised release of no more than five years, and special

25   assessment fee of one hundred dollars in addition to the

1    possibility of restitution. Counsel, do you need a minute?

2            MR. GLASSROTH:  We do, Your Honor.

3            THE COURT:  All right. Go ahead.

4            (pause)

5            MS. MORRIS:  Your Honor, upon discussing with Mr.

6    Glassroth I believe the minimum for count two should be five

7    years.

8            THE COURT:  Okay. This was given to me just a few

9    minutes ago because what was in the file was not correct. Do

10   you need to double check?

11           MS. MORRIS:  No, Your Honor, but I will say that we

12   need to make an addendum to the written plea agreement as

13   well because the statutory maximum penalty in the plea

14   agreement is incorrect as well.

15           THE COURT:  Okay. But you are confident that with

16   regard to count two the maximum punishment -- I'm sorry, the

17   minimum punishment is no less than five years.

18           MS. MORRIS:  That's correct.

19           THE COURT:  I will give you a minute to amend the

20   plea.

21           MR. GLASSROTH:  That would be correct.

22           (pause)

23           MR. GLASSROTH:  Your Honor, we have corrected that

24   and all parties, Mr. Ellis and the government and I have

25   initialed the correction. I am handing the completed and

1   executed plea agreement.

2         THE COURT:  Okay. Mr. Ellis, let's revisit count two

3   and the limits of punishment one more time. The minimum

4   punishment is imprisonment of no less than five years, a fine

5   of no more than two hundred 50 thousand dollars. These are

6   also the maximums. What is the maximum punishment on count

7   two? Let me make sure I have got that right too.

8         MS. MORRIS:  Five to life.

9         THE COURT:  Okay. Let me do it one more time and

10  make sure we have got both ends of it understood. For count

11  two, the minimum and maximum in terms of jail time are no

12  less than five years imprisonment and no more than life

13  imprisonment. A fine of no more than two hundred and 50

14  thousand dollars, or both the fine and the imprisonment. A

15  term of supervised release of no more than five years, a

16  special assessment fee of one hundred dollars, and again, you

17  may be asked to make restitution to any victim of the

18  offense. Do you understand the minimum and maximum punishment

19  for count two?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  With regard to supervised release do you

22  understand that if you violate the conditions of supervised

23  release you can be given additional time in prison?

24        THE DEFENDANT:  Yes, ma'am.

25        THE COURT:  Do you understand that you must pay a

1   special assessment fee of one hundred dollars for each count?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Do you understand that under the

4   Sentencing Reform Act of 1984 the United States Sentencing

5   Commission has issued guidelines for judges to follow in

6   determining the sentence in a criminal case?

7          THE DEFENDANT:  Could you repeat that? I'm sorry.

8          THE COURT:  Do you understand that under the

9   Sentencing Reform Act of 1984 the United States Sentencing

10  Commission has issued guidelines for judges to follow in

11  determining the sentence in a criminal case?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  And do you understand that under recent

14  Supreme Court decisions those sentencing guidelines are now

15  deemed to be advisory guidelines?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Have you and your attorney talked about

18  how the advisory sentencing guidelines might apply to your

19  case?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Do you understand that the Court will

22  not be able to determine an advisory guideline sentence for

23  your case until after the presentence report has been

24  completed and you and the government have had an opportunity

25  to challenge the reported facts and the application of the

1    advisory guidelines recommended by the probation officer, and

2    that the sentence imposed may be different from any estimate

3    that your attorney or the probation officer may have given

4    you?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Do you also understand that after your

7    advisory guideline range has been determined the Court has

8    the authority in some circumstances to depart from the

9    advisory guidelines and impose a sentence that is more severe

10   or less severe than the sentence called for by those

11   guidelines?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand that parole has been

14   abolished and that if you are sentenced to prison you will

15   not be released on parole?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Do you understand that under some

18   circumstances you or the government may have the right to

19   appeal any sentence that the Court imposes?

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  And do you understand that by entering

22   into this plea agreement and entering a plea of guilty you

23   will have waived or given up your right to appeal or to

24   collaterally attack all or part of this sentence?

25             THE DEFENDANT:  Yes, ma'am.

1       THE COURT:  Do you understand that you have a right

2   to plead not guilty to any offense charged against you and to

3   persist in that plea, that you would then have the right to a

4   trial by jury, that at trial you would be presumed to be

5   innocent and the government would have to prove your guilt

6   beyond a reasonable doubt?

7       THE DEFENDANT:  Yes, ma'am.

8       THE COURT:  Do you understand that you would have

9   the right to the assistance of counsel for your defense, the

10  right to see and hear all the witnesses and have them

11  cross-examined in your defense, the right on your own part to

12  decline to testify unless you voluntarily elected to do so in

13  your own defense, and the right to the issuance of subpoenas

14  or compulsory process to compel the appearance of witnesses

15  to testify in your defense?

16      THE DEFENDANT:  Yes, ma'am.

17      THE COURT:  Do you understand that should you decide

18  not to testify or put on any evidence these facts can not be

19  used against you?

20      THE DEFENDANT:  Yes, ma'am.

21      THE COURT:  Do you further understand that when

22  entering a plea of guilty, if that plea is accepted by the

23  District Judge there will be no trial and you will have

24  waived or given up your right to a trial, as well as those

25  other rights associated with a trial as I just described

1    them?

2             THE DEFENDANT:  Yes, ma'am.

3             THE COURT:  The charges to which you are pleading

4    guilty are set out in counts one and two of the indictment.

5    Count one charges that on or about June 14th, 2004, in

6    Montgomery County, within the Middle District, that you by

7    force, violence and intimidation took from the person and

8    presence of another approximately 40 thousand 57 dollars in

9    currency belonging to and in the care, custody, control,

10   management and possession of the Colonial Bank at 671 South

11   Perry Street in Montgomery, the deposits of which were

12   insured by the Federal Deposit Insurance Corporation, and in

13   committing that offense you assaulted and put in jeopardy the

14   life of another by the use of a dangerous weapon, that is, a

15   firearm, in violation of 18 U.S.C. Section 2113(a) and

16   2113(d). Count two charges that on or about June 14th, 2004,

17   in Montgomery, Alabama, within the Middle District, that you

18   unlawfully and knowingly used and carried a firearm, that is,

19   an H & K Model USP nine millimeter semiautomatic handgun,

20   serial number 24-037032, during and in relation to the

21   commission of a bank robbery, which is a crime of violence,

22   prosecutable in a court of the United States, and that you

23   possessed that firearm in furtherance of the commission of

24   the bank robbery, and brandished the firearm in violation of

25   18 U.S.C. Section 924(c)(1). Do you understand that those are

1    the two counts that you are pleading guilty to today?

2           THE DEFENDANT: Yes, ma'am.

3           THE COURT:  The elements of these offenses which the

4    government would have to prove in your case beyond a

5    reasonable doubt are, for count one, that you knowingly took

6    from the person or the presence of the person described in

7    the indictment money or property then in the possession of a

8    federally insured bank, that you did so by means of force or

9    violence, or by means of intimidation, and that you assaulted

10   or put in jeopardy the life of some person by the use of a

11   dangerous weapon or device while engaged in taking the

12   property or money as charged. Count two, the elements are

13   that you committed the crime of violence charged in the

14   indictment, that during the commission of that offense you

15   knowingly used, carried, brandished or possessed the firearm

16   as charged, and finally that you used, carried or brandished

17   or carried the firearm in relation to the crime of violence

18   or possessed the firearm in furtherance of the crime of

19   violence.  Do you understand those elements?

20          THE DEFENDANT: Yes, ma'am.

21          THE COURT:  I need to find whether or not there's a

22   factual basis for the plea, how would y'all like do that?

23          MS. MORRIS:  Your Honor, if I could state a factual

24   basis and have Mr. Ellis correct me if I say anything wrong.

25          MR. GLASSROTH:  That's fine.

1    THE COURT:  I will go ahead and hear you.

2    MS. MORRIS:  On June 14th of 2004 here in Montgomery

3    Mr. Ellis entered the Colonial Bank located at 671 South

4    Perry Street and demanded all the money in the bank. I think

5    actually he specifically demanded a million dollars. This

6    demand was specifically to Ms. Christine Smith who was the

7    assistant manager at the bank at that time. He was given in

8    response to such demand 40 thousand and 57 dollars. He -- at

9    that time he did have a firearm, the H & K Model USP nine

10   millimeter semiautomatic handgun. He then left the bank with

11   the 40 thousand and 57 dollars and proceeded down Highway 85.

12   Eventually the police caught him and when they caught him

13   they found the 40 thousand and 57 dollars, they found the

14   firearm, and then the clothing that he was described as

15   wearing. I think Mr. Glassroth will stipulate that this bank

16   was insured by the FDIC.

17   THE COURT:  Is that correct?

18   MR. GLASSROTH:  It was a federally insured

19   institution, yes, ma'am.

20   THE COURT:  Mr. Ellis, did you listen to the factual

21   basis set out by the Assistant U.S. Attorney?

22   THE DEFENDANT:  Yes, ma'am.

23   THE COURT:  Is it correct?

24   THE DEFENDANT:  Yes, ma'am.

25   THE COURT:  Is there anything that she said in that

1    factual basis that she recited that is not correct?

2              THE DEFENDANT:  No, ma'am.

3              THE COURT:  Okay. Does the Defendant wish to add

4    anything?

5              THE DEFENDANT:  No, ma'am.

6              THE COURT:  Okay. Then I take it everyone is

7    satisfied?

8              MR. GLASSROTH:  Your Honor, we believe there's a

9    factual basis for the counts as recited by Ms. Morris and

10   assented to by Mr. Ellis.

11             THE COURT:  How do you now plead to the charges

12   against you in counts one and two of the indictment, guilty

13   or not guilty?

14             THE DEFENDANT:  Guilty.

15             THE COURT:  It is the finding of the Court in the

16   case of United States versus Jonathan Ellis that the

17   Defendant is fully competent and capable of entering an

18   informed plea, that the Defendant is aware of the nature of

19   the charges and the consequences of the plea, and that the

20   plea of guilty is a knowing and voluntary plea supported by

21   an independent basis in fact containing each of the essential

22   elements of the offense. The plea is therefore accepted and

23   the Defendant is now adjudged guilty of that offense. Mr.

24   Ellis, a written presentence report will be prepared by the

25   probation office to assist the Court in sentencing. You will

1    be asked to give information for the report. Your attorney
2    may be present for that if you wish. The Court will permit
3    you and your counsel to read the presentence report and file
4    any objections to the report before the sentencing hearing,
5    and you and your counsel will have the opportunity to speak
6    on your behalf at the sentencing hearing. The date for that
7    hearing will be set by order. And until the time of that
8    sentencing hearing I will remand you to the custody of the
9    United States Marshal. Anything further?

10            MR. GLASSROTH:  Nothing from the defense, Your
11   Honor.

12            MS. MORRIS:  No, Your Honor.

13            THE COURT:  Okay. Thank you.

14            MS. MORRIS:  And thank you for doing this at the
15   last minute.

16            THE CLERK:  Court is recessed.

17            (At which time, 10:22 a.m., the hearing was
18   adjourned.)

19                  *    *    *    *    *

20            I certify that the foregoing is a correct transcript
21   from the record of proceedings in the above-entitled matter.
22   This the 28th day of November, 2005.

23

24                              _____
                                Official Court Reporter
25

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                FOR THE MIDDLE DISTRICT OF ALABAMA

 3                        NORTHERN DIVISION

 4


 5   UNITED STATES OF AMERICA

 6       vs.                    CASE NO:  2:04cr153-WHA

 7   JONATHAN ELLIS,

 8           Defendant.

 9


10


11
                      * * * * * * * * * *
12
                       SENTENCING HEARING
13
                      * * * * * * * * * *
14
              BEFORE THE HONORABLE W. HAROLD ALBRITTON, UNITED
15
     STATES DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday,
16
     November 30, 2005, commencing at 9:01 a.m.
17
     APPEARANCES:
18
     FOR THE GOVERNMENT:        Ms. A. Clark Morris
19                              Assistant United States Attorney
                                OFFICE OF THE UNITED STATES ATTORNEY
20                              One Court Square, Suite 201
                                Montgomery, Alabama  36104
21
     FOR THE DEFENDANT:         Mr. Stephen Roger Glassroth
22                              Attorney at Law
                                THE GLASSROTH LAW FIRM
23                              615 South McDonough Street
                                Montgomery, Alabama  36104
24
                   Proceedings reported stenographically;
25                    transcript produced by computer.
```

```
 1                    EXAMINATION INDEX
 2   CHRISTINE SMITH
         DIRECT BY MS. MORRIS                    9
 3
 4                    * * * * * * * * * *
 5       (The following proceedings were heard before the Honorable
 6       W. Harold Albritton, United States District Judge, at
 7       Montgomery, Alabama, on Wednesday, November 30, 2005,
 8       commencing at 9:01 a.m.:)
 9     (Call to Order of the Court)
10          THE COURT:  All right.  I'll call the case of United
11   States of America versus Jonathan Ellis.  Is the government
12   ready to proceed?
13          MS. MORRIS:  We are, Your Honor.
14          THE COURT:  Is the defendant ready?
15          MR. GLASSROTH:  Yes, sir.
16          THE COURT:  Come forward, please.
17          Good morning, Mr. Glassroth.
18          MR. GLASSROTH:  Good morning, Your Honor.  How are you
19   today?
20          THE COURT:  All right.
21          Mr. Ellis, have you, and Mr. Glassroth, have you, as
22   defense counsel, reviewed the presentence report, including any
23   revisions that may have been made after the initial disclosures?
24          THE DEFENDANT:  Yes, sir, Your Honor.
25          THE COURT:  Have you, Mr. Glassroth?
```

3

1   MR. GLASSROTH:  We have, Your Honor.  Yes.
2   THE COURT:  All right.  The last presentence report or
3   the addendum to it shows two objections; is that correct?
4   MR. GLASSROTH:  That is correct, Your Honor.
5   THE COURT:  Mr. Ellis, you may have a seat back at the
6   table, and we'll take these up.
7   MR. GLASSROTH:  Your Honor, Mr. Ellis wants to address
8   the Court.  Do you want him to wait on that until you're ready
9   to pronounce sentence?
10  THE COURT:  Yes.  We'll -- yes.  We'll take that up in
11  a minute.
12  MR. GLASSROTH:  Yes, sir.
13  THE COURT:  Now, there are two objections.  Let's take
14  them up one at a time.  And the first objection is to the
15  statement in the presentence report that the mandatory minimum
16  in this case of one of the counts is seven years.  All right.
17  I'll hear from you on that.  And then if the government wants to
18  put on testimony or evidence, I'll hear from them.
19  MR. GLASSROTH:  Your Honor, it's a very straightforward
20  issue, and it's really at the core of what the Supreme Court
21  decided in *Booker*.  In this case, Mr. Ellis entered the plea,
22  and the factual basis that supported the plea upon which he was
23  adjudged guilty was the conduct that is punishable by the
24  five-year minimum mandatory, not the seven-year minimum
25  mandatory.  And it's Mr. Ellis's position that he cannot be

4

1   sentenced to any term higher than the five-year minimum
2   mandatory without there being a factual basis that's determined
3   on the standard of beyond a reasonable doubt and determined by a
4   jury.
5   In this case, the conduct that was admitted to was the
6   conduct punishable under Section 924 by the five-year term, not
7   the seven-year term.  Obviously, it was a guilty plea.  There
8   was no jury involved.  So the Court is simply not capable,
9   consistent with the decision in *Booker* and the constitutional
10  protections that the Court determined therein, to impose a
11  greater sentence than what the statutory maximum says for the
12  conduct that was determined in this case, and that's the
13  five-year term.
14  THE COURT:  It appears to me that the case that's
15  mentioned by the probation officer of *Harris versus U.S.*, 536
16  U.S. 545, Supreme Court case of 2002, is directly on point.  How
17  do you distinguish that?
18  MR. GLASSROTH:  Well, Your Honor, I think that that was
19  decided before *Booker*.  And I think that *Booker* -- you know,
20  *Blakely* first and then *Booker* following said that really the
21  only thing that the Court was capable of looking into and
22  determining as a sentencing factor were prior convictions, the
23  recidivist -- the recidivist ones that the Court is able to do.
24  That -- that's the only kind of sentencing factor that is
25  unchanged after *Booker*.  Only -- only whether an offender is a

5

1   recidivist is now capable of being deemed a sentencing factor
2   under -- under the teaching of *Booker*.  We can't take anything
3   else that would not be a valid sentencing factor and say, well,
4   because *Harris* says you can, then you -- then you can.  *Harris*,
5   I think, is modified now by *Booker*.  And of course, we have to
6   await what happens with the Court.  But I think that the
7   language of *Booker* is clear, and only -- only prior convictions
8   for determining whether someone is a recidivist for sentencing
9   purposes is capable of being determined by the Court as a
10  sentencing factor on a standard of proof that is less than
11  beyond a reasonable doubt and something that's not determined by
12  a jury.
13  THE COURT:  Now, you're basing this on what?  On the
14  plea agreement?
15  MR. GLASSROTH:  Well, Your Honor, the plea colloquy
16  itself as well.
17  THE COURT:  It set out that the mandatory minimum was
18  five years and the maximum would be life?
19  MR. GLASSROTH:  And the conduct that was admitted to at
20  the plea colloquy before the magistrate judge was that he used a
21  firearm in furtherance of or in the course of.
22  THE COURT:  So there was no testimony one way or the
23  other about whether he brandished.
24  MR. GLASSROTH:  That's correct, Your Honor.  The
25  factual basis was use of the firearm.

6

1   THE COURT:  Okay.  And so your contention is that the
2   matter of brandishing is not a sentencing factor any longer
3   under *Booker* but would be something that would have to be
4   submitted to the jury.  Is that your position?
5   MR. GLASSROTH:  That is my position, Your Honor, that
6   the question -- because it results in an enhanced -- in an
7   enhanced sentence by a two-year period, that it ceases being
8   something that's capable of resolution by the preponderance
9   standard and absent a jury.  So I think at this stage of our
10  juris prudence, *Booker* demands that this now be deemed a factor
11  that must be submitted for determination beyond a reasonable
12  doubt and by a jury unless, of course, the defendant admits to
13  the conduct in the course of the entry of the plea, which we
14  don't have here.
15  THE COURT:  All right.  Thank you.
16  Ms. Morris, I'll hear from you.
17  MS. MORRIS:  Your Honor, I think there's two issues
18  here that Mr. Glassroth kind of argued.  First is that it was a
19  *Booker* issue and that *Booker* overrules *Harris*.  Obviously, the
20  government's position would be that *Harris* still stands as it
21  was written, that *Booker* did not alter that ruling at all.
22  That's the first issue.
23  Secondly, I can't tell the Court that I recall -- in
24  fact, I know that I don't -- I agree with Mr. Glassroth that the
25  word "brandished" was not used during the factual basis, that I

7

1  believe that the word "used" was the actual verbiage that was
2  used. We may be arguing, you know, technicalities here; we may
3  be arguing the law. I'm not sure. I guess that's for the Court
4  to decide. However, the fact that --
5      THE COURT: One thing -- one place we are is in view of
6  this objection that there's no evidence before me of
7  brandishing.
8      MS. MORRIS: Well, I do believe -- and I think
9  Mr. Glassroth will agree -- that he -- that the factual colloquy
10 did bring out that he used this gun to rob the bank. It didn't
11 stay in his pocket. That came out in the factual colloquy. The
12 fact that the word "brandished" was not used, the fact -- but I
13 mean it was -- I recall that during the factual colloquy, that
14 it came out that he pulled a gun, that he used this gun in
15 furtherance of. Again, you know, that's where we are in terms
16 of that. I don't have an agent -- well, I do have here some of
17 the victims that can testify for the Court, if possible, as to
18 what Mr. Ellis did with the gun.
19     THE COURT: Yes. Well, the point of the *Harris* case is
20 that this is a sentencing issue. But in order for me to
21 determine that there was brandishing, there's got to be some
22 evidence of that. Brandishing, according to the presentence
23 report, was the pointing of the pistol at the manager of the
24 bank. But if this is going to be a sentencing factor as the
25 government contends, then there needs to be some evidence before

8

1  me of that.
2      MS. MORRIS: Yes, Your Honor.
3      THE COURT: So if you're prepared to put that evidence
4  on, go ahead.
5      MS. MORRIS: Yes, Your Honor. Your Honor, the
6  government calls Christine Smith to the stand.
7      THE COURT: All right.
8      MR. GLASSROTH: Your Honor, for the record, we object
9  to the Court conducting any hearing on the determination of this
10 issue based on *Booker*. And my position is that it is not a
11 factor for the Court to determine at sentencing, that this is a
12 factor that either has to have admission by the -- by the
13 defendant at the guilty plea or determination by the jury beyond
14 a reasonable doubt. I don't think it's proper for the Court,
15 and I object to the Court taking into account any testimony here
16 to make a determination on this question.
17     THE COURT: All right. I understand your objection,
18 and we'll see what the testimony is.
19     Go ahead.
20     THE CLERK: Would you raise your right hand.
21     (The witness is sworn.)
22     THE CLERK: Be seated.
23     **CHRISTINE SMITH**, the witness, having been duly sworn,
24 testified, as follows:
25

9

1               DIRECT EXAMINATION
2  BY MS. MORRIS:
3  Q. Could you state your name for the record, please.
4  A. Christine Smith.
5  Q. And Ms. Smith, where do you work presently?
6  A. At Colonial Bank.
7  Q. And did you work at Colonial Bank on June 14th of 2004?
8  A. Yes.
9  Q. And were you actually working that day?
10 A. Yes.
11 Q. What, if anything, out of the ordinary happened that day, if
12 you could just tell the Court?
13 A. Jonathan Ellis entered the bank. After waiting for several
14 moments to see me, he wanted to see me in my office. And he
15 proceeded to pull out a gun --
16 Q. Ms. Smith, let me stop you there. What is your job at
17 Colonial Bank?
18 A. Right now, I'm the branch manager. At the time, I was the
19 assistant branch manager, but I was the only -- what we call
20 platform personnel, the only person that sat behind a desk
21 present.
22 Q. Okay. And if you'll proceed. I apologize. I just wanted
23 to clarify that.
24 A. But he had said that he wanted to open an account and some
25 other things, and then he proceeded to pull out a gun. And he

10

1  held it at my stomach/chest area maybe a few inches away for
2  several moments as we discussed what I was capable of and what I
3  was not with his request.
4  Q. What do you mean by capable of?
5  A. He was demanding a million dollars in cash. And number one,
6  I didn't have a million dollars, and I did not want him to get
7  violent in any way by me not being able to produce it. So I was
8  trying to explain to him that I simply we don't keep a million
9  dollars in cash on hand. He had told me that there were two
10 sharpshooters on top of the building, you know, so I couldn't
11 really do anything about that. And he told me that I needed to
12 find a way to get him a million dollars. And I proceeded to
13 say, you know, short of ordering it in from the fed and having
14 them bring it in, I cannot produce that money. And at that
15 point in time, he told me that I better do something. And he
16 stood up, handed me a bag, and held the gun at my head and
17 proceeded to push me across the lobby with the gun at my head.
18 At that point in time, I went behind the teller line; and he
19 stayed, you know, in the lobby area of the teller line while he
20 proceeded to point the gun (indicating) at myself and several
21 other employees demanding the cash.
22 Q. And did you give him the cash?
23 A. Yes, ma'am.
24 Q. And then what happened?
25 A. He left the bank, and he told us not to follow him or

11

1  anything else.
2      MS. MORRIS: I have nothing further at this time, Your
3  Honor.
4      THE COURT: All right.
5      MR. GLASSROTH: I have no questions.
6      THE COURT: All right. Ms. Smith, you may come down.
7      Ms. Morris, is there anything else that you want to put
8  on or say about this?
9      MS. MORRIS: Your Honor, I think I could put on another
10  witness that would basically say the same thing that Ms. Smith
11  just stated to the Court. So I think that would be somewhat
12  cumulative at this point.
13      THE COURT: All right. Mr. Glassroth, anything else?
14      MR. GLASSROTH: No, Your Honor. I think I've set out
15  Mr. Ellis's position on this, and I don't think I can add
16  anything further to that argument, only to say that what I've --
17  what I've recounted to the Court is really what the position is.
18      Oh, I will say one other thing. I don't recall the
19  plea colloquy in the same way that Ms. Morris recounted it to
20  the Court. I don't recall there being any discussion of
21  brandishment at the -- at the entry of the plea.
22      MS. MORRIS: Your Honor, I agree. There was no
23  discussion of brandish.
24      MR. GLASSROTH: Or even the gun coming out and being
25  shown. I don't recall anything other than him using a gun. But

12

1  again, it was some time ago, Your Honor, and our recollections
2  are what they are.
3      THE COURT: Well, for the purpose of making the
4  determination in this case, I'm going to assume that the
5  defendant's position is correct on what was said and that there
6  was no testimony or agreement by the defendant at the plea
7  colloquy that the gun was brandished or any details about what
8  was done with the gun, simply that he had a gun.
9      All right. Anything further on this?
10      MR. GLASSROTH: No, Your Honor.
11      THE COURT: Well, first, I find as a fact from the
12  testimony of Ms. Smith that the gun was brandished, and
13  brandished within the meaning of the statute, 18 U.S.C., Section
14  924(c)(1)(A). The issue is whether -- the only issue, then,
15  that being fact, is whether that's a sentencing factor that can
16  be considered by me although it was not admitted by the
17  defendant at the plea colloquy and has not been admitted today.
18      I find that the case of Harris versus United States
19  that I mentioned earlier is directly on point in holding that
20  the seven-year -- not a firearm, but in holding that the
21  seven-year mandatory minimum provided by (c)(1)(A)(ii) is a
22  sentencing factor. The defendant admitted to his guilt under 18
23  U.S.C., Section 924(c). The defendant also -- there's language
24  in the plea agreement, which I've reviewed, that clearly
25  acknowledges that any recommendations or stipulations are not

13

1  binding.
2      So the only issue that I understand the defendant to be
3  presenting is whether in this case, for sentencing purposes, the
4  mandatory minimum for count two is seven years rather than five
5  years, based on a finding by the Court for brandishing rather
6  than a finding by the jury or an admission by the defendant.
7  Does that fairly state your position, Mr. Glassroth?
8      MR. GLASSROTH: It does, Your Honor.
9      THE COURT: All right. And I hold that it is a
10  sentencing factor. I find by a preponderance of the evidence,
11  which is the standard we have, that the gun was brandished. If
12  it were necessary to prove it beyond a reasonable doubt, the
13  government's testimony has certainly proved the brandishing
14  beyond a reasonable doubt. So having found that that is a
15  sentencing factor and that, in fact, the gun was brandished, I
16  overrule the objection.
17      Now, your next objection has to do with the enhancement
18  for endangerment and flight; is that correct?
19      MR. GLASSROTH: Yes. That's the Guideline Section
20  3C1.2 enhancement for two levels.
21      THE COURT: All right. I'll hear from you on that.
22      MR. GLASSROTH: Yes, sir. And again, this is a fairly
23  straightforward one. As the probation officer correctly notes
24  in the response to defendant's objection on this, mere flight to
25  avoid arrest is not sufficient to warrant the increase under

14

1  3C1.2. And that's what we have here. We have mere flight, you
2  know, simple flight, nothing done to create a risk of danger in
3  the action taken by Mr. Ellis, which is how the Court has to
4  view it. The Court has to take a look at what Mr. Ellis did in
5  the course of flight and determine whether it was mere flight or
6  whether it was something more than mere flight, that there is a
7  higher -- either a higher mental element or a higher standard of
8  conduct that could be deemed --
9      THE COURT: Wait a minute. You said a higher mental
10  element?
11      MR. GLASSROTH: Well, not really a mental element, but
12  we're looking at recklessness as something higher than what mere
13  flight would be. It would have to be a standard of conduct that
14  would be greater than simple flight.
15      Now, we don't get any guidance from the guideline
16  itself on what would constitute simple flight. I suggest to the
17  Court that it's not just someone walking away or running away.
18  I think that, you know, in these times when someone is fleeing
19  from a crime, it can be expected to be done in any number of
20  ways, on foot, on a motorcycle, on a bicycle, in a car, in a
21  truck. There's a number of ways that flight can occur. I think
22  that what we're talking about in the guideline enhancement for
23  the reckless endangerment is conduct taken that is greater than
24  ordinary conduct.
25      And in this case, there is no information that

15

1  Mr. Ellis was going down one-way streets, riding on the
2  Interstate the wrong way, going in speeds in excess of the speed
3  limit, or anything like that that would really create the
4  recklessness situation. Here, it's straightforward. He gets in
5  his car, leaves the bank, gets on the Interstate, drives on
6  Interstate 85, and -- and goes about his way. And the
7  uncontroverted evidence is that there was no high-speed chase.
8  Of course, law enforcement pursued. They did use the -- those
9  strips at one point. But again, nothing that Mr. Ellis did was
10  recklessness in and of itself. It was simply fleeing the scene
11  of the robbery.
12         So it is our position that based on the actual conduct
13  engaged in by Mr. Ellis following the robbery, which would be
14  the flight from the robbery, did not rise to the level that the
15  Court should impose the additional two levels under 3C1.2.
16         THE COURT: All right. Ms. Morris, I'll hear from you.
17         MS. MORRIS: Your Honor, I think the government agrees
18  with everything Mr. Glassroth said with the exception of when
19  they did put the strips out, Mr. Ellis did attempt to avoid the
20  strips that puncture your tires and went off the road. I can't
21  represent to the Court there was a high-speed chase. There was
22  a chase, of sorts, I mean in terms of law enforcement pursuing
23  Mr. Ellis. They pursued him for a long period of time in
24  terms -- I think it was Lee County, is where he was eventually
25  arrested. But Mr. Glassroth has correctly given the Court the

16

1  facts as we know them.
2         Now, the question becomes whether that is -- takes that
3  step of -- you know, the fact that eight police cars are
4  following him and they had to shut down the Interstate and lay
5  out the spike strips, my contention would be that would be
6  enough to fall under the guidelines for the enhancement.
7         THE COURT: Have you got any testimony you want to put
8  on about this?
9         MS. MORRIS: Your Honor, I don't.
10         THE COURT: Okay. So we're basing a determination,
11  then, on the facts that are set out in the presentence report.
12         MS. MORRIS: That is correct, Your Honor.
13         THE COURT: All right. Go ahead.
14         MS. MORRIS: Your Honor, go ahead --
15         THE COURT: Oh. I thought you were -- I thought I
16  interrupted you.
17         MS. MORRIS: No, sir.
18         THE COURT: Well, what is the contention of the
19  government?
20         MS. MORRIS: The contention is based on the facts as
21  Mr. Glassroth laid out, the fact that he was -- that they shut
22  down the Interstate, that there were, you know, eight to ten
23  police cars chasing him down the street, just as Mr. Glassroth
24  contended -- we don't -- we don't dispute that. But the fact
25  that they had to lay out the spike strips and such, that

17

1  elevates it to a level that would qualify for the enhancement.
2  We're not disputing the facts as Mr. Glassroth stated, in other
3  words.
4         THE COURT: All right. And I understand Mr. Glassroth
5  is not disputing the facts set out in the presentence report but
6  just simply saying that doesn't amount to the enhancement. Is
7  that correct?
8         MR. GLASSROTH: Yes, Your Honor. And I'll also point
9  out to the Court that the mere fact that there were people
10  attempting to apprehend him doesn't change the nature of the
11  flight. And the fact that Mr. Ellis himself ran off the road I
12  think is controlled by paragraph four of the application notes
13  following 3C1.2, that the risk has to be to another person. So
14  I think that putting out the strips and then causing Mr. Ellis
15  to go off the road does not affect another person. So I think
16  that under the facts that we have here, that the enhancement is
17  not proper to be added to Mr. Ellis.
18         THE COURT: Well, the offense conduct is set out in
19  paragraph five of the -- let me make sure the latest one is the
20  same number -- yes, paragraph five. And that shows that during
21  the pursuit, that members of the Alabama State Troopers and
22  Montgomery County Sheriff's Department were called to assist.
23  Troopers reported that during the pursuit -- and I think it's
24  conceded by everybody that there was no violation of the speed
25  limit. But during the pursuit, he pulled up next to Ellis's

18

1  vehicle on the driver's side, at which time Ellis displayed a
2  handgun. Upon seeing the firearm, the trooper immediately fell
3  back behind Ellis and continued to pursue.
4         The car chase continued through Macon County and on
5  into Lee County where the Auburn Police Department attempted to
6  stop Ellis's vehicle with road spikes. Ellis managed to avoid
7  the spikes on I-85 in Auburn, Alabama, and returned to the
8  Interstate traveling in the southbound lanes. At that time,
9  Auburn police attempted to stop Ellis's vehicle by shooting out
10  its tires. During this incident an Auburn police officer was
11  shot by a fellow officer and suffered a non life threatening
12  injury. Ellis was apprehended a short time later when he
13  attempted to flee from his vehicle through the wooded area.
14         I believe and find that this constituted more than
15  simply trying to get away. The fact that he was not speeding or
16  anything is one factor to consider, and I have considered that
17  factor. But the having a firearm, continuing to try to avoid
18  after other vehicles were in pursuit of him, with spikes being
19  put out and avoiding those and causing the problems that it did
20  as set out in the presentence report, I find that that is
21  sufficient to constitute evidence necessary for the enhancement
22  of two points as set out in the presentence report, and I
23  overrule that objection.
24         MR. GLASSROTH: Your Honor, if I may just point out one
25  thing that the Court just said. You were talking about the fact

**19**

1 that he didn't stop and that he had to be pursued and all of
2 that. That still is flight. That doesn't change -- the fact
3 that he was being pursued and didn't stop doesn't take it out of
4 the realm of flight and change it into something else. The
5 fact -- I mean flight is continuing until someone is
6 apprehended. And the question is did the -- did the action in
7 the flight create any risk to another person. The only risk
8 that we know about as a result of the strips that the Court
9 observed as a factor involved in this was simply to Mr. Ellis,
10 not to another person. So I think that relying on those really
11 doesn't support the Court's finding that the -- that the flight
12 was anything more than flight.
13        THE COURT: I understand your objection. I simply
14 disagree with it. There's some point where flight turns into a
15 flight that creates a risk to others. And under the facts of
16 this case, it certainly did. Flight, including the showing of
17 the firearm, including the continued flight with knowledge that
18 more than one car was attempting to apprehend him, the fact that
19 somebody was shot under circumstances caused by -- accidentally,
20 but caused by the nature of the circumstances, all of that added
21 together constitutes more than mere flight and is sufficient for
22 the enhancement. I overrule the objection.
23        MR. GLASSROTH: Yes, sir. Those conclude the
24 objections that we have, Your Honor.
25        THE COURT: All right. Then having made findings as to

**20**

1 the objections to the presentence report, the -- I believe the
2 government filed a motion for a third level of departure, did
3 you not, on this, or not?
4        MS. MORRIS: I believe we did, Your Honor.
5        THE COURT: All right. I think that's been taken into
6 account.
7        MS. MORRIS: Your Honor, I --
8        THE COURT: No, that's not correct.
9        MS. MORRIS: Did I not?
10       THE COURT: Yes. The plea agreement, I see, provided
11 for a two-level departure, and that's what's been treated by the
12 probation office.
13       MS. MORRIS: You are correct, Your Honor. Thank you.
14       THE COURT: All right. Then the Court finds that under
15 the advisory guidelines, the offense level for count one is 23,
16 the criminal history category is I, the guideline range is from
17 46 months to 57 months, the supervised release period is from
18 three years to five years, and the fine range is from $12,500 to
19 $125,000. The authorized term of imprisonment for count two is
20 not less than seven years. Pursuant to 18 U.S.C., Section
21 924(c)(1)(A)(ii), the sentence as to count two must run
22 consecutive to the sentence in count one.
23       Now, Ms. Morris, is there anyone here from the bank
24 that wishes to address the Court?
25       MS. MORRIS: Yes, Your Honor. There are two victims

**21**

1 from the bank that do wish to make statements to the Court.
2        THE COURT: All right. You can have them come forward.
3 I'll hear from you just from the lectern there. All
4 right, Ms. Smith. This is Christine Smith, who testified a few
5 minutes ago.
6        MS. SMITH: Yes, sir. Today I'm speaking on behalf of
7 bank employees nationwide. The acts of this selfish man changed
8 the lives of so many innocent people, good, law-abiding
9 hard-working people.
10       Jonathan Ellis, as I said before, he held a gun at my
11 head. According to my facts at that time, the gun was loaded,
12 as several law enforcement officers can attest to. As we heard
13 it over the police radio that was going at that time, that there
14 were shots fired, and assumingly by him also. I can only assume
15 if he fired his gun at them, then he could also easily have
16 killed me. He was probably trying to kill them. I hold him
17 solely responsible for the gunshot that the officer did receive.
18       There were several months that I carried a burden of
19 guilt for that officer being shot and wounded, because that
20 officer was innocent and he was only doing his job to recover my
21 bank's money. I now know that there was only one man
22 responsible for the officer being wounded, and it was Jonathan
23 Ellis, because it was his acts that led to the whole incident
24 that happened. How many more lives could have drastically been
25 affected? Y'all were just talking about him fleeing. Over the

**22**

1 police radio that I heard, he was driving recklessly and he was,
2 you know, avoiding the police. How many more innocent people
3 could have been hurt? He was only thinking of himself. He
4 wasn't concerned about other drivers or other people at all.
5        I had a -- I had a young lady that began working at the
6 bank two hours before this robbery. She was a young lady
7 excited about a new career in banking. After Jonathan Ellis
8 waived the gun at her behind the teller line, she was
9 traumatized. She was not able to sleep or eat for days. And
10 her exciting new career path changed, and she was not able to
11 return to the teller line. When I wanted to speak to her
12 several days later, she barely could enter the bank at all.
13       Although no shots were fired, how easily a
14 life-changing event could have occurred. I could have easily
15 been killed or wounded. But that didn't matter to Jonathan
16 Ellis. What gives this man more power than other people in the
17 world? Why does he have -- why does he not have to go to work
18 every day like the rest of us? Why does he not have to earn a
19 living? Why does he not care who gets hurt in the process of
20 his selfish acts or what their families go through? This
21 affected not only myself and my employees but also our
22 families. Jonathan Ellis is responsible for his actions. I
23 would like to see that he pays for what he has done. Thank you.
24       THE COURT: All right.
25       MS. MORRIS: Your Honor, Ms. Jennifer Johnson would

23

1  like to make a statement as well.
2          THE COURT: All right.
3          All right. Ms. Johnson.
4          MS. JOHNSON: I tried for a long time to think of what
5  I wanted to say today. I thought about it for a year and a
6  half. But as the day got closer, I couldn't think of any of
7  it. Nothing seemed right. But I guess what I really want to
8  say is to Jonathan Ellis.
9          I tried for a long time to hate you, but my anger has
10  given way to pain. I view the fact -- I view the fact that you
11  felt the need to threaten the lives of innocent people in order
12  to get money that you neither earned nor deserved. I view the
13  fact that you will spend the next part of your life in prison
14  because you were selfish and thought only of yourself.
15          We're the same age. And yet while I'm living my life
16  and going to school and getting married and having kids, you
17  won't be able to experience any of that because you felt you had
18  the right to threaten people's lives for a little money. I've
19  spent the past year and a half thinking about you, being scared
20  to think what you did, worrying that it could happen again,
21  feeling my heart leap into my throat every time I heard the door
22  to the bank open or when I thought I saw your face in the
23  customer line.
24          After this, I'm sure I'll still think of you and what
25  you did, but it won't be with fear. It will be with pain. You

24

1  deserve nothing less than everything the law can do to you, and
2  I deserve to know that you'll spend the next 15 years of your
3  life in prison thinking of me and regretting every day that you
4  did it.
5          Thank you.
6          THE COURT: Is there no one else from the bank?
7          MS. MORRIS: No, Your Honor.
8          THE COURT: Mr. Glassroth, you said Mr. Ellis wanted to
9  speak?
10          MR. GLASSROTH: Yes, sir.
11          THE COURT: All right. Come forward.
12          THE DEFENDANT: First of all, I would like to apologize
13  to Ms. Smith and the other female bank employee that just came
14  up. I know that I made a selfish decision. There's nothing
15  that I can do to change what I have done. I'm deeply sorry for
16  any psychological trauma that my bad decision has done to them,
17  to the people that were in the bank, to their families. I'm
18  sorry.
19          I know there's no doubt about it, that the 17 months
20  that I've been incarcerated has been beneficial to me. There's
21  a lot that I have looked at, I've seen. I've made a lot of bad
22  decisions, and there's no doubt I have to pay for those
23  decisions. I'm not looking into -- of course, I'm asking for
24  mercy. I ask to plea on a mercy plea.
25          I just -- I just apologize to the victims. I know that

25

1  they're hurting. Believe me, it's -- I know I've done something
2  to them. I'm sorry. I'm hurting. I wanted to write them a
3  letter of apology, but I didn't know if that was legal or not,
4  so I didn't. So I just prayed to my Jehovah God to guide them,
5  and hopefully nothing like that ever happens at that bank
6  anymore.
7          I've been studying with the Witnesses, Jehovah
8  Witnesses, for several months now. And the things that I have
9  learned have renewed me, have helped me to not only recognize
10  the bad decisions that I made, but know that people have
11  feelings. People -- we're human beings, and we all have
12  feelings. I'm sorry I acted on my inborn tendencies to sin.
13  All of us have inborn tendencies to sin. I acted on that bad --
14  that -- that deep sin that dwells within us.
15          Like I said, only thing I can say is that I'm sorry.
16  There's nothing I can do. I've committed a bad act. And I just
17  ask the Court to show mercy.
18          I'm sorry, Miss Christine. I'm sorry, bank employee.
19  I'm absolutely sorry. I'm sorry.
20          THE COURT: Mr. Ellis, I'm glad to hear you say what
21  you have. People can change and find inner peace even in
22  prison.
23          THE DEFENDANT: Yes, sir.
24          THE COURT: I hope you'll be able to do that.
25          THE DEFENDANT: Yes, sir.

26

1          THE COURT: Mr. Glassroth, is there anything that you
2  would like to say before I pronounce sentence?
3          MR. GLASSROTH: Your Honor, I think we've covered that
4  in the objections.
5          THE COURT: All right. Ms. Morris?
6          MS. MORRIS: No, Your Honor.
7          THE COURT: All right. The sentence will now be
8  stated, but you'll have a final chance to make legal objections
9  before sentence is imposed.
10          In determining the particular sentence to be imposed,
11  the Court has considered the factors enumerated in 18 U.S.C.,
12  Section 3553(a), including consideration of the applicable
13  advisory guidelines. I've also considered the evidence of the
14  nature of this that we've heard this morning, and I would say
15  that although I have found that the seven-year mandatory minimum
16  applies as to count two, even if it were a five-year minimum,
17  under the circumstances, that would have no effect on the
18  sentence that I'm going to enter in this case. The five-year
19  mandatory minimum would be insufficient, in my opinion, to
20  consider on count two. So although I'm considering seven years
21  as the mandatory minimum, I would sentence to at least seven
22  years on that even if it were a five-year mandatory minimum.
23          I've also considered the guidelines as to the other
24  count. And based on all of those considerations, the advisory
25  guidelines, the various matters set out at Section 3553(a), I

**Risa L. Entrekin, RDR, CRR, Official Court Reporter 334-240-2405**

27

1  find that a sentence of 141 months is a reasonable sentence in
2  this case.
3         Therefore, it is the judgment of the Court that you are
4  hereby committed to the custody of the Federal Bureau of Prisons
5  to be imprisoned for a total term of 141 months.  This term
6  consists of 57 months on count one and 84 months on count two to
7  be served consecutively.  You are remanded to the custody of the
8  United States Marshal.
9         You shall pay to the U.S. District Court Clerk a
10  special assessment fee of $200, which is due immediately.  Based
11  on your inability to pay, the Court waives imposition of a fine.
12         Upon release from imprisonment, you shall be placed on
13  supervised release for a total term of five years.  This term
14  consists of five years on count one and five years on count two,
15  all such terms to run concurrently.  Within 72 hours of release
16  from custody, you shall report to the probation office in the
17  district to which you are released.  While on supervised
18  release, you shall comply with the mandatory and standard
19  conditions of supervised release on file with this Court.
20         The Court also orders the following special
21  conditions.  You shall submit to a search of your person,
22  residence, office, or vehicle, pursuant to the search policy of
23  this Court.  You shall cooperate in the collection of DNA.  The
24  Court finds that restitution has been made in full to the
25  victims.

28

1         Now, are there any objections to the sentence or to the
2  manner in which the Court pronounced it?  For example, do you
3  have any objections to the Court's ultimate findings of fact or
4  conclusions of law?  Mr. Glassroth?
5         MR. GLASSROTH:  Your Honor, only with respect to the
6  Court's findings with respect to the two objections that we
7  had.  Other than that, we have none.  But I would renew those
8  here.
9         THE COURT:  And they're overruled.
10         Ms. Morris?
11         MS. MORRIS:  No.  No, Your Honor.
12         THE COURT:  All right.  Pursuant to the plea agreement,
13  the right of appeal has been waived by the defendant.
14         Mr. Ellis, you've made the first step toward change in
15  your life, even though you're being imprisoned, by recognizing
16  the seriousness of what you've done, by apologizing to two of
17  the victims, although there are many more in this case.  People
18  can change in prison, and people can do good things for others.
19         THE DEFENDANT:  That's right.
20         THE COURT:  I hope you're sincere about that and will
21  do that.
22         THE DEFENDANT:  Yes, sir.
23         THE COURT:  You're recommitted to the custody of the
24  United States Marshal.
25         THE DEFENDANT:  Thank you, Your Honor.

29

1         THE COURT:  Mr. Glassroth, that's all you have this
2  morning, isn't it?
3         MR. GLASSROTH:  It is, Your Honor.  May I be excused?
4         THE COURT:  You may.
5         MR. GLASSROTH:  Thank you.
6         THE COURT:  Thank you for your services.
7  (Proceedings concluded at 9:43 a.m.)
8                * * * * * * * * * *
9                COURT REPORTER'S CERTIFICATE
10         I certify that the foregoing is a correct transcript
11  from the record of proceedings in the above-entitled matter.
12         This 15th day of December, 2006.
13
14
15                /s/ Risa L. Entrekin
                  Registered Diplomate Reporter
                  Certified Realtime Reporter
16                Official Court Reporter
17
18
19
20
21
22
23
24
25