Middle District of Alabama
Office of Clerk, United States District Court
P.O. Box 711
Montgomery, AL  36101-0711

RECEIVED

2007 JUL 27  A 10: 29

DISTRICT COURT
DISTRICT ALA.

Dear Clerk:

Enclosed herein please fine the following for filing:

1.  Copy of corrected 28 USC 2255 Brief.

2.  Affidavit of Jonathan Ellis replying to the affidavit relating to claims of ineffective assistance of counsel.

3.  Affidavit in support of 2255 motion claiming that Attorney Stephen R. Glassroth failed to file a notice of appeal.

4.  Notice of Filing Demand to Federal Habeas Corpus Rule 6.

These items are not an amended version of the version filed on June 7, 2007.  The earlier version had clerical errors, while this version has corrected the errors.  These documents are to be filed in place of the earlier documents.

These  documents have been proofread and subsequently corrected.

Thanks,

Jonathan Y. Ellis
June 28, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED

NORTHERN DIVISION    2007 JUL 27  A 10: 28

|  |  |  |
|---|---|---|
| JONATHON ELLIS | ) | |
| Petitioner | ) | |
| vs. | ) | Civil No.206-CV-1013-WHA-SRW |
| | ) | Criminal No. 204-CC-153A |
| UNITED STATES OF AMERICA | ) | |
| Respondent | ) | |
| | ) | |

## NOTICE OF FILING DEMAND TO FEDERAL HABEAS CORPUS RULE 6

Comes now, Jonathan Y. Ellis, petitioner in the above styled action, by and through himself and hereby submits this notice of filing the attached document containing (2) separate demands for disclosure of items pursuant to Federal Habeas Corpus Rule 6.

Dated:  This ⊥ day of June, 2007.

Respectfully submitted,

Jonathan Y. Ellis
254 Peachtree St., SW
Atlanta, GA 30303

1

Mrs. Morris
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
ASB 1613 N77A

**Re: Jonathan Ellis v. United States - 206-CV-1013**

Dear Mrs. Morris:

Please accept this letter as Jonathan Ellis' demand for Discovery pursuant to Habeas Corpus Rule 6. This demand is to be read to include:

**PETITIONER'S CRIMINAL HISTORY**: Specifically, Mr. Ellis herein requests that the government provide any information in addition to the pre-sentence report already disclosed.

**COMPUTATION ON HOW MANY DEFENDANTS HAVE BEEN CHARGED, CONVICTED AND SENTENCED FOR BOTH 18 U.S.C. 2113(d) AND 18 U.S.C. 924( c ) BASED ON THE SAME CONDUCT**

**COMPUTATION ON HOW MANY DEFENDANTS WERE AFRICAN AMERICAN AND HOW MANY DEFENDANTS WERE WHITE THAT WERE CHARGED, CONVICTED AND SENTENCED FOR BOTH 18 U.S.C. 2113(d) AND 18 U.S.C. 924( c )**

**COPY OF ALL CORRESPONDENCE BETWEEN STEPHEN GLASSROTH AND THE UNITED STATES ATTORNEY'S OFFICE, PRIOR TO THE COMMENCEMENT OF THE INSTANT ACTION, THAT HAS JONATHAN ELLIS AS THE SUBJECT MATTER**

**COPY OF ALL CORRESPONDENCE BETWEEN THE UNITED STATES ATTORNEY'S OFFICE AND THE UNITED STATES PROBATION OFFICE WHICH HAS JONATHAN ELLIS AS THE SUBJECT MATTER.**

It appears that the government, in bad faith, instructed the U.S. Probation Office to calculate Mr. Ellis' sentence based on an unlawful enhancement.

Sincerely,

Jonathon Y. Ellis
254 Peachtree St., SW
Atlanta, GA 30303

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

### NORTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN ELLIS, | ) | |
| Petitioner | ) | Case No. 2:06 CV 1013-WHA-SRW |
| v. | ) | (2:04 CR 153-WHA) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Respondent. | ) | |
| | ) | |

## Petitioner's Reply to 2255 Motion

**COMES NOW** Jonathan Y. Ellis, by and through himself and in accordance with this court's order, replies to the United States response to the above captioned cause.

## I. Preliminary Statement

Jonathan Ellis moves this court pursuant to Title 28 United States Code Section 2255 to issue an order to vacate, set aside or correct his sentence because the proceedings against him were violative of the Fifth and Sixth Amendments to the United States Constitution.

## A. Background

On June 14, 2004, a grand jury for the Middle District of Alabama returned a two-Count indictment against Mr. Ellis. See court records.

Count 1 charged that, on or about June 14, 2004, in Montgomery County, within the Middle District of Alabama, Mr. Ellis by force, violence and intimidation did take from the person and presence of another, approximately $40,057.00 in currency belonging to and in the care, custody, control, management, and possession of the Colonial Bank, located at 671 South Perry Street, Montgomery, Alabama. The deposits of which were

then insured by the Federal Deposit Insurance Corporation, and in committing such offense, Mr. Ellis did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is, a firearm, in violation of 18 U.S.C. 2113 (a) and 2113 (d).

Count 2 charged that, on or about June 14, 2004 in Montgomery County, within the Middle District of Alabama, Mr. Ellis did unlawfully and knowingly use and carry a firearm, that is an H and K, model USP, 9mm semi-automatic handgun, bearing serial number 24-037032, during and in relation to the commission of a bank robbery, a crime of violence, prosecutable in a court of the United States, possess said firearm in furtherance of the commission of said bank robbery, and brandish said firearm all in violation of 18 U.S.C. 924 (c)(1).

The offenses which Mr. Ellis was indicted on grew from activity which occurred on June 14, 2004. The "reports" which relate to the factual circumstances of the offenses charged state that on said date, Mr. Ellis robbed the Colonial Bank at 671 South Perry Street and while doing so he brandished a firearm at the Branch Manager of the bank.

These reports further state that Mr. Ellis attempted to escape via northbound Interstate 85, however, law enforcement was able to track Mr. Ellis down and subsequently arrest him. After Mr. Ellis was arrested, Attorney Stephen Glassroth was hired in order to defend Mr. Ellis in this cause.

While in the custody of the United States Marshals, Attorney Glassroth notified Mr. Ellis that similar charges to those stated above were being charged against him for other bank robberies, namely: (1) A robbery which occurred at Liberty Bank, 7161 Crowder Blvd, New Orleans, Louisiana, 10-16-2002, (2) A robbery of Hibernia National Bank, 6307 Elysian Fields Avenue, New Orleans, Louisiana, 12-27-2002,

2

(3) A robbery which occurred at Randolph Brooks Federal Credit Union at 1005 W. 41st

Street, Austin, Texas on 12-31-2002, (4) The Regions Bank at 5055 Memorial Boulevard,

Kenner, Louisiana on 12-2003, (5) A robbery which occurred at Iberia Bank at 3929

Veterans Memorial Boulevard, Metairie, Louisiana on 3-1-2003, (6) A robbery which

occurred at Omni Bank at 2200 Veterans Memorial Boulevard, Kenner, Louisiana on 3-

3-2003, (7) A robbery which occurred at Sterling Bank at 4040 Broadway, San Antonio,

Texas on 6-27-2003, (8) A robbery which occurred at RBC Century Bank at 2710

Wesley Chapel Road, in Decatur, Georgia on 9-15-2003, (9) A robbery which occurred at

Regions Bank at 1172 Old Salem Road, Conyers, Georgia on 10-06-2003, (10) A robbery

which occurred at Bank of America at 956 Ponce De Leon Avenue, Atlanta, Georgia on

12-10-2003, (11) A robbery which occurred at the National Bank of Georgia in Athens,

Georgia on 4-26-2004.

When Mr. Ellis received the information regarding these eleven additional bank

robberies and the corresponding charges, he requested that Mr. Glassroth attempt to have

these charges consolidated into a single proceeding pursuant to the terms enumerated

within Rule 20 of the Federal Rules of Criminal Procedure.

Mr. Glassroth informed Mr. Ellis that such a procedure was not possible and he

later began to intimidate Mr. Ellis by constantly stating that Mr. Ellis was "facing" more

than 100 years of imprisonment. Subsequently, Attorney Glassroth began to negotiate a

plea agreement with the United States Attorney.

On August 23, 2005, Mr. Ellis entered into a plea agreement with the United

States. See Plea Agreement in court records. The plea agreement stated that in return for

pleading guilty to both counts against Mr. Ellis the United States would recommend a

3

two-level reduction for acceptance of responsibility, and a sentence at the low end of the applicable guideline range. The agreement also provided that, absent circumstances involving prosecutorial misconduct or ineffective assistance of counsel, the petitioner waived both his right to appeal his conviction or sentence, and his right to seek collateral relief under 28 U.S.C. 2255. The agreement concluded that the petitioner had read and understood the plea agreement.

Mr. Ellis' plea hearing was conducted on August 23, 2005. See transcript of guilty plea hearing in court records. At the outset of the hearing, the petitioner consented to have his plea taken by a United States Magistrate Judge. Stephen R. Glassroth, counsel for the petitioner then summarized the terms of the agreement, and stated that, in return for the petitioner's guilty plea, the United States would move for a two-level reduction for acceptance of responsibility, and recommend a sentence at the low end of the applicable guideline range. The agreement in question contained a mistake with respect to the sentence for Count 2 in that it referenced a 7-year sentence. However, both Stephen Glassroth and Mrs. Morris on behalf of the United States corrected this mistake by initialing and writing in 5 years where 7 years had previously appeared in the agreement. The petitioner was placed under oath. Mr. Ellis informed the court that he had fully discussed the charges against him with counsel that he had read and discussed the plea agreement with counsel before signing it, and that he understood the terms of the agreement. The Court specifically asked the petitioner whether he understood that the court could reject the United States sentencing recommendation and impose a more severe sentence, but he would not be permitted to withdraw his guilty plea. The petitioner stated that he understood those provisions.

4

The court explained to the petitioner that if he persisted in a guilty plea, he would forfeit valuable civil rights. Mr. Ellis was then informed of the penalties for said charges. Mr. Ellis was also informed that his agreement contained a waiver of the right to appeal or file a collateral attack, absent circumstances involving prosecutorial misconduct or ineffective assistance of counsel.

The court then explained to Mr. Ellis the Constitutional rights he would forfeit if he entered a guilty plea in lieu of proceeding to trial. Next, it explained the burden of proof that the United States must meet in order to convict him of violating 18 U.S.C. 2113 (a), (d) and 924 (c)(1). Mr. Ellis then listened to the United States Attorney recount that he robbed a branch of Colonial Bank, while in possession of a firearm. Mr. Ellis did acknowledge that the statement was correct. Afterwards the petitioner pleaded guilty to Counts 1 and 2. The court then accepted the petitioner's guilty plea.

A presentence investigation report was prepared by the United States Probation Office. The report was based on conversations which came from Mrs. Morris, the United States Attorney, which gave the probation department factual circumstances not discussed during the plea colloquy. These circumstances included offenses such as his brandishing a firearm by pointing it to a branch manager of the Colonial Bank at 671 South Perry Street and forcing her at gunpoint to instruct tellers to place money in two nylon bags which he provided. The probation report went further to state that Mr. Ellis attempted to escape via northbound Interstate 85, but law enforcement was able to pursue the petitioner because the branch manager had placed a tracking device in a nylon bag. The petitioner was followed through Macon County and into Lee County, Alabama. In Lee County, an Auburn police officer was shot and wounded by a fellow officer when he

attempted to shoot out the petitioner's tires. This occurrence during the preparation of

the presentence report resulted in a two-level enhancement of the petitioner's offense

level pursuant to U.S.S.G. 3C1.2 - Reckless Endangerment During Flight. Ms. Morris

used her influence with the probation department in order to have the probation

department conclude that a 7-year minimum sentence was required under Count 2, as

additional punishment because the petitioner had "brandished" a firearm during the bank

robbery. See PSI referencing 18 U.S.C. 924 (c)(1)(d)(4) in court records.

A sentencing hearing was conducted on November 30, 2005. See sentencing

hearing in court records.

Mr. Ellis objected to the probation departments finding that the mandatory

minimum on Count 2 was 7 years. Referencing United States v. Booker, 543 U.S. 220

(2005). Counsel argued that the factual basis was not established at the plea hearing to

merit the 7-year mandatory minimum. The court responded that Harris v. United States,

536 U.S. 545 (2002) (holding that whether a firearm is brandished for purposes of 18

U.S.C. 924 (c)(1) was a sentencing factor to be found by Judge, rather than an offense

element to be found by jury) to be the controlling case. However, noting that no evidence

of brandishment was in the record, the court said that it would hear testimony on the

issue. Thereafter, the United States Attorney Morris had witnesses ready to testify on the

issue. After hearing testimony from the witnesses of the government, the court found that

the petitioner brandished a firearm. Afterwards the court referenced the plea agreement

and noted that, pursuant to the terms of the plea agreement, sentencing recommendations

or stipulations by the United States were non-binding and that, because a preponderance

of the evidence established brandishment, the petitioner was subject to the 7-year minimum.

Mr. Ellis next objection was to the two-level enhancement for endangerment and flight. Counsel for Mr. Ellis argued that his flight was "mere flight" which did not, by itself, endanger anyone else, and thus did not merit an enhancement. The court then consulted the facts of the petitioner's flight as set forth in the PSI which again, was given by the United States Attorney Morris, and found that those facts were sufficient to support the enhancement.

Pursuant to the findings of the court, the petitioner's final offense level was 23 when combined with a criminal history of 1, resulted in a guideline imprisonment range of 46 to 57 months as to Count 1. It further found the sentence for Count 2 must run consecutively to the sentence in Count 1.

The court then sentenced Mr. Ellis to 57 months as to Count 1, and a consecutive term of 84 months as to Count 2, for a total term of 141 months.

Judgment was entered in petitioner's case on December 6, 2005.

And as stated above, Mr. Ellis then filed this motion to vacate, set aside or correct sentence on November 6, 2006. On December 5, 2006 this court entered an order directing the United States to respond to the claims found in the petition. On December 27, 2006 the United States filed its response.

On January 4, 2007, this court ordered that the petitioner may file a reply to the response filed by the government on or before January 25, 2007 and when responding to the assertions contained in the government's response, he may file sworn affidavits, or other documents in support of such claims. When the petitioner attacks the government's

response by use of affidavits or other documents, the court will, at the appropriate time,

consider whether to expand the record to include such materials.

## II.  Claims responded to by the United States

The United States responded to the following issues in its response to the 2255

motion:

1. **Counsel provided ineffective assistance due to his failure to have other pending prosecutions for bank robbery consolidated into a single case;**

2. **Counsel provided ineffective assistance due to his failure to file a requested Appeal;**

3. **Counsel provided ineffective assistance for inducing the petitioner to enter into a plea agreement with the understanding that he would receive a five year sentence for violating 18 U.S.C. 924 (c)(1), or be given an opportunity to withdraw his plea;**

4. **The District Court erred by not granting additional reduction for acceptance of responsibility;**

5. **The District Court erred by enhancing offense level under U.S.S.G. 3C1.2 - Reckless Endangerment During Flight;**

6. **The petitioner duel prosecutions under 18 U.S.C. 2113 (d) and 18 U.S.C. 924 (c)(1) subjected him to double jeopardy in violation of the Fifth Amendment.**

## III.  Reply to the Government's Response to 2255 Motion

This petition is not barred because the petitioner did not waive his right to seek

relief under 28 U.S.C. 2255 when he entered his guilty plea, because several provisions

of the plea agreement and the law which governs pleas are triggered.

The petitioner agreed to waive his right to seek relief pursuant to 28 U.S.C. 2255 when he agreed to plead guilty in his August 23, 2005 agreement and guilty plea hearing. The court specifically questioned the petitioner as to whether he understood that his plea agreement waived his ability to collaterally attach his sentence, and the petitioner stated under oath that he understood the terms of the agreement. The waiver was limited, and not applicable to instances of prosecutorial misconduct, ineffective assistance of counsel and jurisdictional issues. The petitioner submits that the waiver does not apply to any claims in this petition.

**Issue 1**

Whether both a conviction and sentence for aggravated bank robbery under 18 U.S.C. 2113 (d) and a conviction and sentence for use of a firearm during the commission of a felony under 18 U.S.C. 924 (c) can be assessed when both convictions and sentences resulted from the same set of factual circumstances.

**Statutes Involved**

Title 18 U.S.C. 2113 (a) provides in pertinent part:

"Whoever, by force and violence, or by intimidation, takes, or attempts to take from the person or presence of another or obtain or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association;

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, or any building used in whole or in part as a bank, credit

9

union, or as a savings and loan association, with intent to commit in such bank, credit

union, or in such savings and loan association, or building, or in part thereof, so used, any

felony affecting such bank or such savings and loan association and in violation of any

statute of the United States, or any larceny - shall be fined under this title or imprisoned

not more than twenty years, or both.

Title 18 U.S.C. 2113 (d) provides in pertinent part:

"Whoever, in committing, or in attempting to commit, any offense defined in subsections

(a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person

by the use of a dangerous weapon or device, shall be fined under this title or imprisoned

not more than twenty-five years, or both."

Title 18 U.S.C. 924 (c) Provides in Pertinent Part:

"Whoever,

    (1)  Uses a firearm to commit any felony for which he may be prosecuted in a

          court of the United States, or

    (2)  Carries a firearm unlawfully during the commission of any felony for which

          he may be prosecuted in a court of the United States,

Shall be sentenced to a term of imprisonment for not less than one year nor more than 10

years. In the case of his second of subsequent conviction under this subsection, which

person shall be sentenced to a term of imprisonment for not less than five years nor more

than 25 years, and notwithstanding any other provision of law, the court shall not suspend

the sentence of such person or give him a probationary sentence."

Title 18 U.S.C. 924 (c) 1998 Amendment provides in pertinent part:

Act   Nov. 13, 1998 in subsec. (C) substituted para. (1), for one which read: "(1)

Whoever, during and in relation to any crime of violence or drug trafficking crime

(including a crime of violence or drug trafficking crime which provides for an enhanced

punishment if committed by the use of a deadly or dangerous weapon or device) for

which he may be prosecuted in a court of the United States, uses or carries a firearm,

shall, in addition to the punishment provided for such crime of violence or drug

trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a

short barreled rifle, short barreled shotgun, or semiautomatic assault weapon, to

imprisonment for ten years, and if the firearm is a machine gun, or a destructive device,

or is equipped with a firearm silencer or firearm muffler, to life imprisonment without

release.  Not withstanding any other provision of law, the court shall not place on

probation or suspend the sentence of any person convicted of a violation of this

subsection, nor shall the term of imprisonment imposed under this subsection run

concurrently with any other term of imprisonment including that imposed for the crime of

violence or drug trafficking crime in which the firearm was used or carried".

## Summary of Case

The petitioner was charged in the United States District Court for Middle District

of Alabama, Northern Division, in a two-count indictment.  Count 1 merged the distinct

offenses of bank robbery and armed robbery together and formed a duplicitous charge of

armed bank robbery and charged that the conduct in question was in violation of Title

U.S.C. 2113 (a) and (d); and Count 2 charged the petitioner with the offense of using a

firearm to commit a felony in violation of Title 18 U.S.C. 924 (c).  Both charges arouse

11

from one single set of facts. The petitioner was convicted pursuant to the terms of a plea

agreement on November 30, 2005. The court imposed two sentences for the conduct in

question - a 57-month sentence for Count 1 and an 84-month sentence for Count 2. In

addition to the sentence, the court issued a $200.00 assessment fee. The petitioner's

Attorney Stephen Glassroth was explicitly instructed to file a timely notice of appeal,

however, Mr. Glassroth attempted to appeal the judgment directly in front of the District

Court orally.

After months of legal research the petitioner filed the instant motion along with *in forma pauperis* papers.

## Summary of Argument

**The government unlawfully merged a violation of 2113 (a) together with 2113 (d) as a single crime and conviction while simultaneously convicting the petitioner for violating 924 (c) based on the same set of facts.** The petitioner's sentence is unlawful and he was denied due process of law and his sixth amendment right to effective assistance of counsel.

## Argument

### Point I

**A court imposing sentences for an aggravated bank robbery conviction 18 U.S.C. 2113 (d) and use of a firearm to commit a felony 18 U.S.C. 924 (c) when both convictions result from the same set of factual circumstances amounts to duplicitous sentencing and is prohibited.**

The legislative history of 18 U.S.C. 924 (c)'s sponsor during the House

committee hearing on the statute includes the following:

"My substitute makes it a federal crime to use a firearm in the commission of another federal crime and invokes separate and supplemental penalties". <u>114 Congressional Record, 22231</u>. From these comments it is clear that the statutes sponsor believe that imposition of a separate and supplemental penalty for felonies committed with a firearm would deter the use of firearms.

Representative Poff went on to state:

"For the sake of legislative history, it should be noted that my substitute is not intended to apply to Title 111, 112, or 113 which already define the penalties for use of a firearm in assaulting officials, with **2113** or 2114 concerning armed robberies of the mail or bank. With 2231 concerning armed assaults upon process servers or chapter 44 which defines other firearm felonies." <u>114 Congressional Record 22232</u> (emphasis added)

If the purpose of 924 (c) is, as stated by Representative Poff, to deter the use of a firearm in the commission of a felony, that purpose is nullified when the substantive offense provides enhanced punishment for the use of a dangerous weapon or device which necessarily includes a firearm.

In <u>United States v. Eagle</u>, 539 F.2d 1166 (8th Cir.)(1976), **the court held that where the statute controlling the charged crime enhances penalty for use of a dangerous weapon, then 924 (c) cannot be joined in the indictment.** In <u>Eagle</u> the appellant was charged under 18 U.S.C. 1153 for an assault with a deadly weapon against an Indian in Indian County. The Court of Appeals concluded that 1153 was the same type of statute as those excluded from use with 924 (c) by Representative Poff, <u>Supra, 114 Congressional Record 22232</u>, and therefore held that the appellants conviction under

924 (c) be vacated. In reaching its decision the Court of Appeals for the Eight Circuit reasoned:

"Appellant contends that although the statutory language is broad ("any felony") Congress did not in fact intend that a prosecution for violating 924 (c) would be available where the underlying felony is that charged here, an assault with a dangerous weapon in violation of 18 U.S.C. 1153, the major crimes act. We agree and so vacate the Count 11 conviction. Id. at 1171.

We reach this result first because 1153 itself provides an increased penalty for use of a dangerous weapon. We are convinced that Congress did not intend 924 (c)(1) to be applicable in a case involving such a statute.

We are led to the conclusion by legislative history of 924 (c)(1). **It's not necessary to deterrence to impose an increased penalty for use of a firearm by separate statute when the substantive statute itself does so.** Id at 1172. The existing statutes, by providing federal sanctions only if firearms are used, perform the function of deterrence. Application of 924 (c)(1) to the crime is not necessary and apparently was not intended by Congress". Id. At 1172.

A contrary result was reached by the Court of Appeals for the Fifth Circuit in United States v. Perkins, 526 F.2d 688 (5th Cir.)(1976). In Perkins, the court upheld a conviction for 924 (c)(2) when joined with a prosecution under 2113 (d). The court found that the elements of 2113 (d) were different from those in 924 (c)(2) and stated: "To convict for a violation of 924 (c)(2), the government must prove, in addition to the elements necessary to prove a violation of 2113 (a) and (d), that appellant carried a firearm, not just a dangerous weapon, and that he carried it unlawfully. The elements of

14

"firearm" and "unlawfully" are unique to the 924 (c)(2) count. Unlawfulness is not a element of 2113 (d) and 2113 (d)'s element of a dangerous weapon in this particular case does not alter the fact that "firearm" and "dangerous weapon" are not conterminous elements". 526 F.2d at 690

Similarly, in United States v. Crew, 538 F.2d 575 (4th Cir.)(1976), the Court of Appeals for the Fourth Circuit held that consecutive sentences under 924 (c) and 2113 (d) were proper because the offenses were not identical and require proof of distinguishable elements: that a firearm opposed to a dangerous weapon or device was carried or used.

To hold that 924 (c) and 2113 (d) do not contain conterminous elements because of the use of the word "firearm" as opposed to "dangerous weapon" or "device" is a tenuous semantic argument. **It cannot be gain said that Congress intended the words "dangerous weapon" or "device" as used in 2113 (d) to include firearms.** Baker v. United States, 412 F.2d 1069, (5thCir.)(1969).

Assuming arguendo that there is a valid distinction no matter how thin, between the words "firearm" and "dangerous weapon", the indictments in the case at bar used the following language: 2113 (d) by the use of a dangerous weapon, that is a firearm . . . 924 (c)(1) use and carry a firearm . . . during and in relation to the commission of a bank robbery.

Therefore, any possible distinction was removed by virtue of the actual words in the indictments. Since the definitions of a "dangerous weapon" and a "firearm" became conterminous by the wordage of the indictments, the elements to prove each offense became identical. Thus the dictates as set forth in Blockburger v. United States, 284 U.S. 299 (1932) wherein the Supreme Court stated:

15

"Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether each provision requires proof of a fact which the other does not," (284 US at 304) became applicable.  The petitioner pleaded guilty to the bank robbery and that he had a handgun and used it to commit the crime, all elements of both offenses were simultaneously satisfied.

**Point II**

**Supreme Court judicial interpretation and the legislative history of 924 (c)**

**establish that Congress did not intend the statute to apply when the underlying**

**felony offense provides enhancement for use of a firearm.**

As stated in Point I above, there were conflicts between the decisions among the

circuits.  See United States v. Eagle, 539F.2d 1166 (8th Cir.) (1976). United States v.

Crew, 538 F.2d 575 (4th Cir) (1976), and Perkins v. United States, 526 F.2d 688 (5th Cir)

(1976).  The Eighth Circuits decision in Eagle involved the interplay between 924 (c) and

18 U.S.C. 1153 (Assaulting an Indian on a reservation) which carries an enhanced

penalty for using a firearm.  Based on legislative history of 924 (c), the Eagle court

stated:

"The sections of Title 18 enumerated by Representative Poff (except Chapter 44)

have this in common: All impose a higher penalty for the felony specified if is committed

with a "dangerous" or "deadly" weapon.  Representative Poff's remarks evidence a clear

Congressional intention that the new statute not be applicable in cases involving statutes

of this type.

This intention accords with the deterrence rationale of 924 (c)(1).  It is not

necessary to deterrence to impose an increased penalty for use of a firearm by separate

statute, when the [specific statute] itself does so. . . The existing statutes, by providing

federal sanctions only if firearms are used, perform the function of deterrence.

Application of 924 (c)(1) to the crime is not necessary, and apparently was not intended

by Congress.

We conclude that a crime of the type charged in Count 1, i.e. one for which the penalty is enhanced by the use of a dangerous weapon, cannot form the basis of a prosecution under 924 (c)(1)." Eagle F.2d 1171, 1172 (emphasis added)

In Simpson v. United States, 435 U.S. 6 (1978) the United States Supreme Court attempted to resolve the conflict between the circuits. A reasonable reading of Simpson indicates that the court adopted the Eagle rationale in evaluating the legislative history of 924 (c). Ambiguity arose from the Simpson decision because the Simpson Court remanded the case for further consistent proceedings without expressly vacating the conviction under 924 (c). It should be noted that the Simpson petitioners did not ask to have the firearms conviction vacated because such contention would not have been in their best interests. The larger sentences had been imposed for the underlying bank robberies.

The Simpson decision left the lower courts, defendants and prosecutors free to evaluate the courts interpretation of the legislative history of 924 (c) to determine whether there was any basis for a Third Circuit conclusion (and the governments contention) that prosecutors and the courts have "any option" to use 924 (c). The judgment of sentence as to Busic had been affirmed. Nothing could be plainer than reviewing what the Simpson court said about the legislative history of 924 (c). The best vehicle for expressing this is to set forth the courts exact language regarding legislative history omitting only portions relating to other aspects:

First is the legislative history of 924 (c). That provision, which was enacted as part of the Gun control Act of 1968, was not included in the original Gun Control Bill,

18

but was offered as an amendment on the House floor by Representative Poff. 114 Cong.
Record 22231 (1968).[1]

This statement is clearly probative of a legislative judgment that **the purpose of
924 (c) is already served whenever the substantive federal offense provides
enhanced punishment for use of a dangerous weapon.** Although these remarks are of
course not dispositive of the issue of 924 (c)'s reach, they are certainly entitled to weight,
coming as they do from the provision's sponsor. This is especially so because
Representative Poff's explanation of the scope of his amendment is in complete accord
with, and gives full play to, the deterrence rational of 924 (c). United States v. Eagle, 539
F.2d at 1172. Subsequent events in the Senate and the conference committee pertaining
to the statute buttress the conclusion that Congress view of the proper scope of 924 (c)
was that expressed by Representative Poff. Shortly after the House adopted the Poff
amendment, the Senate passed an amendment to the Gun Control Act introduced by
Senator Dominick, that also provided for increased punishment whenever a firearm was
used to commit a federal offense. 114 Cong. Rec. 27142 (1968). According to the
analysis of its sponsor, the Senate Amendment, contrary to Mr. Poff's view of 924 (c)
would have permitted the imposition of an enhanced sentence for the use of a firearm, in

---

[1] In his statement immediately following his introduction of the Amendment
Representative Poff observed:
Because the provision was passed on the same day it was introduced on the House floor,
it is the subject of no legislative hearings or committee reports. For the sake of legislative history,
it should be noted that my substitute is not intended to apply to Title 18, Section 111, 112, or 113
which already define the penalties for the use of a firearm in assaulting officials with Section
2113 or 2114 concerning armed robberies or the mail or banks with 2231 concerning armed
assaults upon process servers or with Chapter 44 which defines other firearm felonies."
Id. At 22232.

the commission of any federal crime even where allowance was already made in the

provision of the substantive offense where a dangerous weapon is used. Id. at 27143.

A conference committee, with minor changes subsequently adopted the Poff

version of 924 (c) in preference to the Dominick Amendment. H.R. Conf. Rep. No. 1956,

90th Cong., 22 Sess. 31-32 (1968).

The legislative history of 924 (c) is of course sparse, yet what there is -

particularly Representative Poff's statement and the committee rejection of the Dominick

Amendment - points in the direction of a Congressional view that the section was

intended to be unavailable in prosecutions of 2113 (d). Even when the legislative history

was not nearly as favorable to the defendant as this, **the United States Supreme Court**

**has steadfastly insisted that doubt will be resolved against turning a single**

**transaction into multiple offenses.** Bell v. United States, 349 U.S. 81, 84 (1955);

Ladner v. United States, 358 U.S. 169 (1958); See Prince v. United States, 352 U.S. 322

(1957). As the court said in Ladner, "This policy of lenity means that the court will not

interpret a federal criminal statute so as to increase the penalty that it places on an

individual when such an interpretation can be based on no more than a guess as to what

Congress intended." 358 U.S. at 178. If we have something more than a guess in this

case, that something - Representative Poff's commentary and the conference committee's

rejection of the Dominick Amendment is incremental knowledge that rebounds to the

petitioner's benefit, not the government's.

Indeed, at one time the government was not insensitive to these concerns

respecting the availability of the additional penalty under 924 (c). In 1971, the

Department of Justice found the interpretive preference for specific criminal statutes over

general criminal statutes of itself sufficient reason to advise all United States Attorneys not to prosecute a defendant under 924 (c)(1) where the substantive statute the defendant was charged with violating, already provided for increased penalties where a firearm is used in the commission of the offense. 19 U.S. Attys Bull. 63 (U.S. Dept. Of Justice 1971).

Obviously, the government has since changed its view of the relationship between 924 (c) and 2113 (d).

**"We think its original view was the better view of the Congressional understanding as to the proper interaction between the two statutes. Accordingly, we hold that in a prosecution growing out of a single transaction of bank robbery with a firearm, a defendant may not be sentenced under both 2113 (d) and 924 (c). The cases are therefore reversed and remanded to the Court of Appeals for proceedings consistent with this opinion."** Simpson, 435 U.S. at 13-16. (Emphasis added)

## Point III

### In the absence of clear legislative history or Supreme Court Judicial decisions permitting prosecutions and punishments for a single act, such multiple prosecution and punishments are prohibited.

As in <u>Simpson</u>, this type of case raises substantial double jeopardy issues. <u>See</u> <u>Brown v. Ohio</u>, 432 U.S. 138 (1977); <u>Jeffers v. United States</u>, 432 U.S. 138 1977; <u>Iannelli v. United States</u>, 420 U.S. 770 (1975); <u>Gore v. United States</u>, 357 U.S. 386 (1958); <u>Blockburger v. United States</u>, 284 U.S. 299 (1932). There is possible need to evaluate the statutes in light of <u>Blockburger</u> and subsequent cases.

However, as in <u>Simpson</u>, such analysis seems unnecessary in view of the courts decision in <u>Simpson</u> and its consistent practice to avoid double jeopardy decisions (or other Constitutional decisions) where possible by determining whether Congress intended to subject a defendant to multiple convictions and penalties for a single criminal transaction. <u>Simpson</u> did not reach the Constitutional issues because of the Court's conclusion as to legislative intent. The court states three grounds: **1) The legislative history reflects the judgment that the purposes of 924 (c) are already served when the substantive federal offense provides enhanced punishment for use of a dangerous weapon; 2) Any ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity; 3) Precedence is given to the terms of a more specific statute where the general and specific statutes speak to the same concern.**

All three of these considerations apply to this case and apply not only to bar multiple sentences but prosecutions as well. In cases involving double jeopardy issues,

the United States Supreme Court normally requires a strong and persuasive showing of legislative intent. It is unclear whether this practice of construction arises from the nature of the double jeopardy clause, or as a matter of policy pertaining to the function of the court in the judicial process.[2] In Simpson and in other cases, the court has characterized this as a rule of lenity. See also Gore v. United States; Supra; Calanan v. United States, 364 U.S. 587, 596. This process requires a clear showing of Congressional intent and such an intent will not be discerned when there is nothing more to support it that a "guess". Ladner v. United States, 358 U.S. 169 (1958). See also Bell v. United States, 349 U.S. 81, 84.

The case of Jeffers v. United States, 432 U.S. 137 (1977) and Iannelli v. United States, 420 U.S. 770 (1975 are instructive. In Jeffers, the defendant was tried and convicted on charges of conspiracy to distribute drugs and with distribution of drugs in concert with five or more persons. After conviction, the defendant was given multiple sentences which exceed the maximum for the greater offense. A plurality of the Supreme Court set aside the conviction because of the absence of legislative intent to permit separate punishment. The plurality termed the legislative history "inconclusive." See Jeffers v. United States, 432 U.S. 137 (1977).

In Busic v. United States 446 U.S. 398 (1980) **the United States Supreme Court held that enhanced sentencing under 18 U.S.C. 924 (c) was not permissible where the predicate felony statute contained its own enhancement provision**. There the

---

[2] See "Towards a General Theory of Double Jeopardy" by Peter Western and Richard Druber, Supreme Court Review (1978). The authors suggest this practice arises from the double jeopardy clause itself rather than a matter of policy. This article contains a comprehensive review of all facets of double jeopardy law with suggestions for future development.

court again relied on *stare decisis*, legislative history and relevant canons of statutory construction.

In the case at bar, Mr. Glassroth relied on <u>United States v. Deal</u>, 508 U.S. 129 (1993), in determining whether or not the instant prosecution was permissible and his assessment of the instant prosecution and its relationship to the <u>Deal</u> case was misplaced.

In <u>Deal</u>, supra, the United States Supreme Court held that a defendant could be convicted for six different 924 (c) offenses in a single proceeding. The <u>Deal</u> case is not relevant to the present inquiry. The <u>Deal</u> case deals with the relationship that Title 18 U.S.C. 924 (c) has with subsequent convictions of 924 (c) based on distinct violations of the same act. While the case at bar addresses the relationship of 924 (c) and 18 U.S.C. 2113 (d) based upon the same conduct. See 3.g. <u>United States v. Deal</u>, 508 U.S. 129 (1993).

## Point IV

**The meaning of ("including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device") as added in the 1998 amendment is ambiguous.**

In 1998 Congress amended the statute and added the phrase "including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by use of a deadly or dangerous weapon or device". This phrase is ambiguous, when it is applied to the question whether the government may use the enhancement provision that the specific underlying felony contains in conjunction with 924 (c). Because of this ambiguity, the applicability of the 7-year enhancement under 924 (c) in this case is at issue. There is no language in the statute which authorizes the government to utilize the statute as a double enhancer for a single course of conduct. In short, a reasonable doubt persists as to the intended scope of the 1998 Amendment.

No court of appeals has found the double jeopardy clause to be ambiguous. In the context of 18 U.S.C. 2113 (d) and 924 (c) whether the statement "including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device" as added to the statute in 1998, authorizes duel prosecutions under 2113 (d) and 924 (c) is unclear. Because the amendment is ambiguous, the court must look to the legislative history whether the ambiguity can be explained or elucidated. See United States v. R.L.C. 112 S.Ct. 1329, 1334 (1992). See also Chapman v. United States, 111 S.Ct. 1926 (1991). The legislative history does not resolve the ambiguity.

<u>**Point V**</u>

<u>**The petitioner's due process rights were violated when the court imposed**</u>

<u>**convictions for both 924 (c) and 2113 (d) based on the same conduct.**</u>

The rule of lenity is not merely a convenient statutory maxim, but also is "rooted in fundamental principals of due process." <u>Dunn v. United States</u>, 442 U.S. 100, 112 (1979). The rule is based upon traditional policy of fair warning "of what the law intends to do if a certain line is passed "and upon" the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." <u>United States v.</u> <u>Bass</u>, 440 U.S. 336, 347-348 (1972) quoted in <u>R.L.C.</u>, 112 S.Ct at 1138 (1992), "the court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." <u>Ladner v. United States</u>, 358 U. S. 169, 178 (1958).

**When ambiguity survives an examination of statutory text and legislative** **history, the court chooses "the construction yielding in favor of the defendant by** **resting on the venerable rule of lenity."** See <u>United States v. Bass</u>, 404 U.S. 336, 347 348 (1972); <u>Ladner v. United States</u>, 358 U.S. 169, 177-178 (1958). "This policy of lenity means that the court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." <u>Ladner</u>, 358 U.S. at 178, see also <u>Whalen v. United States</u>, 445 U.S. 684, 695 n.10 (1980). If a statutory interpretation produces a result "so absurd or glaringly unjust as to lend the court to question what

Congress actually intended," <u>United States v. Rodgers</u>, 466 U.S. 475, 484 (1984), the rule of lenity also may be applied.

The District Court sentenced the petitioner to serve 57 months for 2113 (d) violation and 84 months on the 924 (c) violation along with a $100.00 assessment fee for each charge. Neither the text of either statute, or their legislative history clarifies whether such prosecution was lawful, in fact all judicial interpretations point to the fact that the prosecutions was unlawful. For these reasons, **this court should apply the rule of lenity, and failure to do so will violate the petitioner's due process rights.**

The underlying principles of the rule and of due process beg for the application of the rule of lenity to Mr. Ellis, for neither statute gives fair warning that he would be convicted twice for a single act, the first time he was ever hauled into court.

Neither he nor any defendant should languish in prison unless Congress has clearly said he should. **The result of this double jeopardy violation is so glaringly unjust that the court cannot but questions whether Congress intended such an application of the 1998 Amendment.**

27

### Point VI

**The District Courts practice of allowing entry of judgments of convictions and imposition of consecutive sentences upon guilty verdicts for both 2113 (d) and 924 (c) involving identical conduct impermissibly sanctions, cumulative punishment proscribed by the Fifth Amendment.**

Given the obvious fact that Congress did not intend to impose cumulative enhancement punishment for a single course of conduct under 2113 (d) and 924 (c) statutes, **the double jeopardy clause bars not only the imposition of consecutive sentences on both counts, but also the entry of judgments of convictions on both verdicts.** That conclusion follows from the Supreme Court's decision in <u>Ball v. United States,</u> 470 U.S. 856 (1985). In <u>Ball</u>, the Supreme Court held that Congress did not intend to allow cumulative punishment for the same conduct that resulted in separate violations of statutes prohibiting receiving a firearm (18 U.S.C. 922 (h)) and possessing the same firearm (18 U.S.C. 1202 (a)(1)). Id at 865. The court stressed that such punishment prohibited by the double jeopardy clause, see <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969), includes "a criminal conviction and not simply the imposition of sentence." <u>Ball</u>, 470 U.S. at 861. Moreover, the United States Supreme Court held in <u>Ball</u> that the second conviction, whose concomitant is served concurrently, does not evaporate simply because of the concurrence of the sentence. Id at 864-65. Accordingly, the Supreme Court held without dissent that "the second conviction, even if it results in no greater sentence, is an impermissible punishment." Id at 865 (emphasis supplied). Under <u>Ball</u>, the double jeopardy clause forbids the entry of a second judgment of

28

conviction in cases where the legislature did not intend cumulative punishment, regardless of whether that second judgment has any tangible effect on the defendant. Because <u>Ball</u> held that the unauthorized additional judgment itself violates the double jeopardy clause, the unconstitutionality of that judgment does not turn upon the existence vel non of foreseeable or unforeseeable collateral consequences. The Court in <u>Ball</u> did identify potential consequences that might possibly arise following the entry of multiple judgments of convictions in violations of the double jeopardy clause. For example, <u>Ball</u> noted that the presence of two convictions on the record might, among other things, result in an increased sentence under some recidivist statute implicated at some later time, or be used to impeach the defendant's credibility in some late proceeding. Id. At 865. The court also observed that the second judgment of conviction "carries the societal stigma accompanying any criminal conviction," an incremental punishment that is always present when a court enters multiple judgment of convictions. Id.

The Court in <u>Ball</u> did not, however, rely on the existence or magnitude of the second judgments potential side effects in determining whether the double jeopardy clause has been violated in the first instance. <u>Ball</u> allows the government to obtain multiple Count indictments alleging separate offenses for which the legislature did not intend cumulative punishment, and to submit those cumulative counts to the jury. However, **<u>Ball</u> establishes a per se rule that prohibits the entry of judgment and imposition of sentence on both offenses.**

Per se rules like the one in <u>Ball</u> are favored because they are predictable and easy to use, and therefore conserve precious judicial resources. The United States Supreme Court has formulated such blight line rules specifically to protect the constitutional rights

of criminal defendants. See, e. g., <u>Michigan v. Jackson</u>, 475 U.S. 685 (1986) (per se rule that after defendant requests assistance of counsel, any waiver of Sixth Amendment right to counsel is invalid); <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981) (in furtherance of Fifth Amendment protections discussed in <u>Miranda v. State of Arizona</u>, 384 U.S. 436 (1986), per se rule is that questioning of suspect must cease as soon as he ask for lawyer).

The merit of a bright line rule "lies in the clarity of its command and certainty of its application" <u>Minnick v. Mississippi</u>, 498 U.S. 146, 151 (1990). Such a rule conserves judicial resources that would otherwise be expended in making case-by-case determinations and implements existing constitutional protections in practical and straight forward terms. Id. In a variety of settings the Supreme Court has avoided imposing, case-by-case analysis requirements where the "clarity and ease of application" of an existing per se rule would be lost. See e.g., <u>Davis v. United States</u>, 114 S.Ct 2350 (1994) (refusing to create exception to "bright line" <u>Edwards</u> requirement that request for counsel be unambiguous before interrogation must cease).

The categorical rule in <u>Ball</u> serves the laudable goals of bright line rules in general. It is unambiguous and easy to administer. Indeed, each court of appeal and the government already apply this rule to 924 (c) and 2113 (d) prosecutions.[3] The <u>Ball</u> rule prevents violation of a defendant's rights under the double jeopardy clause without interfering with the trial of the case in any way, because it only comes into play if and when a jury returns a guilty verdict upon two or more cumulative counts, or the defendant

---

[3] This demand - information which is to be provided by the government pursuant to the accompanying "Demand for Disclosure" - requests computations on the amount of the defendants which were charged with both 18 U.S.C. 2113 (d) and 924 (c) based on the same underlying facts. However, as will appear in the disclosure, these defendants traditionally plead guilty to the 924 (c) or 2113 (d) charge and is sentenced to the penalties of one of the two charges.

accepts a plea of guilty. Indeed, it also serves to simplify trials by diminishing the incentive "for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction that came with the advent of specificity in [legislative] draftmanship and extraordinary proliferation of overlapping and relating statutory offenses." Ashe v. Swenson, 397 U.S. 436, 446 (1970). Furthermore, the Ball rule avoids requiring a District Court to rely on prophesy to predict whether any conceivable harm would ever result to a defendant before entering judgment of conviction under both section 2113 (d) and 924 (c). On the other hand, without the **Ball** per se rule, trial courts will have to predict the future before vindicating a criminal defendants double jeopardy rights. This approach would thwart a fundamental Constitutional protection without any corresponding benefit to the administration of justice. To the contrary, at best the case - specific inquiry into tangible consequences would hinder the administration of justice; more likely the inquiry would be workable. For example, given the economic limitations on the already overtaxed prison systems, the longer sentence being meted out, and the fact that elderly prisoners are the most costly to incarcerate and often the least likely to recidivate, legislatures may well resort to alternations to incarceration, like home confinement or even early or compassionate release, for certain older prisoners.[4] In determining eligibility for such alternatives, an additional judgment of conviction and sentence that would appear to have no tangible effect at the trial might have a substantial impact ten to twenty years later. Much more sensible than trying to predict the course of

---

[4] See, e.g., Zimbardo Transforming California's Prisons into expensive old age homes for felons: Enormous Hidden Costs and Consequences for California's Taxpayers, report from the Center of Juvenile and Criminal Justice (Nov. 1994); Flynn, The Graying of America's Prison Population, 72 Prison J. 77 (1992); Turkey, Project for Older Prisoners (POPS), George Washington University National Law Center (1991).

events over the span of a sentence given to Mr. Ellis, **the rule already established in Ball - that entry of cumulative judgments of conviction is itself punishment forbidden by the double jeopardy clause.**[5]

There is little societal cost to using the Ball per se rule by definition, in a case in which the imposition of the cumulative judgment and sentence on the defendant will have no tangible effect on punishment, the fact that the defendant is not adjudged guilty and sentenced for the cumulative offense.

In sharp contrast to Miranda, for example, which imposes substantial costs on society "by requiring the suppression of trustworthy and highly probative evidence," Minnick, 498 U.S. at 151, the Ball rule effectuates a fundamental constitutional right.

When Mr. Ellis plead guilty on both 924 (c) and 2113 (d), the District Court entered judgment on each of these counts and imposed a sentence on each Count 1ncluding separate $100 special assessments pursuant to 18 U.S.C. 3013. As the

---

[5] Furthermore, the concept of "harmless error is completely inapplicable here. Under a common formulation of this doctrine, if the prosecutor can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand." Satterwhite v. Texas, 486 U.S. 849, 256 (1988) (emphasis added), citing Chapman v. California, 386 U.S. 18, 24 (1967). ("Harmless error" doctrine applies unless Constitutional right violated is so basic to a fair trial that any infraction cannot be treated as "harmless error"); See also Brecht v. Abrahamson, 113 S.Ct. 1710, 1714 (1993). (On collateral review, error is harmless and habeas relief unwarranted if error did not have substantial and injurious effect or influence in determining the jury's verdict") [Emphasis supplied], citing Kotteakos v. United States, 328 U.S. 750, 776 (1946). This doctrine is concerned exclusively with the fairness of the trial and whether the jury's verdict would have been different had the constitutional error not occurred. See Rose v. Clark, 478 U.S. 570, 578 (1986). (Stevens, J., concurring) (Violations not related to the truth-seeking function of a trial are not subject to the "harmless error" doctrine). In contrast, the constitutional violations that Mr. Ellis has suffered has no bearing on the verdict of guilt or innocence because the violation did not occur until after the verdict of guilty was entered, when the Court entered the judgments and sentences on the multiple convictions.

Supreme Courts decisions in <u>Ball</u> and <u>Rutledge v. United States</u>, 116 S.Ct 1241 (1996) demonstrates, that violated the double jeopardy clause. [6]

     Avoiding the violation, though, could not have been simpler.  Had the District Court merely imposed sentence on one of the two counts, the constitutional violation would not have occurred.

---

[6] Prior to the government using 924 (c), 2113 (d) has always been considered a distinct and separate offense from 2113 (a).  In Mr. Ellis' case, both 2113 (a) and 2113 (d) are charged as a single offense thereby making the felony and the enhancement for the felony a single offence and also not requiring that any additional fact be found in order to establish a 924 (c) violation.

### Conclusion

A line must be drawn between the actual verdict and the imposition of punishment. Ball prohibits convictions for violations of separate statutes which "create identical offenses." Under Ball once a court finds that Congress did not intend a defendant's conduct to be punishable under two separate statutes **"one of two convictions and its concurrent sentence is unauthorized punishment for a separate offense."** Ball, 470 U.S. at 864 [7]

For all these reasons, one of the two judgments must be vacated.

---

[7]Congress has not explicitly stated that 2113 (d) may be punished simultaneously with 924 (c) nor has Simpson and Busic been overturned. The statutes amendments and legislative history has not addressed the issue that traditionally 2113 (d) and 2113 (a) has been deemed by Courts as distinctive offenses.

<u>Issue II</u>

<u>In the event the court vacate petitioners sentence, the appropriate disposition of the</u>

<u>case would be for the court to resentence on the section 2113 (d) count.</u>

In the event that the court agrees with our principal contention that Mr. Ellis was improperly sentenced under both section 2113 (d) and 924 (c), the question remains what disposition of the case would be "just under the circumstances." (28 U.S.C. 2106). We submit that the appropriate course in this case would be to vacate Mr. Ellis' sentence on the 924 (c) count and resentence on 2113 (d), subject to (1) the sentence statutorily authorized by section 2113 (d), and (2) the limitation that the new sentence cannot exceed 84 months that was previously imposed for the armed bank robbery offense under section 924 (c).[8]

Mr. Ellis pleaded guilty in this case to Counts 1 and 2. Mr. Ellis was sentenced twice for the single course of conduct - 57 months for violating 2113 (d) and 84 months for violating 924 (c). If he prevails in this proceeding and have his sentence under 924 (c) vacated, he would be subject to an 84-month term and a $100.00 assessment fee.[9]

Furthermore, since the legal issue Mr. Ellis raises concerns purely formal and technical aspects of the sentencing and is wholly unrelated to the petitioner's agreement

---

[8] The disposition we suggest would be equally applicable if the court holds that Mr. Ellis sentence is inconsistent with <u>Simpson v. United States</u>, <u>supra</u>, or violated the double jeopardy clause.

[9] The sentences were required to run consecutive to each other. In total Mr. Ellis was sentenced to 141 months. An 84-month sentence would result in a fifty 57-month reduction of imprisonment.

to plead guilty, it seems that the District Court would impose a sentence consistent with the sentence contemplated herein.

The double jeopardy clause has been said to consist of three separate constitutional protections:  **1) It protects against a second prosecution for the same offense after acquittal; 2) It protects against a second prosecution for the same offense after conviction; 3) It protects against multiple punishments for the same offense.**  North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted).  The latter of these three protections is involved here.

In our view, the course we advocate will eliminate the double jeopardy issue involved in this case.  **The petitioner in this case has not challenged his conviction or sentence under section 2113 (d) and the double jeopardy clause does not forbid the District Court to resentence him on the section 2113 (d) Count if this sentence under section 924 (c) is upset.**  This is a case in which the government instituted steps to increase the petitioner's punishment on a given count, and it is an "act of government oppression of the sort against which the double jeopardy clause was intended to protect." See United States v. Scott, 437 U. S. 82, 91, 93 98-99 (1978).  In addition, the sentences under 924 (c) and section 2113 (d) derive from the same armed bank robbery.  Since the petitioner would not be subjected to any greater sentence for the armed robbery than the 84-month imprisonment he initially received for the 924 (c) charge, he would suffer no enhanced punishment for the single course of conduct.[10]

---

[10]  Since under this analysis Mr. Ellis' sentence would not actually be increased by re-sentencing, the due process clause protections against vindictiveness recognized in North Carolina v. Pearce supra, would have no bearing in this case.

## Conclusion

The petitioner's conviction and sentence on the 924 (c) charge should be vacated

and Mr. Ellis should be resentenced to 84 months on the 2113 (d) charge.

## Issue III

## The District Court unlawfully sentenced Mr. Ellis under 924 (c) for 7 years during the sentencing hearing.

As noted throughout the first section of this petition, the petitioner's sentences were not authorized by Congress. The District Court further erred when it sentenced Mr. Ellis to 7 years imprisonment under 18 U.S.C. 924 (c) based on facts which supported a 5 year sentence under 924 (c).

### Summary of Argument

During the plea agreement hearing and as stated within the plea agreement itself, Mr. Ellis entered the plea of guilty based on conduct that is punishable by the 5-year mandatory minimum under Title 18 U.S.C. 924 (c) and not the 7-year mandatory minimum. The facts admitted to support this plea are illustrated within the plea agreement.

In contrast to the facts admitted by Mr. Ellis and those stated within the plea agreement, the court determined on its own to impose a 7-year mandatory minimum sentence based on facts not charged in the indictment nor admitted by the defendant. The conduct of the District Court was violative of the Supreme Court's decision in various cases.

### Argument

### Point I

In Blakely v. Washington, 542 U.S. 296, 301 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States Supreme Court confirmed that any fact, other than the fact of a prior conviction which increases the penalty for a crime beyond the

38

prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. The court has applied this constitutional mandate to invalidate the Federal Sentencing Guidelines, Washington State Sentencing scheme, and Arizona Death Penalty Law to the extent they permitted judicial fact finding of aggravated factors to justify the imposition of a sentence greater than the maximum authorized by the jury's verdict or the defendant's admissions. United States v. Booker, 543 U.S. 220 (2005); Blakely, 542 U.S. 296; Ring v. Arizona, 536 U.S. 584 (2002).

The procedure that the District Court used for imposing the upper term sentence under 924 (c) in the case at bar contravenes the bright line rule set forth in Blakely and Apprendi; in violation of the Sixth Amendment due process right to proof beyond a reasonable doubt.

When a federal criminal defendant suffers a conviction for a felony offense which specifies multiple possible prison terms - a lower and a upper term the Fifth and Sixth Amendments to the United States Constitution forbids a sentencing judge from imposing the upper term unless a jury finds circumstances in aggravation beyond a reasonable doubt or the defendant admits to such circumstances.

Accordingly, under 924 (c), the 5-year term is the presumptive, or "statutory maximum" allowable for the offense. Nevertheless, the sentencing judge departed from this presumptive term to impose an upper term based on the Judge finding of aggravating factors by a preponderance of the evidence. This procedure for imposing the upper term sentences is indistinguishable from the Washington State procedure for imposing exceptional sentences which the United States Supreme Court found unconstitutional in Blakely.

39

In Mr. Ellis' case, his conviction under 924 (c) based on his plea agreement and the facts he admitted, submitted him to a presumptive term of 5 years in federal prison.

However, the sentencing judge subsequently found multiple factors in aggravation by a preponderance of the evidence, determining that the aggravating factors out weighed the mitigating factor. The Judge sentenced petitioner to the upper terms of 7 years. Blakely and Apprendi explicitly condemn as a Sixth Amendment violation such judicial fact finding of aggravating factors to justify the imposition of a sentence greater than the statutory maximum authorized by the jury's verdict.

Similarly, the United States Supreme Court precedent reveal the Judges imposition of additional years in federal prison based on his finding that the petitioner endangered others while "fleeing and eluding", by a preponderance of the evidence as a clear violation of Mr. Ellis' due process right to proof of every element of the charged crime beyond a reasonable doubt. Federal law afforded Mr. Ellis adequate procedural safeguards, including a trial by jury and proof beyond a reasonable doubt, with regard to charged section 2113 (a), 924 (c), or 2113 (d) offense. Yet, the court failed to furnish him those very same safeguards as to the existence of aggravating factors despite the increased loss of liberty attending a finding of such factors.

The District Court has no principled basis for depriving Mr. Ellis of basic protections in the proof of these aggravating factors, and did so by simply labeling the factors as circumstances in aggravation.

In Harris v. United States, 536 U.S. 545 (2002), the United States Supreme Court concluded that 18 U.S.C. 924 (c)(1)(a) regarded brandishing and discharging as sentencing factors to be found by the Judge, not offense elements to be found by the jury.

However, in arriving at this conclusion, the court relied on grounds which it decisively rejected in <u>Blakely</u>. Citing the Court's decision in <u>Harris</u>, the Court maintained that the upper term constitutes the statutory maximum for purposes of Sixth Amendment analysis because a "fact" increasing the mandatory minimum (but not exceeding the sentence beyond the statutory maximum), for the verdict had authorized the judge to impose the minimum with or without the finding. The Supreme Court in <u>Blakely</u> exposed the fallacy of this distinction. Any judicial fact-finding which forms the basis for increasing a sentence beyond the maximum authorized by the jury's verdict - whether the judicially determined facts require a sentence enhancement or merely allow it - is unconstitutional. Whether a sentencing scheme permits a judge to impose an enhanced sentence based on an enumerated factor or an unenumerated factor does not change the fact that the verdict alone still fails to authorize the enhanced sentence.

### Point II

**A.  Federal law does not permit sentencing judges to impose enhanced sentences based on their determination of facts not found by the jury or admitted by the defendant, and so, the Fifth and Sixth Amendments forbid the process.**

Blakely and Apprendi require any fact, other than the fact of a prior conviction that increases the penalty for a crime beyond the statutory maximum to be submitted to a jury and proved beyond a reasonable doubt.

The Fifth and Sixth Amendments "require criminal convictions to rest upon a jury's determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 509-510 (1995); See also Mullaney v. Wilbar, 421 U.S. 684, 689 (1975); In re Winship, 397 U.S. 358, 363-364 (1970).

Where proof of a particular fact exposes the defendant to greater punishment than that available in the absence of such proof, the fact is an element of the crime which the Sixth Amendment requires to be proven to a jury beyond a reasonable doubt.  Apprendi, 530 U.S. at 490; Mullaney, 421 U.S. at 698; Spect v. Patterson, 386 U.S. 605, 607 (1967).

The right to a jury trial reflects the historical intention to insure the people's control in the judiciary. Blakely, 542 U.S. at 305-306. "The very reason the framers put a jury-trial guarantee in the constitution is that they were unwilling to trust government to mark out the role of the jury." Id at 308. "Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict." Id. At 306.

42

In particular, <u>Apprendi</u> requires that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490, see also <u>Booker</u>, 543 U.S. at 244.  In <u>Apprendi</u>, a factual finding under New Jersey's hate crime statute that defendant committed the charged possession of a firearm offense with the purpose to intimidate individuals because of race increased the statutory maximum penalty from between 5 and 10 years imprisonment to between 10 and 20 years imprisonment.  As a result, the Court determined that this factual finding constituted an element of the offense to be submitted to a jury and proved beyond a reasonable doubt.  <u>Apprendi</u>, 530 U.S. at 490-491.

<u>Ring v. Arizona</u> applied the holding of <u>Apprendi</u> to Arizona's death penalty law. Under that law, the maximum punishment for first-degree murder was life imprisonment unless the trial judge found beyond a reasonable doubt that one of ten statutorily enumerated aggravating factors existed.  The United States Supreme Court held that the death sentence under Arizona law violated the defendant's right to a jury determination of guilt on every element of the crime charged.  <u>Ring</u>, 536 U.S. at 589.  Thus, the Sixth Amendment mandates that a jury rather than a sentencing judge, find the existence of an aggravating factor necessary for the imposition of the death penalty.  Id. At 609.

<u>Blakely v. Washington</u> further elaborated on a defendant's right to a jury determination of non-recidivist aggravating factors beyond a reasonable doubt.  There the defendant pleaded guilty to kidnapping his estranged wife while using a firearm under Washington law, the facts defendant admitted through his plea supported a prison sentence in the "standard range" of 49 to 53 months.  However, Washington law also

permitted the judge to impose a sentence above the standard range if he found the existence of an aggravating factor determining "substantial and compelling reasons justifying an exceptional sentence." Blakely, 546 at 299. The judge could make such a finding by a mere preponderance of the evidence. State v. Crone, 143 Wash.2d 288 (Wash. 2001); Wash. Rev. Code Ann. 9.94A.370(2). Furthermore, he could choose from a non-exhausted list of aggravating factors, although he could not rely on a factor already used to compute the standard range sentence for the offense. Blakely, 542 U.S. at 299. Pursuant to these sentencing provisions, the judge imposed an exceptional sentence of 90 months based on his findings that the defendant had acted with "deliberate cruelty" in committing the kidnapping offense. Id. at 300.

In invalidating Mr. Blakely's exceptional sentence, the Supreme Court initially observed:

[T]he "statutorily maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. (Citations omitted). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts. Id. At 303-304 (emphasis in original).

Applying this principle, the court found that the statutory maximum sentence based solely on the facts defendant admitted in his guilty plea was the standard range of 49 to 53 months; the judge was prohibited from imposing the exceptional 90-month sentence on those facts alone. Id. at 304. Consequently, the judge necessarily based his imposition of an additional 37 months beyond the statutory maximum upon a factual

finding unsupported by defendant's plea and never found true by a jury beyond a reasonable doubt. Ibid. The imposition of the 90-month sentence under Washington's sentencing scheme therefore violated defendant's Sixth Amendment right to trial by jury. Id. at 305.

In <u>United States v. Booker</u>, the United States Supreme Court reaffirmed the bright-line rule of <u>Blakely</u> and <u>Apprendi</u> while invalidating the federal sentencing guideline to the extent that they permitted judges, based on their own factual finding, to impose sentences greater than those authorized by the jury's verdict. See 543 U.S. at 243-244. There a jury convicted defendant of possessing at least 50 grams of crack cocaine with the intent to distribute it, an offense, which, when coupled with defendant's criminal history, mandated a prison sentence of between 210 and 262 months in prison under the guidelines. However, during a sentencing hearing, the judge found by a preponderance of the evidence that defendant possessed an additional 566 grams of crack and had obstructed justice. Under the guidelines, these additional findings compelled the judge to sentence defendant to a term of between 360 months and life imprisonment. The judge chose a sentence of 360 months. In concluding this sentencing procedure violated defendants Sixth Amendment right to a jury trial. The court found no distinction between the sentence imposed pursuant to Washington statutes in <u>Blakely</u> and the sentences imposed pursuant to the federal sentencing guidelines in [this] case. "Id. at 235." The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus, just as in <u>Blakely</u> the jury's verdict alone does

45

not authorize the sentence. The judge acquires that authority only upon finding some additional fact. Ibid.[11]

### B. The District Court's procedure for imposing an upper term violated Mr. Ellis' Sixth Amendment right to jury trial guarantee.

This procedure used by the District Court when it imposed an upper term sentence against Mr. Ellis infringed upon Mr. Ellis' right to a jury trial.

Under the procedure employed by the District Court in the case at bar, when Mr. Ellis was convicted of 924 (c) which specified two possible prison terms - a lower and upper term - the sentencing judge imposed the upper term based on aggravating factors found by a preponderance of the evidence standard. Because the lower term is the maximum sentence the judge may impose solely on the basis of the facts admitted by the defendant, it also constitutes the "statutory maximum" for Blakely and Apprendi purposes. Blakely, 542 U.S. at 303-304.

An upward deviation from 924 (c), statutory maximum sentence in this case operates exactly like an upward deviation under Washington's flawed sentencing law in Blakely. As in Blakely, the District Court violated Mr. Ellis' jury trial right when it imposed a sentence beyond the statutory maximum based on factual findings unsupported by the plea agreement, never admitted by Mr. Ellis and never found by a jury. Blakely, 546 U.S. at 304-305 (emphasis added).

---

[11] In a separate majority opinion, the court in Booker addressed how to remedy the constitutional defects of the guidelines in light of Congress likely intent in enacting them. The Court achieved this result by rendering the guidelines advisory, thereby making the statutory maximum stated in the above statute of conviction. 543 U.S. at 245-246. Under the new Advisory System, "District Courts, while not bound to apply the guidelines, must consult those guidelines and take them into account when sentencing." And the Federal Appellate Court must "review sentencing decisions for unreasonableness." Id. at 264.

924 (c), the statute that Mr. Ellis was convicted provides for a 5 year or 7 year mandatory minimum, depending on whether or not the firearm was "brandished". In absence of the aggravating factor of "brandishment," a deviation from 5 years to 7 years is unauthorized under 924 (c)(1). Thus, pursuant to Apprendi and Blakely, the lower term of 5 years is the statutory maximum sentence that the District Judge may impose for the 924 (c) conviction. "Solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant." Blakely, 542 U.S. at 303. (Emphasis in original).

Without the benefit of additional jury fact finding or Mr. Ellis' admissions, the judge in this case found numerous aggravating factors based upon which he departed from the statutory maximum of 5 years and sentenced Mr. Ellis to 7 years. In doing so, the judge necessarily found the existence of facts beyond the plea agreement and Mr. Ellis' admission.

Indeed, the judge here could no more impose an upper term of 7 years for petitioner's conviction under 924 (c) without finding "brandishment" than the judge in Blakely could impose the additional 37-month sentence without finding that the defendant acted with "deliberate cruelty," or than the judge in Ring could sentence the defendant to death without finding one of ten aggravating factors, or the judge in Apprendi could impose an additional 10-year sentence without finding that defendant acted with the purpose to intimidate individuals because of their race. Yet, as Blakely, Ring, Apprendi make crystal clear, such judicial fact finding of aggravating factors to justify the imposition of a sentence greater than the statutory maximum authorized by the jury's verdict runs afoul of the Sixth Amendment right to a jury trial. Blakely, 452 U.S. at 305; Apprendi, 530 U.S. at 490-492.

47

As the court explained in <u>Apprendi</u>, justice is not served when a state meets out punishment without providing adequate procedural safeguards, including the right to a jury trial.

New Jersey threatened <u>Apprendi</u> with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect <u>Apprendi</u> from unwarranted pains should apply equally to the two acts that New Jersey has singled out for punishment. Merely listing the label "sentencing enhancement" to describe the latter does not provide a principled basis for treating them differently. 530 U.S. at 476.

The government threatened Mr. Ellis with certain pains if he brandished the weapon or endangered others while eluding. Where as the government fulfilled its obligation to afford Mr. Ellis procedural safeguards to protect him against unwarranted pains attending a finding that he committed the charged offense, it failed in its duty to furnish him the very same safeguards relating to whether he brandished the weapon or endangered others while fleeing, these acts in which subjected him to additional years of punishment in federal prison. The government achieved this inconsistent treatment by merely describing these latter acts as "aggravating circumstances" and enlisting the sentencing judge to determine their existence. Such labeling "surely does not provide a principled basis for treating them differently." <u>Apprendi</u>, 530 U.S. at 476.[12]

---

[12] Here, the sentencing procedure used by the government in this case frustrated "the defendant's ability to predict with certainty the judgment from the face of the felony indictment." <u>Apprendi</u>, 530 U.S. at 478. The government alleged facts in the indictment which subjected Mr. Ellis to a federal prison term of only 5 years. However, the trial judge ultimately sentenced Mr. Ellis to a term of 7 years based on facts never alleged in the indictment or proved to a jury.

In sum as the Court concluded in <u>Blakely</u>: The framers would not have thought it too much to demand that, before depriving a man of [four] more years of his liberty, the state should suffer the modest inconvenience of submitting its accusation to "the unanimous suffrage of twelve of his equals and neighbors," (Citation omitted), rather than a lone employee of the state. 542 U.S. at 313 -314.

The judge's imposition of a 7 year upper term in this case violated Mr. Ellis' Sixth Amendment right to a jury determination of every fact which increases the defendant's penalty beyond the statutory maximum.

## C. **The District Court's procedure for imposing an upper term violated Mr. Ellis right under the due process clause to proof of every element of the crime charged beyond a reasonable doubt.**

The procedure for imposing the upper term also violated Mr. Ellis' right under the due process clause to proof of every element of the charged crime beyond a reasonable doubt. <u>United States v. Gaudin</u>, 515 U.S. 506-509-510; <u>Mullaney v. Wilbar</u>, 421 U.S. 684, 698 (1975). The reasonable doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error.

The standard provides concrete substance for the presumption of innocence that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law. "(citation omitted) . . ." A person accused of a crime. . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." (Citation omitted).

In re Winship, 397 U.S. 358, 363 (1970); see also, Addington v. Texas, 441 U.S. 418, 423 (1979). ["the interest of the [criminal] defendant are of such magnitude that historically . . . they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment"]. **Where proof of a particular fact exposes the defendant to greater punishment than that absence of such proof, that fact is an element of the crime which must be proven beyond a reasonable doubt.** Apprendi, 530 U.S. at 490

In the case at bar, the trial judge determined the existence of aggravating factors for purposes of imposing punishment above and beyond the presumptive term authorized by the plea agreement and admitted by Mr. Ellis. Although the plea agreement rendered Mr. Ellis guilty of the charged offense beyond a reasonable doubt, the judge found that Mr. Ellis brandished the weapon by a preponderance of the evidence. Thus, Mr. Ellis saw his maximum potential sentence balloon . . .  based not on facts proved to his peers beyond a reasonable doubt or admitted by him but on facts extracted after his plea hearing from a report compiled by a probation officer who the judge thinks more likely got it right than got it "wrong." Blakely, 542 U.S. at 311-312 (emphasis added). Indeed, in sentencing, the judge imposed two additional years above the statutory maximum on the 924 (c) charge after finding factors in aggravation by only a preponderance of the evidence. This violated Mr. Ellis' due process right to proof beyond a reasonable doubt.

**D. The lower federal courts have misinterpreted the United States Supreme Courts precedents in finding the sentencing procedure complained of in this case constitutional.**

Despite the similarities between Washington State's sentencing scheme in Blakely and the procedure employed during sentencing in the case at bar, the lower federal courts has now concluded that the preponderance of the evidence standard as employed in this case does not run afoul of the "bright-line rule" set forth in Blakely and Apprendi. Blakely, 542 U.S. at 308. The Supreme Court in Harris based its conclusion that sentencing judge's have the discretion under 18 U.S.C. 924 (c) to find brandishment by a preponderance of the evidence after a verdict has been determined. Harris v. United States, 536 U.S. 545 (2002). However, the United States Supreme Court has repeatedly rejected the precise arguments the court used in Harris in defense of the procedure being constitutional. Justice Thomas in his dissent argued that the range of punishment which [Harris] was exposed turned on the fact that he brandished a firearm, a fact that was never charged in his indictment nor proved at trial beyond a reasonable doubt. Id. at 548. The dissent recognized that McMillan v. Pennsylvania, 477 U.S. 79 (1986), was in direct conflict with the court's later decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). Nevertheless, the Court decided that the upper term constitutes the "statutory maximum" for purposes of Sixth Amendment analysis because federal judges retain discretion over whether to impose the upper term after finding factor in aggravation. The court reasoned:

"Within the limits of any discretion as to the punishment which the law may have allowed, the judge when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation of mitigation, not covered by the allegations

51

of the indictment. Id at 561. This judicial fact finding which occurs during the selection process is the same type of judicial fact finding that has been a part of the sentencing process. However, the Supreme Court in Harris, supra, failed to adhere to its own oft repeated bright line rule that any judicial fact finding which increases the maximum authorized by the jury's verdict or the defendant's admission violated the Sixth Amendment. See e. g., Booker 543 U.S. at 232; Blakely, 542 U.S. at 303 [referencing Apprendi's bright line rule"] Ring, 536 U.S. at 602; Apprendi  530 U.S. at 433[13]

Blakely presented a sentencing scheme with judicial discretion all but indistinguishable from that provided under Harris. "Whether the judicially determined facts require a sentence enhancement or merely allow it." Blakely, 542 U.S. at 305, n.8.

In Harris, supra, the court reasoned that the additional fact of brandishment was a sentencing factor to be decided by the Judge, however, the Blakely majority repudiated this very rationale when the State of Washington raised it in that case:

"The State tries to distinguish Apprendi and Ring by pointing out that the enumerated grounds for departure are illustrative rather than exhaustive. Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring) or any aggravating fact (as here), it remains the case that the verdict alone does not authorize the sentence. The Judge acquires that authority only upon finding some additional fact." Blakely 542 US at 305 (emphasis in original)

---

[13] This rule does not charge simply because a sentencing scheme gives its judges discretion whether to impose an upper term upon the finding of one or more aggravators. Rather, the crucial inquiry is whether the scheme permits judges to impose an additional sentence based on circumstances that cause an increase in the defendants authorized punishment. Ring, 536 U.S. at 602.

Thus, merely because 924 (c) list of aggravating factors is illustrative does not somehow exempt 924 (c) from the rule that, other than the fact of a prior conviction, any fact - whether enumerated or unenumerated - that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. <u>Apprendi</u> , 530 U.S. at 490. A sentencing judge will violate this constitutionally based rule when it imposes a sentence beyond the statutory maximum authorized by a jury's verdict by finding one or more factors in aggravation, whether specifically listed in the applicable statute or not.

**Conclusion**

For the foregoing reasons, coupled with those stated in Cunningham v. California, 126

S.Ct. 1672 (2007), this court **should** reverse its decision to increase Mr. Ellis' sentence

based on factors which were not admitted by him.    The court imposed enhanced

sentences based on its determination of facts not found by the jury or admitted by Mr.

Ellis.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

**NORTHERN DIVISION**

| | | |
|---|---|---|
| JONATHAN ELLIS, | ) | |
|         **Petitioner** | ) | **Case No. 2:06 CV 1013-WHA-SRW** |
|     v. | ) | **(2:04 CR 153-WHA)** |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
|        **Respondent.** | ) | |

**Certificate of Service**

I, Jonathan Ellis hereby certify that on the ___ day of June 2007 a copy of my Reply Brief to 2255 Motion, Affidavit to 2255 Motion and Affidavit Replying to Attorney Stephen R. Glassroth Affidavit was sent to the United States Attorney and Stephen Glassroth at the below stated address in the U.S. Mail.

        A. Clark Morris
        Assistant United States Attorney
        One Court Square, Suite 201
        Montgomery, AL 36104

        Stephen R. Glassroth
        The Glassroth Law Firm, P.C.
        615 McDonough Street
        P. O. Box 910
        Montgomery, AL 36101-0910

        Jonathan Ellis

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

### NORTHERN DIVISION

JONATHAN ELLIS,                    )
               Petitioner    )    **Case No. 2:06 CV 1013-WHA-SRW**
    v.                           )    **(2:04 CR 153-WHA)**
                    )
UNITED STATES OF AMERICA  )
            Respondent.    )
_____ )

### Affidavit in Support of 2255 Motion Claim That Attorney Stephen R. Glassroth Failed to File a Notice of Appeal Despite the Fact That I Requested That He Do So.

**I,** Jonathan Y. Ellis, being duly sworn, deposes and says that:

1)     On November 30, 2005, each of the terms of the plea agreement which I entered into were constructively amended by the United States Attorney, the Probation Department, and the Court.

2)     This constructive modification was the creature of the intentional abusive tactics employed by Ms. Morris.

3)     The cumulative modifications of the agreement and as well as the fact that I wanted to contest being prosecuted under 18 U.S.C. 2113 (a) and (d) and 924 (c)(1) for the same conduct persuaded me to appeal the District Court's judgment.

4)     I instructed Attorney Glassroth of my want to appeal. Mr. Glassroth attempted to appeal directly to the District Judge and was instantly denied.

5)     Mr. Glassroth did not file a notice of appeal in the District Court and that negligence has caused me to have to use a 28 U.S.C. 2255 motion.

6)      Had Mr. Glassroth followed my instructions whether or not my issues are procedurally barred would not be a predicate to establishment of the merits of the other claims in my motion.

7)      I do not know why Mr. Glassroth did not comply to the requirements of appellate procedure, however, I did ask him to file an appeal on my behalf.

I swear under penalty of perjury that the foregoing is true and correct.

Jonathan Y. Ellis
254 Peachtree Street, S.W.
Atlanta, GA 30303

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

### NORTHERN DIVISION

JONATHAN ELLIS,                          )
                **Petitioner**    )    **Case No. 2:06 CV 1013-WHA-SRW**
        **v.**                          )    **(2:04 CR 153-WHA)**
                         )
**UNITED STATES OF AMERICA**  )
           **Respondent**    )
_____)

### Affidavit of Jonathan Y. Ellis Replying to the Affidavit of Attorney Stephen R. Glassroth's Affidavit Relating to Claims of Ineffective Assistance of Counsel.

**I,** Jonathan Y. Ellis being duly sworn depose and says:

My name is Jonathan Y. Ellis and I am the petitioner in the above styled proceeding. I was represented in the Middle District of Alabama, Northern Division in the case which the affidavit of Attorney Stephen R. Glassroth makes references. In this proceeding, I filed a motion under 28 U.S.C. 2255 claiming, *inter alia*, that Attorney Stephen Glassroth provided me with constitutionally defective representation in several respects. I have reviewed the affidavit submitted to this court on behalf of Stephen Glassroth and those statements as well as his recollection are mistaken and the record in this court illustrates this fact. I will address each assertion made by Mr. Glassroth in his affidavit, in the order which it was presented therein. With respect to my initial claim that "I was a victim of ineffective assistance of counsel," counsel did not combine the multiple pending bank robbery offenses into a single proceeding in this district and thus, I was left with multiple sentences being pyramided against me. This contention is meritorious, in fact Mr. Glassroth states as a fact for his reason of not getting the various offenses combined in a single proceeding that there was a "major impediment" to

handling these cases in such a manner and that impediment would not allow [him] to advise Mr. Ellis to follow such a course of action. Nowhere in Mr. Glassroth's affidavit does he state what that impediment was. Instead former counsel states that after a substantial amount of effort was directed at the possibility of disposing of all of Mr. Ellis' pending Federal criminal charges by means of Rule 20, and much discussion and negotiation with Ms. Morris directed at the possibility of accomplishing that result, [they] were unable to resolve the provision in the law that treats multiple firearm convictions as subsequent offenses under 18 U.S.C. 924 (c)(1)(c).

I too have examined <u>United States v. Deal</u>, 508 U.S. 129 (1993), <u>United States v. Casianno</u>, 113 F.3d 420 (3rd Cir.) cert. denied, 522 U.S. 887 (1997), and <u>United States v. Andrews</u>, 75 F.3d 552 (9th Cir.) cert. denied, 517 U.S. 1239 (1996), among other cases and satisfied myself that Attorney Glassroth's interpretation of those cases and others are misplaced. While it's true that this provision has the effect of vastly enhancing the punishment for second and subsequent offenses since pursuant to 18 U.S.C. 924 (c)(1)(c), the sentences are to be imposed to run consecutively to any other sentence imposed. I wanted Mr. Glassroth to offer to the Government a deal in which I would plead guilty to the pending bank robbery offenses in exchange for their elimination of the 924 (c) charges.

While Mr. Glassroth's affidavit suggests and hints at the impossibility of arranging the plea deal as outlined above, I have come to learn that such deals are not only possible, but routine. Attached to this affidavit is a plea agreement from a similarly situated criminal defendant, prosecuted in the Northern District of Georgia. Of course, that district is also in the Eleventh Circuit. This other defendant was charged with two

2

bank robberies and two associated 924 (c) charges as well. His plea agreement reflects

that in exchange for his plea of guilty to the two bank robberies and **one** 924 (c) charge,

the government would dismiss the second 924 (c) charge, thus eliminating the possibility

of the 25 year consecutive sentence associated with a second or subsequent 924 (c)

conviction. This plea agreement reflects the sort of agreement I sought in which 924 (c)

charges are dismissed by agreement, and its existence categorically and in clear terms

refutes Mr. Glassroth's vague and mysterious assertions that such a deal was not possible.

 If I did not obtain success in such negotiations, I would have chosen to go to trial

on each of the other charges. Given the state of the evidence as I understood it, with

respect to the other districts, I would not have been found guilty of any other bank

robbery without a plea of guilty.

 This district was the only one in which I was arrested close in time after a bank

robbery occurred. There was no absolute evidence to demonstrate that I was the

perpetrator of the other robberies; at trial I could have given testimony on my own behalf

and if the fact of the instant conviction arose, I could have asserted my guilt to the single

offense only. In relation to the charges in this district, I freely and voluntarily gave full

statements, which was video recorded, in which [I] confessed to the armed robbery of the

Colonial Bank Branch at 671 South Perry Street in Montgomery and the use of the

firearm in the course of that robbery. I wished to enter a plea of guilty to 18 U.S.C. 2113

(a) and (d) only. I did not think that it would be in my best interest to proceed to trial on

these offenses, however, it was then and still is my position that 18 U.S.C. 924 (c) was

misapplied to my conduct and I wanted to attack its use on direct appeal, which if denied

would have given me the chance for a hearing *en banc* and if necessary for certiorari to

the United States Supreme Court. I first needed to aggressively seek to consolidate all charges into a single proceeding in order to subsequently employ the next part of my strategy.

The next assertion of Mr. Glassroth is in response to my statement that he misinformed me with respect to my plea agreement. I was lead to believe that my plea agreement contained a "cap" that would allow me to withdraw it if I was not going to receive a 5-year sentence as contemplated within the agreement.

Mr. Glassroth's recollection of what occurred with respect to the plea agreement is incorrect, inconsistent with the record contained in the court files and misleading to the court. In his affidavit, Mr. Glassroth first creates the illusion as though I waited until a certain time to decide to take a plea.

The actions of Mr. Glassroth significantly influenced my decision not to go to trial. His failure to respond to specific requests and his reliance upon Ms. Morris to handle and conclude the case for him placed me in the hands of the opposition.

With respect to Mr. Glassroth's references within his affidavit to Fed. R. Crim. P. 11(c)(1) and his informing me that the plea would be entered into under Rule 11 (c)(1)(b), he made no explanation to the differences between a plea under 11 (c)(1)(b) and 11 (c)(1)(c), as a direct result of this omission I in fact believed that I could withdraw the 11 (c)(1)(b) plea as if it was a 11 (c)(1)(c) plea agreement with a cap on the sentence. I had never had any previous experience with federal authorities and believed that counsel was correctly articulating the law to me.

In advising me of the plea agreement and the consequences of entering a plea of guilty, I was not advised that although the government and the plea agreement said one

4

thing, after the plea was to be executed a different tactic would be used.

Because a plea agreement does not bar jurisdictional issues, the plea agreement did not prevent direct appeal or Supreme Court review of the double jeopardy implications of the charges which were applied against me. However, Mr. Glassroth's failure to file a timely notice of appeal prevented my ability to pursue these issues.

I did in fact ask Mr. Glassroth to appeal the decision of the District Court in this matter and that I was going to obtain different counsel to address my appeal. **At the sentencing hearing I explicitly instructed Mr. Glassroth to immediately file a notice to appeal this unlawful procedure.** To that end, Mr. Glassroth stated orally to the court that he would like to appeal directly to the sentencing court. This procedure employed by Mr. Glassroth was not only inadequate but also violated the implicit understanding which Mr. Glassroth and I had prior to entering the plea agreement.

Finally, Mr. Glassroth discontinued my ability to contact his office via collect calls (The only vehicle which could be used at Dale County Jail Facility) while simultaneously failing to formally file a timely notice of appeal to the 11th Circuit Court of Appeals. As a direct result of the foregoing, I have been subjected to filing the instant cause. Nevertheless, I do know now that the attorney's failure to file a notice of appeal in this case caused severe harm and no one can do anything but speculate as to what the final outcome would have been had Mr. Glassroth filed the notice to appeal timely. The right complained of is not waiveable by either party. Affiant sayeth not.

I swear under penalty of perjury that the foregoing is true and correct.

Jonathan Y. Ellis
254 Peachtree Street, S.W.
Atlanta, GA 30303

## ATTACHMENT A

# GUILTY PLEA and PLEA AGREEMENT

United States Attorney
Northern District of Georgia

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRIMINAL NO: 1:07-CR-017-JOF

**KENDRICK MARQUIS MINTON,** defendant, having received a copy of the above-numbered Indictment and having been arraigned, hereby pleads **GUILTY** to Counts One, Three, and Four of the Indictment. The defendant, his counsel, and the United States Attorney for the Northern District of Georgia ("the Government"), as counsel for the United States, subject to approval by the Court, have agreed upon a negotiated plea in this case, the terms of which are as follows:

1. **Admission of Guilt.** The defendant admits that he is pleading guilty to Counts One, Three, and Four because he is in fact guilty of the crimes charged those counts of the indictment.

2. **Dismissal of Remaining Count in the Indictment.** The Government agrees that upon the sentencing of the defendant, and with leave of the Court, it will file a dismissal of Count Two of the Indictment pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. The defendant understands that the Probation Office and the Court may still consider the conduct underlying such dismissed count in determining relevant conduct under the Sentencing Guidelines.

3.   __Jury Trial Waiver__.   The defendant understands that by pleading guilty, he is giving up the right to plead not guilty and the right to be tried by a jury. At a trial, the defendant would have the right to an attorney, and if the defendant could not afford an attorney, the Court would appoint one to represent the defendant.   During the trial, the defendant would be presumed innocent and the Government would have the burden of proving his guilt beyond a reasonable doubt.   The defendant would have the right to confront and cross-examine witnesses against him.  If the defendant wished, he could testify on his own behalf and present evidence in his defense, and he could subpoena witnesses to testify on his behalf.  If, however, the defendant did not wish to testify, that fact could not be used against him.   If the defendant were found guilty after a trial, he would have the right to appeal his conviction.  The defendant understands that by pleading guilty, he is giving up all of these rights and there will not be a trial of any kind.  The defendant also understands that he ordinarily would have the right to appeal his sentence and, under some circumstances, to attack the sentence in post-conviction proceedings.  By entering this Plea Agreement, the defendant may be waiving some or all of those rights to appeal or collaterally attack his sentence, as specified below.  Finally, the defendant understands that, to plead guilty, he may have to answer questions posed to him by the Court concerning the rights that he is giving up and the facts of this case, and the defendant's answers, if untruthful, may later be used against him in a prosecution for perjury or false statements.

4.   __Statutory Penalties__.   The defendant understands that, based on his plea of guilty, he will be subject to the following maximum and mandatory minimum penalties for each count:

Page 2 of  13

**Counts One and Three**:

   (a)   Maximum term of imprisonment: twenty-five years on each count;

   (b)   Mandatory minimum term of imprisonment: not applicable;

   (c)   Term of supervised release: five years on each count;

   (d)   Maximum fine: $250,000 on each count;

   (e)   Full restitution to all victims of the offense and relevant conduct;

   (f)   Mandatory special assessment: $100 on each count.

**Count Four**:

   (a)   Maximum term of imprisonment: seven years imprisonment consecutive to any term of imprisonment imposed on Counts One and/or Three;

   (b)   Mandatory minimum term of imprisonment: seven years consecutive to any term of imprisonment imposed on Counts One and/or Three;

   (c)   Term of supervised release: five years;

   (d)   Maximum fine for each count: $250,000;

   (e)   Full restitution to all victims of the offense and relevant conduct;

   (f)   Mandatory special assessment: $100.00.

5.   **Sentencing Guidelines**.  The defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines. Ultimately, it is within the Court's discretion to impose a sentence up to and including the statutory maximum. The defendant also understands that no one can predict his exact sentence at this time.

6.   **No Additional Charges**.   The United States Attorney for the Northern District of Georgia agrees not to bring further criminal charges against the defendant related to the charges to which he is pleading guilty.   The defendant understands that this provision does not bar prosecution by any other federal, state, or local jurisdiction.

7.   **Acceptance of Responsibility**.   The Government will recommend that the defendant receive the two-level adjustment for acceptance of responsibility pursuant to Section 3E1.1 of the Sentencing Guidelines, and the additional one-level adjustment if the offense level is 16 or higher.   However, the Government will not be required to recommend acceptance of responsibility if, after entering this Plea Agreement, the defendant engages in conduct inconsistent with accepting responsibility.   Thus, by way of example only, should the defendant falsely deny or falsely attempt to minimize his involvement in relevant offense conduct, give conflicting statements about his involvement, fail to pay the special assessment, or participate in additional criminal conduct, including unlawful personal use of a controlled substance, the Government will not be required to recommend acceptance of responsibility.

8.   **Cooperation**.   The defendant agrees to continue to cooperate truthfully and completely with the Government, including being debriefed and providing truthful testimony at any proceeding resulting from or related to his cooperation.   The defendant also agrees to disclose the existence of and to produce to the Government any and all books, papers, documents, and other items of evidentiary value that are in his actual or constructive possession.   The defendant understands that the Government alone will determine what forms of cooperation to request from the

defendant, and the defendant agrees that he will not engage in any investigation that is not specifically authorized by the Government.

9.   **Section 1B1.8**.   Pursuant to Section 1B1.8 of the Sentencing Guidelines, the Government agrees that any self-incriminating information that was previously unknown to the Government and is provided to the Government by the defendant in connection with his cooperation and as a result of this Plea Agreement will not be used in determining the applicable sentencing guideline range, although such information will be disclosed to the Probation Office and the Court.  The Government also agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, based on any information provided by the defendant in connection with  cooperation that was not known to the Government prior to the cooperation.   However, if the Government determines that the defendant has not been completely truthful and candid in his cooperation with the Government, he may be subject to prosecution for perjury, false statements, obstruction of justice, and any other appropriate charge, and all information he has provided may be used against him in such a prosecution.

10.   **Possible Section 5K1.1**.  The Government agrees to make the extent of the defendant's cooperation known to the sentencing court.   In addition, if the cooperation is completed before sentencing and the Government determines that such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the Sentencing Guidelines, the Government will consider whether to file a motion at sentencing recommending that the Court depart downward from the applicable guideline range.  If the cooperation is completed after

Page 5 of  13

sentencing and the Government determines that such cooperation
qualifies as "substantial assistance" pursuant to Rule 35(b) of the
Federal Rules of Criminal Procedure, the Government will consider
whether to file a motion for reduction of sentence.    In either
case, the defendant understands that the determination as to
whether he has provided "substantial assistance" rests solely with
the Government.    Good faith efforts by the defendant that do not
substantially assist in the investigation or prosecution of another
person who has committed a crime will not result in either a motion
for downward departure or a Rule 35 motion.    The defendant also
understands that, should the Government decide to file a motion
pursuant to this paragraph, the Government may recommend any
specific sentence, and the final decision as to what credit, if
any, the defendant should receive for his cooperation will be
determined by the Court.    If the defendant fails to cooperate
truthfully and completely, or if the defendant engages in
additional criminal conduct or other conduct inconsistent with
cooperation, he will not be entitled to any consideration
whatsoever pursuant to this paragraph.

     11.    **Fines and Restitution**.    The defendant agrees to pay any
fine and/or restitution imposed by the Court to the Clerk of Court
for eventual disbursement to the appropriate account and/or
victim(s).    The defendant also agrees that the full fine and/or
restitution amount shall be considered due and payable immediately.
If the defendant cannot pay the full amount immediately and is
placed in custody or under the supervision of the Probation Office
at any time, he agrees that the custodial agency and the Probation
Office will have the authority to establish payment schedules to
ensure payment of the fine and/or restitution.    The defendant
further agrees to cooperate fully in efforts to collect the fine
and/or restitution obligation by set-off of program payments,

execution on non-exempt property, and any other means the Government deems appropriate. Finally, the defendant and his counsel agree that Government officials may contact the defendant regarding the collection of any fine and/or restitution without notifying and outside the presence of his counsel.

12. **Collection of Special Assessment**. The defendant agrees that the terms and conditions regarding the collection of any fines or restitution imposed by the Court as are set out in paragraph 11 above shall also apply to the collection of the mandatory $300.00 Special Assessment that defendant will be ordered to pay as a part of his sentence.

13. **Waiver of Appeal**. To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of his sentence.

14. **DNA Waiver**. The parties agree that no biological evidence (as defined in 18 United States Code Section 3600A) has been identified in this case; therefore, the defendant understands and agrees that no evidence will be preserved for DNA testing.

15. **Disclosure of Facts by Government**. The Government reserves the right to inform the Court and the Probation Office of all facts and circumstances regarding the defendant and this case,

and to respond to any questions from the Court and the Probation
Office and to any misstatements of fact or law. Except as
expressly stated elsewhere in this Plea Agreement, the Government
also reserves the right to make recommendations regarding
application of the Sentencing Guidelines.

16. **Right to Modify Recommendation**. With regard to the
Government's recommendation as to any specific application of the
Sentencing Guidelines as set forth elsewhere in this Plea
Agreement, the defendant understands and agrees that, should the
Government obtain or receive additional evidence concerning the
facts underlying any such recommendation, the Government will bring
that evidence to the attention of the Court and the Probation
Office. In addition, if the additional evidence is sufficient to
support a finding of a different application of the Guidelines, the
Government will not be bound to make the recommendation set forth
elsewhere in this Plea Agreement, and the failure to do so will not
constitute a violation of this Plea Agreement.

17. **Breach of Plea Agreement**. If the defendant fails in any
way to fulfill each one of his obligations under this Plea
Agreement, the Government may elect to be released from its
commitments under this Plea Agreement. The Government may then
prosecute the defendant for any and all Federal crimes that he has
committed related to this case, including any charges dismissed
pursuant to this Plea Agreement, and may recommend to the Court any
sentence for such crimes up to and including the maximum sentence.
The defendant expressly waives any statute of limitations defense
and any constitutional or statutory speedy trial defense to such a
prosecution, except to the extent that such a defense exists as of
the date he signs this Plea Agreement. In addition, the defendant
agrees that, in such a prosecution, all admissions and other

information that he has provided at any time, including all statements he has made and all evidence he has produced during proffers, interviews, testimony, and otherwise, may be used against him, regardless of any constitutional provision, statute, rule, or agreement to the contrary. Finally, the defendant understands that his violation of the terms of this Plea Agreement would not entitle him to withdraw his guilty plea in this case.

18. **Non-Binding Agreement**. The defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement or otherwise discussed between the parties are not binding on the Court and that the Court's failure to accept one or more of the recommendations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement.

19. **Complete Agreement**. There are no other agreements, promises, representations, or understandings between the defendant and the Government.

In Open Court this _____ day of _____, 2007.

_____
SIGNATURE (Attorney for Defendant)
ALLISON C. DAWSON

_____
SIGNATURE (Defendant)
KENDRICK MARQUIS MINTON

_____
SIGNATURE (Assistant U.S. Attorney)
WILLIAM L. MCKINNON, JR.

_____
SIGNATURE (Approving Official)
F. GENTRY SHELNUTT

_____
DATE

Page 9 of 13

## ACKNOWLEDGMENTS BY DEFENDANT AND COUNSEL

I have read the INDICTMENT against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my sentence or challenging my sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

_____            _____
SIGNATURE (Defendant)                       DATE
KENDRICK MARQUIS MINTON


Page 10 of  13

## ACKNOWLEDGMENTS BY DEFENDANT AND COUNSEL (cont'd.)

I am KENDRICK MARQUIS MINTON's lawyer.  I have carefully reviewed the charges and the Plea Agreement with my client.  To my knowledge, my client is making an informed and voluntary decision to plead guilty and to enter into the Plea Agreement.


_____          _____
SIGNATURE (Defense Attorney)             DATE
ALLISON C. DAWSON

**INFORMATION BELOW MUST BE TYPED OR PRINTED**

Allison C. Dawson
NAME (Attorney for Defendant)

Suite 1700, The Equitable Bldg.
100 Peachtree Street, N.E.
STREET

Atlanta, Georgia 30303
CITY & STATE    ZIP CODE

PHONE NUMBER 404-688-7530

STATE BAR OF GEORGIA NUMBER _____

Filed in Open Court

_____

By _____


Kendrick Marquis Minton
NAME (Defendant)

_____
STREET

_____
CITY & STATE    ZIP CODE

PHONE NUMBER _____

U. S. DEPARTMENT OF JUSTICE
Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION | |
| --- | --- |
| CRIMINAL ACTION NO.: | 1:07-CR-017-JOF |
| DEFENDANT'S NAME: | KENDRICK MARQUIS MINTON |
| PAY THIS AMOUNT: | $300.00 |

INSTRUCTIONS:

1. PAYMENT MUST BE MADE BY **CERTIFIED CHECK** OR **MONEY ORDER** PAYABLE TO:

   CLERK OF COURT, U.S. DISTRICT COURT

   **\*PERSONAL CHECKS WILL NOT BE ACCEPTED\***

2. PAYMENT MUST REACH THE CLERK'S OFFICE WITHIN 30 DAYS OF THE ENTRY OF YOUR GUILTY PLEA

3. PAYMENT SHOULD BE SENT OR HAND DELIVERED TO:

   Clerk of Court, U.S. District Court
   2211 U.S. Courthouse
   75 Spring Street, S.W.
   Atlanta, Georgia 30303

   (Do not Send Cash)

4. INCLUDE DEFENDANT'S NAME ON **CERTIFIED CHECK** OR **MONEY ORDER**

5. ENCLOSE THIS COUPON TO INSURE PROPER AND PROMPT APPLICATION OF PAYMENT

6. PROVIDE PROOF OF PAYMENT TO THE ABOVE-SIGNED AUSA WITHIN 30 DAYS OF THE GUILTY PLEA

Page 13 of  13