IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN ELLIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv1013-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

This 28 U.S.C. § 2255 motion has been submitted on the pleadings, written submissions, and an evidentiary hearing.  On July 13, 2004, a federal grand jury returned a two-count indictment against the petitioner, Jonathan Ellis ("Ellis"), charging him with armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (Count 1) and use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count 2).

On August 23, 2005, Ellis appeared before the undersigned magistrate judge and pled guilty to both counts in the indictment.  As consideration for the guilty plea and pursuant to a written plea agreement, the government agreed, in pertinent part, to recommend (1) that Ellis receive a two-level reduction in his offense level for acceptance of responsibility and (2) that he be sentenced at the low end of the applicable guideline range.  *See Plea Agreement* (Doc. No. 10, Exh. B) at 2-3.  The plea agreement contained a waiver provision

whereby Ellis relinquished his right to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.  *Id.* at 4.

Sentencing was held on November 30, 2005.  At the hearing, Ellis's trial counsel objected to the probation office's finding in the presentence report that Ellis was subject to a seven-year mandatory minimum sentence for the firearm count because he had "brandished" the weapon in his commission of the bank robbery.  *See Sentencing Hearing* (Doc. No. 10, Exh. D) at 3-4.  After hearing argument and evidence on the issue, the district court accepted the probation office's finding and ruled that Ellis was subject to a seven-year mandatory minimum sentence for "brandishing" the firearm.  *Id*. at 12.  Ellis's counsel also objected to the probation office's finding that Ellis was subject to a two-level enhancement for engaging in flight that creates a risk to others.  *Id*. at 13-14.  The court overruled this objection, finding it to be unsupported by the facts of the case.  *Id*. at 19.

The court determined Ellis's total offense level to be 23.  *Id*. at 20.  Combining this offense level with Ellis's criminal history category of I produced an advisory guideline range of 46-57 months as to the bank robbery count.  *Id*.  The court further found that the authorized term of imprisonment for the firearm count was not less than seven years and that the sentence for this count must run consecutively to the sentence for the bank robbery count.  *Id*.  The court then sentenced Ellis to 57 months for the bank robbery count and a consecutive term of 84 months for the firearm count, for a total prison term of 141 months. *Id*. at 26-27.  Judgment was entered on December 6, 2005.  Ellis did not appeal.

2

On November 6, 2006 (Doc. No. 1), Ellis filed a *pro se* 28 U.S.C. § 2255 motion asserting the following claims:

1.  The district court erred by failing to grant an additional one-level sentence reduction for his full acceptance of responsibility.

2.  The district court erred by imposing a two-level sentence enhancement for endangerment and flight involved in the offense.

3.  His convictions for violating both 18 U.S.C. §§ 2113(a) and (d) and 18 U.S.C. § 924(c)(1) violated the Fifth Amendment protection against double jeopardy.

4.  He received ineffective assistance of counsel for the following reasons:

    a.  Counsel failed to file an appeal despite being instructed to do so.

    b.  Counsel induced him to plead guilty by incorrectly advising him that he would receive a five-year sentence for the firearm offense or else be given an opportunity to withdraw his plea.

    c.  Counsel failed to have other bank robbery charges that were pending against him in other jurisdictions consolidated into a single proceeding in this court.

The government maintains that Ellis's claims are either procedurally barred or meritless and that, therefore, they afford Ellis no basis for relief. (Doc. No. 10.) In addition, the government argues that the waiver provision in the plea agreement bars consideration of Ellis's non-ineffective assistance claims. (*Id.* at 7-8.) Ellis was allowed an opportunity to respond to the government's contentions and has done so. (Doc. No. 30.) This court

3

determined that an evidentiary hearing was appropriate, with specific concern for Ellis's

contention that he instructed his counsel to file an appeal, but that counsel failed to do so.

Consequently, the court appointed attorney Jon Carlton Taylor to represent Ellis for the

evidentiary hearing on his § 2255 claims.  (Doc. No. 46.)  The evidentiary hearing was held

on June 30, 2009.  For the reasons that follow, the court concludes that Ellis's § 2255 motion

should be denied.

## II.    DISCUSSION

### A.    *Substantive Claims Not Raised on Appeal*

As previously noted, Ellis asserts the following substantive claims in his § 2255

motion:

1.    The district court erred by failing to grant an additional one-level sentence reduction for his full acceptance of responsibility.

2.    The district court erred by imposing a two-level sentence enhancement for endangerment and flight involved in the offense.

3.    His convictions for violating both 18 U.S.C. §§ 2113(a) and (d) and 18 U.S.C. § 924(c)(1) violated the Fifth Amendment protection against double jeopardy.

*See Grounds Three & Four of § 2255 Motion* (Doc. No. 1) at 7-9.

Because no appeal was taken in Ellis's case, none of the above-listed substantive

claims was advanced on direct appeal.  Ordinarily, if a claim has not been raised on direct

appeal, it is deemed procedurally barred for purposes of review in a § 2255 proceeding.  *See*

*Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880

F.2d 1299, 1305 (11th Cir. 1989).  However, a petitioner can obtain review of an otherwise procedurally barred § 2255 claim by showing both cause for the failure to raise the claim on appeal and actual prejudice arising from that failure.  *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mills*, 36 F.3d at 1055.  In his § 2255 motion, Ellis suggests, somewhat obliquely, that ineffective assistance by his counsel is the cause for his failure previously to raise his substantive claims, whether in the trial court or in an appeal.  *See § 2255 Motion* (Doc. No. 1) at 8-9.

A showing of ineffective assistance of counsel may satisfy the "cause" exception to a procedural bar, opening the door to review of a substantive claim underlying an allegation of ineffective assistance.  *See Greene, supra*, 880 F.2d at 1305.  However, at the evidentiary hearing on his § 2255 motion, Ellis expressly stated that he did not intend to assert his claim that the district court erred by failing to grant him an additional one-level sentence reduction as an allegation of deficient performance by his counsel.  Therefore, what remains of this issue is a substantive claim of trial court error that was not raised on appeal and for which Ellis has not shown "cause" necessary to overcome the procedural default.  *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *Mills*, 36 F.3d at 1055-56.  Thus, Ellis is not entitled to further review of this claim.[1]

---

[1]In addition, to the extent this claim is solely a substantive claim and is not wedded to an allegation of ineffective assistance of counsel, it is also barred by the waiver provision in the plea agreement, whereby Ellis relinquished his right to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.  *See Plea Agreement* (Doc. No. 10, Exh. B) at 4.  An appeal waiver or collateral-attack waiver is valid if a defendant (continued...)

Even if Ellis had asserted the ineffective assistance of counsel as cause for his procedural default of this substantive claim, he would still be due no relief because he fails to establish that he was entitled to an additional reduction of his offense level.  Pursuant to the plea agreement, the government recommended, and Ellis received, a two-level reduction in his offense level under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Ellis contends that he was entitled to have his offense level reduced by an additional level pursuant to § 3E1.1(b).  U.S.S.G. § 3E1.1 provides:

Acceptance of Responsibility

(a)     If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b)     If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty,

---

¹(...continued)
enters into it knowingly and voluntarily.  *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006); *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005).  During the guilty plea colloquy, the magistrate judge determined that Ellis had read and discussed the plea agreement with his counsel before signing it and that Ellis understood the terms of the plea agreement.  *Id*. at 4.  In addition, the terms of the waiver provision were discussed during the plea hearing, and Ellis indicated to the court that he understood these terms.  *Id*. at 10.  Ellis also indicated to the court that he was not forced or otherwise coerced into pleading guilty.  *Id*. at 4-5.  At the evidentiary hearing on Ellis's § 2255 motion, Ellis's trial counsel, Stephen R, Glassroth, testified that he went over the waiver provision with Ellis before his plea was entered and that Ellis indicated he understood the rights he was waiving pursuant to the waiver.  (*See* Part II.B.2 of this Recommendation, *infra*.)  Accordingly, this court finds that Ellis knowingly and voluntarily waived his appeal and collateral attack rights to the extent provided in the plea agreement and that the waiver provision in the plea agreement is therefore valid.

> thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

U.S.S.G. § 3E1.1 (emphasis in original).

In an affidavit filed with this court prior to the evidentiary hearing, Ellis's trial counsel states, in pertinent part:

> [Ellis] complains that he did not get the benefit of the third level for acceptance of responsibility.  While not framed as an ineffective assistance claim, Mr. Ellis does criticize me for failing to object to his not receiving the additional level for acceptance of responsibility....  The plea agreement provided for only the two-level reduction since his change of plea came close to the date set for trial and the government rejected my efforts to obtain the additional level for acceptance of responsibility.

*Affidavit of Stephen R. Glassroth* (Doc. No. 9) at 4-5.

Ellis's conclusory assertion that he was entitled to the additional sentence reduction under § 3E1.1(b) finds no support in the record, and his failure to demonstrate his entitlement to the reduction precludes a grant of relief based on his counsel's supposed ineffectiveness for failing to pursue this issue.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to pursue an issue that lacks merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).

Remaining as substantive claims in Ellis's motion are allegations that (1) the district court erred by imposing a sentence enhancement for "endangerment and flight" and (2) his convictions for armed bank robbery and a related firearm offense violated the protection against double jeopardy.  As indicated above, Ellis appears to assert ineffective assistance

of counsel as cause for his failure previously to raise these otherwise procedurally defaulted claims. Ineffective assistance of counsel may satisfy the "cause" exception to a procedural bar only if the claim of ineffective assistance is meritorious. *Greene,* 880 F.2d at 1305. To determine whether it is, this court must decide whether counsel's failure to assert the underlying substantive claims could have affected the outcome of an appeal by Ellis. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Because this court concludes, as discussed more fully below,[2] that Ellis's underlying claims in this regard lack merit, Ellis fails to demonstrate cause for his procedural default.

Ellis also asserts several independent claims of ineffective assistance of counsel. Those claims are also reviewed below in the discussion of Ellis's allegations of ineffective assistance of counsel.[3]

## B.    *Ineffective Assistance of Counsel*

### 1.    Standard of Review

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

---

[2]*See* Parts II.B.5 and 6 of this Recommendation, *infra*.

[3]*See* Parts II.B.2 through 4 of this Recommendation, *infra*.

the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

## 2.    Failure to File Appeal

Ellis contends that his attorney, Stephen R. Glassroth,[4] rendered ineffective assistance of counsel by failing to file an appeal on his behalf after he instructed him to do so. *See Ground One of § 2255 Motion* (Doc. No. 1) at 5.

---

[4]Glassroth, who was retained as counsel for Ellis, represented Ellis throughout the proceedings in the trial court, including the guilty plea hearing and the sentencing hearing.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477. With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). Moreover, even if the client does not directly request an appeal, counsel generally has a duty to consult with him about an appeal.[5]  *See Flores-Ortega*, 528 U.S. at 480-81. If an attorney acts contrary to his client's wishes by failing to file a requested appeal, or if the attorney fails to fulfill his duty to attempt to determine his client's wishes, "prejudice is to be presumed, and [a defendant] is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver."[6]

---

[5]"[W]here a defendant has not specifically instructed his attorney to file an appeal, [the court] must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 478). The Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Supreme Court defined the term "consult" specifically to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.

[6]The Eleventh Circuit has interpreted *Flores-Ortega* to mean that prejudice to a defendant
(continued...)

*Gomez-Diaz*, 433 F.3d at 793.

At the evidentiary hearing on his § 2255 motion, Ellis testified that several days before his sentencing hearing, after reviewing a copy of his presentence investigation report ("PSI"), he contacted his attorney, Steve Glassroth, and expressed concerns about the contents of the PSI, including the probation office's recommendation that Ellis should be subjected to sentencing enhancements for brandishing a gun during the bank robbery and for "endangerment and flight" in commission of the offense. Glassroth then met with Ellis to discuss the PSI. Ellis testified that Glassroth advised him at that time that the district court would likely overrule objections to the recommended enhancements and that, in this event, his only avenue to challenge the enhancements would be an appeal.

During the sentencing hearing, Glassroth challenged application of the enhancements to Ellis's sentence and, as he had predicted, his objections were overruled by the court. Ellis acknowledged that he never unequivocally told Glassroth prior to sentencing that he wished to appeal, although he stated that Glassroth was aware from their discussion of the PSI that he wanted to "challenge" application of the enhancements to his sentence. Ellis further testified that, at his sentencing hearing, immediately after the court pronounced his 141-month sentence and inquired of Glassroth whether there were any objections to the court's findings of fact and conclusions of law, he "explicitly" instructed Glassroth to file an appeal

---

[6](...continued)
is presumed if counsel failed to file a direct appeal as requested, even when the defendant has waived the right to file an appeal in a plea agreement. *See Gomez-Diaz*, 433 F.3d at 791-94.

as to his sentence.  Glassroth then informed the court that he wished to renew his previous objection to the court's findings that Ellis should be subjected to the sentencing enhancements.  According to Ellis, he believed that Glassroth's renewed objection constituted an appeal "directly in front of the court."

Ellis stated that he had no further contact with Glassroth after the sentencing hearing, although he attempted to telephone Glassroth from jail in the days following his sentencing. Those attempts were unsuccessful, however, because Glassroth's office would not accept collect calls.  When asked by the court at the evidentiary hearing the purpose of his phone calls to Glassroth, Ellis stated that he was calling Glassroth to "thank him."  Ellis maintained that he first learned that Glassroth had not filed an appeal on his behalf in January 2006, after he asked an acquaintance to contact the court to check on the status of his appeal.  Ellis acknowledged that he made no effort to contact Glassroth to discuss the status of any appeal, although, after learning that no appeal had been filed, he did send letters to Glassroth requesting his case file.

In his testimony at the evidentiary hearing, Glassroth stated unequivocally that Ellis never instructed him at any time to file an appeal and, in fact, never evidenced any interest in appealing.  According to Glassroth, once it became apparent that it would not be feasible to consolidate multiple bank robbery charges pending against Ellis in other federal jurisdictions with the charges in this district (because it would have subjected Ellis to an extremely lengthy sentence), Ellis wanted only to get the instant case "out of his way" so that

he could focus on the charges he still faced in the other jurisdictions.  It was Glassroth's opinion that there was no basis for filing an appeal in Ellis's case.  He stated, however, that if Ellis had asked him to file an appeal, he would have done so and then would have sought to withdraw as Ellis's counsel because he would have been in "a rather untenable position" of negotiating a plea agreement that contained an appeal waiver and then seeking to pursue an appeal, something he considered to be unprofessional. Glassroth testified that he reviewed the waiver provision in the plea agreement with Ellis before his plea was entered and that he was satisfied that Ellis fully understood the rights he was giving up under the waiver as well as all other components of the plea agreement.  In addition, Glassroth testified that he advised Ellis of his appeal rights when discussing the plea agreement with him.

For purposes of resolving this claim, the critical issue of disputed fact is, of course, whether Ellis advised Glassroth that he wanted to appeal. As might be expected, the testimony of Ellis and Glassroth about this issue cannot be reconciled, requiring the court to make a credibility determination. In making its credibility determination, the court recognizes that it is improper to determine credibility based solely on the "status" of a witness.  *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).  Thus, neither Ellis's status as a convicted felon nor Glassroth's status as a lawyer is determinative. Rather, the court must court must weigh the testimony of these witnesses in light of all the facts, taking into account their interests in the outcome of the proceedings, the consistencies or inconsistencies in their testimony, and their demeanor on the stand.  *Ramirez-Chilel*, 289

13

F.3d at 749.

Having observed the witnesses, and having evaluated their testimony for consistency and the feasibility and believability of the positions advanced, the court finds that Glassroth's version of events is the more credible one on this issue. The court therefore credits Glassroth's testimony on this issue and finds Ellis's testimony not to be credible. The court finds that Glassroth does not have any evident interest in the outcome of this case that undercuts his credibility. Ellis, on the other hand, has a strong interest in the outcome of this case. His obvious interest in a favorable outcome in this proceeding militates against his credibility. The court is unpersuaded by Ellis's testimony regarding his explicitness and adamance in instructing Glassroth to file an appeal and does not find that he evidenced an interest in appealing at any time during or after his sentencing hearing.

Accordingly, the court finds (1) that Ellis was fully aware of his appeal rights and the effect of the waiver provision in the plea agreement and (2) that Ellis did *not* instruct Glassroth to file an appeal or otherwise indicate an interest in appealing. Consequently, the court concludes that Ellis has not demonstrated that Glassroth rendered ineffective assistance of counsel by failing to file an appeal on his behalf. Ellis is therefore not entitled to any relief based on this claim.

### 3.    Incorrect Advice Regarding Sentence for Firearm Offense and Right to Withdraw Plea

Ellis contends that Glassworth induced him to plead guilty by "guarantee[ing] [him] that if [he] signed the plea agreement, [he] would receive a five-year sentence" for the

firearm offense (Count 2) and by misadvising him that he would be given a chance to withdraw his plea if the district court went beyond the five years at sentencing. *See Ground Two of § 2255 Motion* (Doc. No. 1) at 6.

The sentencing range for the 18 U.S.C. § 924(c) firearm offense charged in Count 2 of the indictment was from five years to life in prison. *See* 18 U.S.C. § 924(c)(1)(A)(i). The probation office, however, recommended that Ellis be sentenced to a minimum of seven years' imprisonment for Count 2, because the facts demonstrated that he had "brandished" the firearm during the commission of the bank robbery. *See* 18 U.S.C. § 924(c)(1)(A)(ii); *PSI* at 4, 7, and 10, ¶¶ 4, 21, and 42. At sentencing Glassroth objected to this recommendation, arguing that, because there were no facts presented during the guilty plea colloquy to establish "brandishing," Ellis was subject only to the five-year minimum. *Sentencing Hearing* (Doc. No. 10, Exh. D) at 3-4. The district court responded that pursuant to *Harris v. United States*, 536 U.S. 545 (2002), the issue of whether the defendant brandished a weapon is a fact to be determined by the judge at sentencing, and is not an offense element for the jury to find or the defendant to admit. *Id*. at 4. After further argument from the parties, the court stated that it would hear testimony as to whether Ellis brandished the firearm during the bank robbery. *Id*. at 7. After hearing this testimony,[7] the

---

[7]The assistant branch manager of the bank that Ellis robbed testified at the sentencing hearing that Ellis came into her office at the bank, pretended that he wanted to open an account, and then pulled a gun on her and held it at her stomach and chest while she tried to explain to him that the bank could not meet his demand for one million dollars. *Sentencing Hearing* (Doc. No. 10, Exh. D) at 7-10.

15

court found that Ellis had in fact brandished the firearm and was therefore subject to the seven-year minimum sentence for Count 2.[8]  *Id.* at 12.

In his testimony at the evidentiary hearing on the § 2255 motion, Ellis insisted that he would not have entered a guilty plea, but would instead have elected to go to trial, if Glassroth had not assured him (1) that, by pleading guilty, his sentence for the § 924(c) firearm offense would be five years and (2) that if the court determined his sentence for that charge should be greater than five years, he would be allowed to withdraw his guilty plea. In addition, Ellis testified that he was rushed by Glassroth and the government's attorney into pleading guilty and that, consequently, he did not fully understand the provisions of the plea agreement.

For his part, Glassroth testified at the hearing that he never advised Ellis that his sentence for the § 924(c) count would be five years and that he never told Ellis he would be allowed to withdraw his guilty plea if the court decided on a sentence of  more than five years for that count.  In addition, Glassroth testified that he specifically explained to Ellis in advance of his entering into the plea agreement that his plea would be pursuant to Fed.R.Crim.P. 11(c)(1)(B), that there was no guarantee that he would receive a specific sentence, and that if he did not like the sentence imposed by the court he would nevertheless

---

[8]The court specifically noted that the plea agreement made clear that the minimum sentence recommendations by the United States were not binding on the court. *Sentencing Hearing* (Doc. No. 10, Exh. D) at 12-13.  Later, when pronouncing sentence, the court stated that even if it had found Ellis was *not* subject to the seven-year mandatory minimum for "brandishing" the firearm, it would have had no effect on the sentence the court imposed, because, in the court's opinion, the five-year mandatory minimum would have been insufficient under the facts of the case.  *Id.* at 26.

be unable to withdraw his guilty plea.  Glassroth testified that after he advised Ellis of all the provisions of the plea agreement and of the consequences of a guilty plea, Ellis knowingly chose to go forward with entering into the plea agreement and entering his guilty plea.

Having observed the witnesses and evaluated their testimony as to this issue, the court again finds that Glassroth's version of events is the more credible one.  Therefore the court credits Glassroth's testimony on this issue and finds Ellis's testimony at the evidentiary hearing not to be credible.  The court's determination in this regard is bolstered in part by consideration of representations to the court that were made by Ellis during the guilty plea hearing.  At the plea hearing, the magistrate judge informed Ellis that the sentencing range for the § 924(c) firearm offense charged in Count 2 of the indictment was from five years to life in prison.  *See Guilty Plea Hearing* (Doc. No. 10, Exh C) at 7-8.  Ellis affirmed to the magistrate judge that he understood the minimum and maximum sentence.  *Id*. at 8.  The plea agreement also reflected this same sentencing range.  *See Plea Agreement* (Doc. No. 10, Exh B) at 1.  At the plea hearing, the magistrate judge specifically advised Ellis that the district court would not be able to determine an advisory guideline sentence for him until after the presentence report was completed and that the sentence imposed might be different from any estimate his counsel or the probation office gave him.  *See Guilty Plea Hearing* (Doc. No. 10, Exh. C) at 9-10.  Ellis stated that he understood this.  *Id*. at 10.  The magistrate judge also specifically asked Ellis whether he understood that the terms of the plea agreement were merely recommendations to the court and that the court could reject the recommendations

17

and impose a more severe sentence, and that if this were to happen, he would not be permitted to withdraw his guilty plea. *Id*. at 5. Ellis stated that he understood this as well. *Id*. Ellis also stated that he had read, understood, and discussed the plea agreement with his counsel. *Id*. at 4. In addition, Ellis affirmed to the magistrate judge that, other than what was set forth in the plea agreement, no one had made any promises or assurances to him that had induced his guilty plea. *Id*.

Thus, Ellis's own statements to the court during the guilty plea hearing indicated that he understood that his sentence could be more severe than what his counsel had estimated or what was recommended by the government; that he had not been induced to plead guilty based on any promises or assurances; and that he understood he would not have the right to withdraw his guilty plea if the district court rejected the government's sentencing recommendations and imposed a more severe sentence. "Solemn declarations in open court (at the guilty plea hearing) carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In light of the testimony presented at the evidentiary hearing and in light of the record evidence of Ellis's representations to the court at the plea hearing, this court concludes that Ellis fails to show that his counsel's performance was deficient in this regard or that he suffered resulting prejudice with respect to this allegation of ineffective assistance; therefore, he is not entitled to any relief based on this claim. *See Strickland*, *supra*, 466 U.S. at 687-89.

In his reply to the United States' response to his § 2255 motion, Ellis also suggests that the district court's imposition of the seven-year minimum for Count 2 based on its finding that he "brandished" the firearm, and the court's imposition of a two-level sentence enhancement pursuant to U.S.S.G. § 3C1.2 based on the court's finding of endangerment and flight,[9] amounted to impermissible judicial factfinding in violation of *United States v. Booker*, 543 U.S. 220 (2005). *See Reply to United States' Response* (Doc. No. 30, Attachment 2) at 37-55. According to Ellis, *Booker* requires that the matters that resulted in an increase of his sentence have been either submitted to a jury and proved beyond a reasonable doubt or admitted to by him.

In *Harris v. United States*, 536 U.S. 545, 568-69 (2002), the Supreme Court determined that whether or not a firearm was "brandished" for the purposes of the statutory mandatory minimum in 18 U.S.C. § 924(c)(1)(A)(ii) is a sentencing factor to be determined by the judge, and is not an element of the offense that must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt. *Harris*, 536 U.S. at 556. Specifically, the Supreme Court stated that "[b]asing a 2-year increase in the defendant's *minimum* sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments." *Harris*, 536 U.S. at 568 (emphasis added). In *Booker*, the Supreme Court explicitly reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a

---

[9]*See* Part II.B.5 of this Recommendation, *infra*.

19

sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244.  Nothing in *Booker*, however, eliminated or declared unconstitutional mandatory minimum sentences as provided for by Congress in addressing firearm crimes, and the Supreme Court has not overruled *Harris* since deciding *Booker*. Thus, in the instant case, the district court's imposition of the seven-year minimum for Count 2 based on judicial factfinding did not violate *Booker*.

Nor was *Booker* violated when the court imposed a two-level sentence enhancement pursuant to U.S.S.G. § 3C1.2 based on it finding of endangerment and flight.  In *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005), the Eleventh Circuit clarified that *Booker* error "is not that there were extra-verdict enhancements – enhancement based on facts found by the judge that were not admitted by the defendant or established by the jury verdict – that led to an increase in the defendant's sentence.  The error is that there were extra-verdict enhancements used in a *mandatory* guidelines system."  398 F.3d at 1300 (emphasis added).  The court further explained that "the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional."  *Id*. at 1301; *see also United States v. Chau*, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (holding that "[n]othing in *Booker* is to the contrary" of a district court decision to base sentence enhancements, under an advisory guidelines scheme, on facts found by a preponderance of the evidence that were not charged in the indictment).

20

At Ellis's sentencing, the district court explicitly recognized that the guidelines were advisory and considered other sentencing factors, as mandated by 18 U.S.C. § 3553(a).  *See Sentencing Hearing* (Doc. No. 10, Exh D) at 26-27.  Thus, the court did not violate *Booker* by enhancing Ellis's sentence based on judicial factfinding.

### 4.   Failure to Have Other Bank Robbery Cases Consolidated

Ellis contends that Glassroth provided ineffective assistance by failing to seek to use Fed.R.Crim.P. 20[10] to consolidate his multiple bank robbery cases pending in other federal district courts into a single proceeding in this district, and that counsel's failure to do so "effectively pyramid[ed] multiple sentences against [him]."  *See Ground One of § 2255 Motion* (Doc. No. 1) at 5.

Addressing this claim in his affidavit filed with this court, Glassroth states:

This contention is without substance and Mr. Ellis fails to accurately

---

[10]Fed.R.Crim.P. 20 states, in pertinent part:

Transfer for Plea and Sentence

(a) Consent to Transfer.  A prosecution may be transferred from the district where the indictment or information is pending, or from which a warrant on a complaint has been issued, to the district where the defendant is arrested, held, or present if:

(1) the defendant states in writing a wish to plead guilty or nolo contendere and to waive trial in the district where the indictment, information, or complaint is pending, consents in writing to the court's disposing of the case in the transferee district, and files the statement in the transferee district; and

(2) the United States attorneys in both districts approve the transfer in writing.

recount what actually occurred.

In addition to the armed bank robbery and use of a firearm during a crime of violence counts which Mr. Ellis faced in this district, he also was the defendant in indictments charging armed bank robberies in other federal districts.  Mr. Ellis was charged with armed bank robbery offenses in the Eastern District of Louisiana, the Northern District of Georgia, and the Western District of Texas (federally insured credit union).  When these additional offenses were disclosed to me by the Assistant United States Attorney representing the government in this district, Ms. A. Clark Morris, I disclosed the existence of these additional charges to Mr. Ellis.  He and I discussed the possibility of consolidating all of the cases in this district and disposing of them all by means of Fed.R.Crim.P. 20.  Ms. Morris and I explored the possibility of handling all of the cases in this manner and I even spoke with the Assistant United States Attorney in the Eastern District of Louisiana to determine whether he would be amenable to such a disposition of the offenses then pending against Mr. Ellis in that district.  Despite the best and good faith efforts on the part of the government and the defense to resolve all of the federal charges then pending against Mr. Ellis, there was a major impediment to handling these cases in such a manner and that impediment would not allow me to advise Mr. Ellis to follow such a course of action.  In fact, if I had advised him to follow such a course of action, I believe I would have provided constitutionally ineffective assistance of counsel.

After a substantial amount of effort was directed at the possibility of disposing of all of Mr. Ellis' pending federal criminal charges by means of Rule 20, and after much discussion and negotiation with Ms. Morris directed at the possibility of accomplishing that result, we were unable to resolve the provision in the law that treats multiple firearm convictions as subsequent offenses under 18 U.S.C. § 924(c)(1)(C).  I examined *United States v. Deal*, 508 U.S. 129 (1993), *United States v. Casiano*, 113 F.3d 420 (3d Cir.), cert. denied, 522 U.S. 887 (1997), and *United States v. Andrews*, 75 F.3d 552 (9th Cir.), cert. denied, 517 U.S. 1239 (1996), among other cases and satisfied myself that this was the state of the law at that time.  This provision has the effect of vastly enhancing the punishment for second and subsequent offenses since, pursuant to 18 U.S.C. § 924(c)(1)(D), the sentences are to be imposed to run consecutively to any other sentence imposed.  If Mr. Ellis had gone ahead with entering guilty pleas under Rule 20 for all of the other pending offenses from each district (which all contained offenses under § 924(c)), the sentences for the gun offenses under § 924(c) alone would have exceeded 100

years.  I could not allow Mr. Ellis to do that given the state of the evidence, as I understood it, with respect to the other districts and I explained all of this to Mr. Ellis.  He concurred in my judgment and did not wish to enter guilty pleas to charges that would result in him effectively being incarcerated for his entire life.

This district was the only one in which Mr. Ellis was apprehended after one of his armed bank robberies; he had eluded capture from the all of the other armed bank (or credit union) robberies.  Following his capture by local law enforcement officers, Mr. Ellis freely gave them a full and voluntary statement, which was video recorded, in which he confessed to the armed robbery of the Colonial Bank branch at 671 South Perry Street in Montgomery, and the use of the firearm in the course of that robbery, the offenses for which he entered his guilty plea.  In viewing the video recorded confession, Mr. Ellis agreed that it would be futile to proceed to trial in this district and that he would seek to minimize the "damage" he was facing by entering his guilty plea.  He believed it to be in his best interest to do so and he decided that he would proceed to trial on the cases in the other districts since he felt at the time we were discussing his options that there was scant evidence to link him to the crimes with which he had been charged in the other districts and certainly no videotaped confessions, as there was in this district.  Far from neglecting my responsibilities and the duty of fidelity I owed to Mr. Ellis, I scrupulously adhered to my duty to advise him of courses of action and behavior which I believed to be in his best interest.  At no time after advising Mr. Ellis of the sentencing scheme contained in § 924(c) did he direct me to continue to follow the course of seeking to use Rule 20 to dispose of all of the pending charges.

*Affidavit of Stephen R. Glassroth* (Doc. No. 9) at 2-5.

Testimony as to this issue was also presented by Ellis and Glassroth at the evidentiary hearing on Ellis's § 2255 motion.  The version of pertinent events recounted by Glassroth at the evidentiary hearing was essentially the same as the one he provided in his affidavit.  In addition, Glassroth testified that the government would not agree to drop the multiple § 924(c) charges pending against Ellis.  Ellis's testimony at the evidentiary hearing did

nothing to undermine the essentials of Glassroth's account.  The court therefore credits

Glassroth's testimony on this issue. Consequently, this court is satisfied that Glassroth

explored the possibility of Rule 20 consolidation urged by Ellis, determined that such a

course of action would in fact be detrimental to Ellis, and abandoned it with Ellis's consent.

Ellis fails to show deficient performance by his Glassroth in this regard.  Morever, Ellis

wholly fails to demonstrate the likelihood that he would have received a more favorable

sentence had Glassroth succeeded in consolidating the multiple bank robbery cases.  Rather,

from all appearances, Ellis was virtually assured of receiving an extremely lengthy sentence

were he to plead guilty to consolidated charges.  Ellis therefore is not entitled to any relief

based on this claim of ineffective assistance of counsel.

### 5.    Sentence Enhancement for Endangerment and Flight

Ellis contends that the district court erred by imposing a two-level sentence

enhancement pursuant to U.S.S.G. § 3C1.2 for endangerment and flight.[11]  *See Ground Three*

*of § 2255 Motion* (Doc. No. 1) at 8.  According to Ellis, "[t]here was no endangerment and

flight involved in the offense."  *Id*.  Further, in an attempt to convert this otherwise defaulted

claim into an allegation of ineffective of assistance of counsel, Ellis argues that his counsel,

Glassroth, "refused to object" to the enhancement and that "the gestures [Glassroth] made

were inadequate."  *Id*.  Presumably, Ellis asserts that counsel was also ineffective for failing

---

[11] U.S.S.G. § 3C1.2 provides for a two-level increase in the defendant's offense level, "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

to raise this issue on appeal.  *Id.*

The PSI reflects that Ellis engaged police in a car chase spanning three counties on a well-traveled interstate roadway that resulted in a police officer's being accidentally shot while trying to stop his vehicle:

> Shortly after the bank robbery, the Montgomery Police Department responded to the area and located Ellis's vehicle traveling northbound on I-85 due to the tracking device.  During the pursuit, members of the Alabama State Troopers and Montgomery County Sheriff's Department were called to assist in apprehending Ellis.  A trooper reported that during the pursuit he pulled up next to Ellis's vehicle on the driver side, at which time Ellis displayed a handgun.  Upon seeing the firearm, the trooper immediately fell back behind Ellis and continued in the pursuit.  The car chase continued through Macon County and on into Lee County, where the Auburn Police Department attempted to stop Ellis's vehicle with road spikes.  Ellis managed to avoid the spikes and exited I-85 in Auburn, Alabama, and returned to the interstate traveling in the southbound lanes.  At that time, Auburn police attempted to stop Ellis's vehicle by shooting out his tires.  During this incident, an Auburn police officer was shot by a fellow officer and suffered a non-life threatening injury.  Ellis was apprehended a short time later when he attempted to flee from his vehicle through a wooded area.  Police seized $40,057 in currency and a H & K, 9mm semi-automatic handgun from Ellis's vehicle.

*PSI* at 5-6, ¶ 5.

Notwithstanding Ellis's assertion to the contrary in his § 2255 motion, counsel Glassroth did object to application of the § 3C1.2 enhancement at sentencing.  *See Sentencing Hearing* (Doc. No. 10, Exh. D) at 13-19.  In response to Glassroth's arguments that Ellis did not personally endanger anyone during his flight, the district court explained:

> There's some point where flight turns into a flight that creates a risk to others. And under the facts of this case, it certainly did.  Flight, including the showing of the firearm, including the continued flight with knowledge that more than one car was attempting to apprehend him, the fact that somebody was shot

under the circumstances caused by – accidentally, but caused by the nature of the circumstances, all of that added together constitutes more than more flight and is sufficient for the enhancement.  I overrule your objection.

*Id.* at 19.

Under the facts of Ellis's case, the § 3C1.2 enhancement for endangerment and flight was appropriate.  Therefore, Ellis's counsel cannot be ineffective for failing to pursue the issue more vigorously at sentencing[12] or on appeal.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Ellis is not entitled to any relief on this claim.

**6.      Double Jeopardy Violation**

Ellis claims that he was subjected to double jeopardy in violation of the Fifth Amendment when he was convicted and sentenced for violating both 18 U.S.C. §§ 2113(a) and (d) and 18 U.S.C. § 924(c)(1).  *See Ground Four of § 2255 Motion* (Doc. No. 1) at 9; *see also Reply to United States' Response* (Doc. No. 30, Attachment 2) at 9-37.  He argues that his consecutive sentences for armed bank robbery (18 U.S.C. §§ 2113(a) and (d), i.e., Count 1) and use of a firearm in commission of that bank robbery (18 U.S.C. § 924(c)(1), i.e., Count 2) amount to multiple punishments based on a single course of conduct and that a violation of §§  2113(a) and (d) necessarily proves all the elements of § 924(c)(1).  *Id.*  He then appears to assert ineffective assistance of counsel as cause for failing previously to raise this otherwise procedurally defaulted claim. *See § 2255 Motion* (Doc. No. 1) at 9.

---

[12]The record reflects that counsel Glassroth did in fact pursue this issue vigorously at the sentencing hearing.  *See Sentencing Hearing* (Doc. No. 10, Exh. D) at 13-19.

The Double Jeopardy Clause protects a defendant from "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Such protection often is invoked when a defendant is punished for the same conduct under two different statutory provisions. In such a case, "the first step in the double jeopardy analysis is to determine whether the legislature ... intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778 (1985). If the legislature, as expressed in the language of the statute or its legislative history, clearly intended cumulative punishment under two different statutory provisions, the imposition of multiple punishment does not violate the Double Jeopardy Clause and the court's inquiry is at an end. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). *See also United States v. Stewart*, 65 F.3d 918, 927 (11th Cir. 1995) ("In the cumulative punishment context, the 'interest that the Double Jeopardy Clause seeks to protect' is one 'limited to ensuring that the total punishment did not exceed that authorized by the legislature.'").

The plain language of § 924(c)(1) clearly evinces congressional intent that any defendant using a dangerous weapon in connection with a violent crime must be sentenced additionally and consecutively to the sentence imposed for the predicate violent crime:

> [A]ny person who, during and in relation to any crime of violence ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ..., if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.... Notwithstanding any other provision of law[,...] no term of imprisonment imposed under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence ...

27

during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1)(A)(ii) and (D).

For purposes of double jeopardy, "there is no case law that prohibits a single course of conduct from serving as the basis for both a predicate offense and its enhancement." *United States v. Strickland*, 261 F.3d 1271, 1274 (11th Cir. 2001); *see United States v. Rahim*, 431 F.3d 753 (11th Cir. 2005). It is well established that consecutive sentences for convictions of crimes of violence and § 924(c)(1) based on the same course of conduct involving the proscribed firearm do not violate the Double Jeopardy Clause. *See United States v. Singleton*, 16 F.3d 1419, 1428-29 (5th Cir. 1994); *United States v. Martin*, 38 F.3d 534, 535 (11th Cir. 1994) (adopting the *Singleton* court's analysis and conclusions in full); *United States v. Martin*, 961 F.2d 161, 163 (11th Cir. 1992); *United States v. Lanzi*, 933 F.2d 824, 826 (10th Cir. 1991) (expressly holding that convictions and consecutive sentences for violations of 18 U.S.C. § 2113 and 18 U.S.C. § 924(c)(1) do not violate the Double Jeopardy Clause); *United States v. Harris*, 832 F.2d 88, 91 (7th Cir. 1987). Consequently, Ellis's convictions and consecutive sentences for armed bank robbery (18 U.S.C. §§ 2113(a) and (d)) and use of a firearm in commission of that bank robbery (18 U.S.C. § 924(c)(1)) do not violate the Double Jeopardy Clause. And because Ellis's substantive claim in this regard has no merit, his counsel was not ineffective for failing to raise the claim. Counsel cannot be ineffective for failing to pursue an issue that lacks merit. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Ellis

28

is not entitled to any relief on this claim.

### 7.    Downward Departure Based on "Diminished Capacity"

Although he does not list it as a numbered ground for relief in his § 2255 motion, Ellis makes the conclusory assertion in his motion that his counsel should have moved for a downward departure based on his diminished capacity stemming, he says, from his "psychological[ ] imbalance[ ] due to drug abuse" and "the stress associated with [his] incarceration and counsel's insistence that [he] sign a plea agreement." *See § 2255 Motion* (Doc. No. 1) at 10. Assuming this constitutes a claim for relief, the cursory nature of Ellis's allegations precludes the granting of any relief, whether the allegation is viewed as a substantive claim or as a claim of ineffective assistance of counsel.

## III.    CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Ellis be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before August 3, 2009.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on

appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 22nd day of July, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE